LAW OFFICES OF
# TACOPINA & SEIGEL
A PROFESSIONAL CORPORATION

275 MADISON AVENUE
35TH FLOOR
NEW YORK, NEW YORK 10016

TELEPHONE (212) 227-8877
FACSIMILE (212) 619-1028
WWW.TACOPINALAW.COM

JOSEPH TACOPINA^
CHAD D. SEIGEL♦
MATTHEW G. DEOREO^
DINA NESHEIWAT•

♦   ALSO ADMITTED IN NEW JERSEY
^   ALSO ADMITTED IN CONNECTICUT
+   ALSO ADMITTED IN CALIFORNIA
•   ALSO ADMITTED IN FLORIDA
••• ONLY ADMITTED IN ITALY

OF COUNSEL:
STEPHEN TURANO♦
GEORGE VOMVOLAKIS
FRANCESCO PENTA•••
VICTOR SHERMAN+

NEW JERSEY OFFICE:
60 PARK PLACE
SUITE 703-704
NEWARK, NEW JERSEY 07102

May 2, 2016

Hon. Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    **Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, et al., Case No. 1:15-cv-09003-LTS**

Your Honor:

      We respectfully submit this letter on behalf of Defendants Alessandro Bazzoni ("Bazzoni"), CT Energia Ltd. ("CTEL"), CT Energia Holding, Ltd. ("CT Energia"), and CTVEN Investments SRL ("CTVEN") in response to the letter of Plaintiff Centauro Opportunities Master Fund, L.P. ("Centauro"), dated April 29, 2016, seeking an order compelling Bazzoni and Richard Rothenberg ("Rothenberg") to appear and give testimony at a deposition, and imposing sanctions against CTFG and CTEL. [Docket No. 96]  Although we previously served a notice of appearance on behalf of Cinque Terre Financial Group, Ltd. ("CTFG"), the company has since entered liquidation, and its Court-appointed liquidator, Stuart C. E. Mackellar of Zolfo Cooper (the "Liquidator"), by letter dated April 26, 2016, advised us that we have been terminated as counsel for CTFG. [Exhibit A] Accordingly, we no longer have authority to act on CTFG's behalf, and anticipate based on recent discussions with the Liquidator that new counsel will be appearing on behalf of CTFG in this matter imminently to substitute us.[1]

      By way of background, the Court issued an Order directing that the Chief Executive Officer of CTFG and CTEL, Bazzoni, and the Chief Financial Officer of CTFG and CTEL, Rothenberg, appear for examination at the offices of Plaintiff's counsel no later than May 6, 2016, at a specific time and date to be determined by the parties. Thereafter, counsel for the parties discussed the matter verbally. And, on April 18th, Plaintiff's counsel sent us an email inquiring about conducting the

---

[1] If new counsel fails to do so in a timely fashion, we intend to file a motion to be relieved, as we have been stripped of our ability to speak for CTFG in this matter.

TACOPINA & SEIGEL, P.C.

Hon. Laura Taylor Swain
May 2, 2016
Page Two

examinations during the week of May 2nd, thus providing us with only a one-week window for scheduling purposes. The very next day, on April 19th, we responded by email that we would discuss the proposed window amongst ourselves and with our clients, and notify Plaintiff's counsel after doing so. On April 21st, we sent a follow-up email to Plaintiff's counsel advising that we were still working on finding available dates the week of May 2nd, if possible. Part of the difficulty stemmed from two other depositions that week which were scheduled previously in an unrelated matter, as well as the personal schedules of Rothenberg and our client, Bazzoni, who resides abroad. On April 22nd, Plaintiff's counsel sent us an email thanking us for the update. And, within ten minutes of that email, we sent a responsive email, which stated that we were doing the best that we could under the circumstances, that Plaintiff's counsel had merely given us a window of one week for scheduling purposes, and that we already had two depositions scheduled that same week.

During this time period, counsel for all parties were also made aware that CTFG had entered liquidation. In addition, as set forth above, on April 26th, the Liquidator terminated us as counsel for CTFG by letter, thus adding an additional layer of complexity to this case and creating foreseeable impediments to proceeding with the depositions. Not only had a copy of that letter been sent to Plaintiff's counsel directly, but we also provided a copy of it to Magistrate Judge Sarah Netburn at our settlement conference on April 27th, and discussed it with the Court and Plaintiff's counsel at that time.

Given the backdrop outlined above, we question the action of Plaintiff in seeking its proposed relief. Pursuant to Rule 2(b)(i)(A) of Your Honor's Individual Practices, prior to requesting a conference on any discovery issues, Plaintiff's counsel was required to use their "best efforts to resolve informally the matters in controversy," including but not limited to exchanging letters and calling or discussing those matters with us. Instead, the last time Plaintiff's counsel said anything to us about scheduling was on April 22nd, seven days before filing their letter with the Court. Indeed, Plaintiff's counsel did not even raise scheduling with us on April 27th, when face-to-face during the settlement conference.

In any event, Plaintiff's request for relief should be denied as wholly unreasonable. As evidence of that fact, Plaintiff seeks sanctions against CTFG, an entity which is currently unrepresented. Moreover, while Plaintiff recognizes in its April 9th letter that we "may no longer represent CTFG due to a liquidation proceeding in the British Virgin Islands," it nonetheless insists that we remain counsel for CTEL and Bazzoni, and that depositions should therefore proceed. Plaintiff's myopic and self-serving view fails to take into consideration the realities of our termination as CTFGs' counsel. In short, while we do continue to represent CTEL and, in his individual capacity, Bazzoni (who is not subject to the discovery order in his personal capacity), both Bazzoni and Rothenberg cannot possibly testify as officers of CTEL without necessarily binding unrepresented defendant CTFG in the process. After all, while we, as counsel, may no longer act

Case 1:15-cv-09003-LTS-SN   Document 97   Filed 05/02/16   Page 3 of 10

TACOPINA & SEIGEL, P.C.

Hon. Laura Taylor Swain
May 2, 2016
Page Three

or speak on behalf of CTFG, the same cannot be said for Bazzoni and/or Rothenberg, who continue to serve as officers of that company. In other words, it would be impossible to depose either officer of CTEL without implicating CTFG, which remains unrepresented. Had Plaintiff's counsel merely contacted us before submitting their letter to the Court seeking sanctions, we could have first discussed this quandary amongst ourselves.

To further complicate matters, the Liquidator has since filed a petition with the United States Bankruptcy Court for the Southern District of New York seeking an Order staying Centauro's pending litigation before Your Honor, pursuant to Chapter 15 of the Bankruptcy Code. A hearing to determine whether such relief is warranted is already scheduled for May 10, 2016 at 3:00 p.m. before the Honorable James L. Garrity, Jr. [*In re Cinque Terre Financial Group, Limited*, Case no. 16-11086 (JLG), at Docket No. 9]. Additionally, in its application, the Liquidator specifically objects to depositions proceeding in its absence, claiming irreparable harm would result to it, noting: "Any examination concerning Cinque Terre's assets should occur under the supervision of the Liquidator and for the benefit of all the creditors equally." [*Id.* at Docket No. 6]. Notably, we were aware based on prior discussions with the Liquidator that such a stay motion would likely be forthcoming, and raised that concern with Plaintiff's counsel previously. In light of these circumstances, we believed that Plaintiff's counsel was not pressing us for deposition dates between April 22nd and April 29th because they too understood the impediments to proceeding which existed. Their letter of April 29th, which admittedly caught us off guard, has shown us otherwise.

Lastly, in paragraph 60 of its Complaint, Plaintiff alleges that CTFG and CTEL are essentially the same entity because "any individuality and separateness between these Defendants has ceased" and that there is "a unity of interest and ownership between" these entities. Thus, it is clear that Plaintiff's continued insistence on deposing CTEL, an entity which did not even participate in the joint venture underlying this action, is nothing more than an attempt to obtain admissions from CTFG, an unrepresented party.

In light of the foregoing, we respectfully request that Plaintiff's motion be denied in its entirety, and that any further scheduling in this matter be held in abeyance until after the Liquidator's motion for a stay is decided. At a bare minimum, new counsel for CTFG should be permitted to weigh in on this discussion, requiring that any further scheduling be adjourned until such time.

Respectfully submitted

Joseph Tacopina
Chad D. Seigel
Matthew DeOreo

# EXHIBIT A

**ZOLFO COOPER**

By Email: cseigel@tacopinalaw.com &
mdeoreo@tacopinalaw.com

26 April 2016

P.O. Box 4571
2nd Floor, Palm Grove House
Wickhams Cay, Road Town
Tortola
British Virgin Islands VG1110
t: +1 284 393 9600
f: +1 284 393 9601
www.zolfocooper.com

Tacopina & Seigel
275 Madison Avenue
New York, 10016

FAO C Seigel & M DeOreo

Dear Sirs

**Cinque Terre Financial Group Limited – In Liquidation (the "Company")**
**Case Number: 1:2015cv09003**

On 11 April 2016, I was appointed as Liquidator of the Company by an Order of the Eastern Caribbean Supreme Court in the High Court of Justice British Virgin Islands (the "Court"), pursuant to Section 162 of the British Virgin Islands Insolvency Act, 2003 (the "Act"). A copy of the Court Order is attached.

In accordance with Section 175(1)(b) of the Act, the directors and other officers of the Company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this part or authorised by the liquidator. Therefore, Mr Bazzoni or any other office holder is not permitted to represent the Company.

Pursuant to Section 175(1)(c)(ii) of the Act, unless the Court orders otherwise, no person may commence or proceed with any action or proceeding against the Company or in relation to its assets with effect from the commencement of the liquidation. I am in the process of obtaining legal advice from US counsel regarding the best course of action in respect of the litigation referred to above.

For the avoidance of doubt, Tacopina & Siegel has not been retained by the Liquidator on behalf of the Company nor will it be retained going forward.

Please share a copy of this letter with the mediator/magistrate and the presiding judge at the settlement conference on 27 April 2016.

Should you have any queries in relation to my appointment or the content of this letter, please do not hesitate to contact Ami Sweeney at ami.sweeney@zolfocooper.vg above or alternatively on +1-284-393-9611.

Yours faithfully

**Stuart C E Mackellar**
Liquidator

Copy sent by email to: dflexner@bsfllp.com, rjackson@bsfllp.com & smcgovern@bsfllp.com

Zolfo Cooper (BVI) Limited is a company incorporated in the British Virgin Islands.

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS
COMMERCIAL DIVISION
CLAIM NO. BVIHC(COM)139 of 2015
BETWEEN:



FEE STAMPS ON ORIGINAL
$ 25.00

## IN THE MATTER OF CINQUE TERRE FINANCIAL GROUP LIMITED

## AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

BETWEEN:

### PEGASUS OIL TRADING LIMITED

Applicant

AND

### CINQUE TERRE FINANCIAL GROUP LIMITED

Respondent

### ORDER

**BEFORE:**   The Honourable Justice Edward Bannister Q.C.
**DATED:**    The 11th day of April, 2016
**ENTERED:**  The 13th day of April, 2016

**UPON** the Application of **PEGASUS OIL TRADING LIMITED** for the appointment of liquidator of **CINQUE TERRE FINANCIAL GROUP LIMITED** ("the Company") coming on for hearing

**AND UPON HEARING** Ms. Nadine Whyte and with her Dr. Alecia Johns instructed by O'Neal Webster attorneys for the Applicant and Mr. Callum McNeil instructed by Campbells for the Company

**AND UPON READING** the evidence filed herein

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. (the "**Company**") be wound up by the Court in accordance with the provisions of the Insolvency Act 2003.

2. Stuart MacKellar of the firm Zolfo Copper of Palm Grove House, 2nd Floor, Road Town, British Virgin Islands, be appointed Liquidator of the Company.

3. The Liquidator shall have custody and control of all the assets of the Company and all the powers set out in Schedule 2 of the Insolvency Act, 2003, including the power, without the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

    (i) Power to pay any class of creditors in full.

    (ii) Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not.

    (iii) Power to compromise, on such terms as may be agreed

        (a) calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and

        (b) questions in any way relating to or affecting the assets or the liquidation of the Company;
    and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

    (iv) Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company in the British Virgin Islands or elsewhere.

(v) Power to carry on the business of the Company so far as may be necessary for its beneficial liquidation.

(vi) Power to sell or otherwise dispose of property of the Company.

(vii) Power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other document.

(viii) Power to use the Company's seal.

(ix) Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

(x) Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the Company in the course of its business.

(xi) Power to borrow money, whether on the security of the assets of the Company or otherwise.

(xii) Power to take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the Company.

For the purpose of enabling the Liquidators to take out letters of administration or do any other act under this paragraph, to be due to the Liquidator himself.

(xiii) Power to call meetings of creditors or members for

      (a)    the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

      (b)    the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

      (c)    such other purpose connected with the liquidation as the Liquidator considers fit.

(xiv) Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.

(xv) Power to appoint an agent to do any business that the Liquidator is unable to do himself, or which can be more conveniently done by an agent.

(xvi) Power to apply to the Court for directions concerning any matter arising out of the exercise of the above powers.

(xvii) Power to do all other things incidental to the exercise of the above functions and powers.

4. The costs of the liquidation be paid out of the assets of the Company in priority to all claims.

5. The costs of this Application be paid to the Applicant out of the assets of the Company.

6. The costs of the Company and the proposed substituted applicant, RB International Finance (USA) LLC be paid out of the assets of the Company.

BY THE COURT

_____
Benjamin P
Dep. REGISTRAR

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS
COMMERCIAL DIVISION
CLAIM NO. BVIHC(COM)     of 2015

IN THE MATTER OF CINQUE TERRE FINANCIAL
GROUP LIMITED
AND IN THE MATTER OF THE INSOLVENCY ACT, 2003
OF THE LAWS OF THE VIRGIN ISLANDS.

BETWEEN:

**PEGASUS OIL TRADING LIMITED**

Applicant

AND

**CINQUE TERRE FINANCIAL GROUP LIMITED**

Respondent

_____

ORDER

_____

O'Neal Webster
Legal Practitioners for the Applicant