UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

        Plaintiff,

  -v-                                                        No.  15 CV 9003-LTS-SN

ALESSANDRO BAZZONI, et al.,

        Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") brought this action seeking to recover $20 million it claims to be owed under the terms of a Promissory Note.  (See docket entry no. 4 (Complaint ("Compl."), at Ex. B ("Promissory Note")).)  The Promissory Note was signed by Centauro and two British Virgin Islands ("BVI") corporations: (1) Cinque Terre Financial Group, Ltd. ("CTFG"), and (2) CT Energia, Ltd. (together with CTFG, the "Signatory Defendants").  Defendant Alessandro Bazzoni signed the Promissory Note on behalf of both Signatory Defendants in his capacity as Chief Executive Officer ("CEO") of both companies.  Centauro also seeks to recover the Promissory Note balance from Bazzoni; CT Energia Holding, Ltd.; CT Energy Holding SRL; and CTVEN Investments SRL ("CTVEN") (collectively, the "Non-Signatory Defendants" and, with the Signatory Defendants, "Defendants").  This Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1332.

        Defendants have filed two motions to dismiss Centauro's Complaint.  (Docket entry nos. 58 & 91.)  The Non-Signatory Defendants move to dismiss under Federal Rule of

Civil Procedure 12(b)(2), arguing that they are not subject to the personal jurisdiction of this Court. All of the Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a cognizable claim.

On April 14, 2016, the Court held a hearing in this matter regarding the order of attachment previously issued to Plaintiffs. (See docket entry no. 94 (Transcript of Hearing ("Tr.").) At that hearing, counsel that had previously appeared on behalf of CTFG informed the Court that CTFG had entered a liquidation proceeding in the BVI, and counsel was no longer empowered to represent CTFG.[1] (Tr. 2:19-3:4.) On May 16, 2016, Bankruptcy Judge James L. Garrity, Jr., issued an order in the Chapter 15 bankruptcy proceeding captioned In re Cinque Terre Financial Group Limited, No. 16-11086 (Bankr. S.D.N.Y.), staying the instant case as to CTFG. (See docket entry no. 102, Ex. A (May 16, 2016, Bankruptcy Court Order).) The Court has accordingly stayed this proceeding as to CTFG (docket entry no. 102), and will terminate CTFG's motion to dismiss without prejudice to renewal upon the lifting of the stay. Nothing in this Memorandum Opinion and Order constitutes an adjudication of CTFG's asserted defenses.

The Court has reviewed thoroughly the submissions of all parties with respect to the instant motions to dismiss. For the reasons stated below, the Non-Signatory Defendants' motion to dismiss for lack of personal jurisdiction is granted, CT Energia, Ltd.'s motion to dismiss is granted in part and denied in part, and CTFG's motion to dismiss is terminated without prejudice to renewal upon the lifting of the stay imposed by the bankruptcy court.

---

[1] Tacopina, Seigel & Turano P.C., original counsel to CTFG, have not yet filed a motion to withdraw as counsel, nor has new counsel appeared on behalf of CTFG.

BACKGROUND

The following facts are drawn from the Complaint and are taken as true for the purposes of this motion practice.

In 2009, Centauro was formed as an investment fund to raise capital that would be used by CTFG in oil transactions. (Compl. ¶ 19.) On September 14, 2009, Centauro and CTFG executed a Joint Venture Agreement (the "JVA") (Compl. Ex. A (JVA)) governing this relationship. From October 2010 through January 2012, Centauro invested millions of dollars with CTFG pursuant to the JVA. (Compl. ¶ 23.)

In April 2014, Centauro became concerned that CTFG had not returned any funds to Centauro, despite prior representations that certain transactions would have been completed by that time. (Compl. ¶ 24.) In December 2014, after Centauro requested an accounting of CTFG's funds and a return of $2.3 million of Centauro's investment, CTFG informed Centauro that it could not return any funds. (Compl. ¶¶ 26-27.)

As of March 2015, Centauro had invested over $21 million in CTFG. (Compl. ¶ 30.) CTFG continued to claim it could not return any of that investment, but agreed to execute the Promissory Note. (Compl. ¶ 31.) On May 21, 2015, Bazzoni signed the Promissory Note on behalf of CTFG and CT Energia, Ltd. (Compl. ¶ 31 & Ex. B) The Promissory Note states that it was issued "for value received," and required that the Signatory Defendants make monthly payments of $500,000 to Centauro until the full balance of $21,092,213 (plus interest) was repaid. (Compl. ¶ 31; Promissory Note preamble & § 1.) The Promissory Note also provided that, in the event of default, the full balance plus interest would immediately become due. (Compl. ¶ 31; Promissory Note § 4.) The parties agreed that disputes arising under the Promissory Note would be governed by New York law and subject to resolution in New York

courts. (Promissory Note, § 15.)

The Signatory Defendants did not make the first payment required by the Promissory Note and had not made any payments before Centauro filed its Complaint. (Compl. ¶ 35.) Centauro advised the Signatory Defendants that they had defaulted and that the full balance was due. (Compl. ¶ 35.)

One of the Promissory Note's provisions required that the Signatory Defendants transfer any revenues received by an entity they controlled or owned back to the Signatory Defendants. (Promissory Note § 3(c).) Centauro alleges that, in June 2015, CT Energia Holding, Ltd., received $1.3 million from a third party company, Harvest Natural Resources ("HNR"). (Compl. ¶ 40.) The Complaint alleges that CT Energia Holding, Ltd., is "controlled by affiliates of" CT Energy Holding SRL. (Compl. ¶ 11.) CT Energy Holding SRL is, in turn, alleged to be owned in part by Bazzoni, through CTVEN. (Compl. ¶ 9.) Centauro also alleges that, in September 2015, CT Energy Holding SRL redeemed a note from HNR that was converted into 8,667,597 shares of HNR stock. (Compl. ¶ 38.)

In addition to asserting two causes of action for breach of the Promissory Note, Centauro also asserts causes of action for common law fraud and fraudulent inducement. In support of its fraud claims, Centauro alleges that Bazzoni and CTFG fraudulently represented: (1) that Bazzoni had a background and connections in the oil industry; (2) that Centauro had signatory control over bank accounts created pursuant to the JVA; (3) that Bazzoni was not making unauthorized use of Centauro's investment; (4) the status of CTFG's liquidity; and (5) that Centauro's $20 million investment under the JVA had been lost. (Compl. ¶ 87.)

Centauro has asserted all six causes of action in the Complaint against all Defendants on the theory that the Non-Signatory Defendants are liable as alter egos of the

Signatory Defendants. (Compl. ¶ 60.) In support of this claim, Centauro alleges on information and belief that Bazzoni transferred assets among all of the Defendant corporations without regard for the separate legal status of the entities. (Compl. ¶ 61.) Centauro also alleges that public documents identified a "beneficial ownership" arrangement between and among CTVEN, CT Energy Holding SRL, and Bazzoni (all of whom are Non-Signatory Defendants). (Compl. ¶ 62.) Centauro also alleges that certain press releases did not distinguish between CT Energia Holding, Ltd. (a Non-Signatory Defendant), and CT Energia, Ltd. (a Signatory Defendant). (Compl. ¶ 64.) Finally, Centauro alleges that money owed to CT Energy Holding SRL was paid to CT Energia Holding, Ltd. (both of whom are Non-Signatory Defendants). (Compl. ¶ 65.)

DISCUSSION

The Non-Signatory Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (internal quotation marks and citation omitted). The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013).

In deciding a motion to dismiss for lack of personal jurisdiction, courts engage in

a two-part analysis: first, the court determines whether there is a statutory basis for personal jurisdiction under the law of the forum state (here, New York); and second, the court determines whether its exercise of jurisdiction comports with due process under the federal Constitution. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).

The Signatory Defendants do not contest that they are subject to personal jurisdiction under New York State law. Plaintiff asserts that the Non-Signatory Defendants are alter egos of the Signatory Defendants, and are thus likewise subject to personal jurisdiction under New York law. "[A]lter egos are treated as one entity" for jurisdictional purposes. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 142-43 (2d Cir. 1991). To resolve the issue of personal jurisdiction, the Court must therefore determine whether Plaintiff has sufficiently alleged that the Non-Signatory Defendants are alter egos of the Signatory Defendants.

Because this action arises under the Court's diversity jurisdiction, the Court must first determine which jurisdiction's substantive law governs the issue of alter ego liability. "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 175 (2d Cir. 2000). Under New York's choice-of-law rules, "the law of the jurisdiction having the greatest interest in the litigation will be applied." Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) (quoting Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 382 (1969)). In cases where the court must determine whether a corporate form will be disregarded, the law of the state of incorporation governs. Kalb, 8 F.3d at 132. In this case, the Court has personal jurisdiction over the Signatory Defendants, both of which were incorporated in the BVI. Accordingly, because Plaintiffs must demonstrate that the

Non-Signatory Defendants are alter egos of the Signatory Defendants in order to establish personal jurisdiction over the Non-Signatory Defendants, the law of the BVI governs the assessment of Plaintiff's alter ego theory. Id. at 132-33.

Applying foreign law is "a complicated task." Rationis Enters., Inc. of Panama v. Hyundai Mipo Dockyard Co., 426 F.3d 580, 586 (2d Cir. 2005). To understand what foreign law requires, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party." Fed. R. Civ. P. 44.1. To support their analysis of the substantive provisions of BVI law, Defendants cite Tianbo Huang v. iTV Media, Inc., 13 F. Supp. 3d 246 (E.D.N.Y. 2014), a case in which the plaintiff sought to pierce the corporate veil of a company incorporated in the BVI. The Tianbo Huang court relied on In re Tyson, 433 B.R. 68 (S.D.N.Y. 2010), which explained the requirements for piercing the corporate veil under English law, because the Tianbo Huang Court found that "English law is a particularly relevant source" for understanding BVI law.[2] Tianbo Huang, 13 F. Supp. 3d at 258. After reviewing Tyson, English precedent, and subsequent American decisions, the Tyson Court explained that "(1) plaintiffs seeking to pierce the corporate veil under English law must allege and prove that defendants misused a corporate façade; (2) the misuse must have occurred after the liability arose ('the temporal requirement'); and (3) there is a preference under English law for fraud claims directly against individual defendants." Tyson, 433 B.R. at 249.

Plaintiffs argue that this Court cannot resolve questions of foreign law on a motion to dismiss because application of foreign law necessarily implicates evidentiary

---

[2] The Tyson case concerned a company incorporated in Gibraltar, "a self-governing overseas dependency of the United Kingdom." Tyson, 433 B.R. at 78 n.14. English law was analyzed because "[c]ourts regularly look to English law in ascertaining the law of Gibraltar." Id. The BVI is also a British overseas territory.

questions. The Second Circuit has, however, adjudicated substantive questions of foreign law under Federal Rule of Civil Procedure 44.1 in the context of a motion to dismiss. See, e.g., Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co., 538 F. App'x 19 (2d Cir. 2013) (applying Brazilian law in reviewing the grant of a motion to dismiss). Plaintiff also argues that there are no material differences between English law and New York law with regard to alter ego liability. In support of this argument, Plaintiff cites Haywin Textile Products, Inc. v. International Finance Investment, 137 F. Supp. 2d 431 (S.D.N.Y. 2001). Haywin Textile is inapposite for several reasons and cannot be read to support the proposition advanced in Plaintiff's opposition. First, Haywin Textile involved Bangladeshi, not English, law. Id. Second, the court's opinion in Haywin Textile expressly declined to make any substantive holdings with respect to any foreign law because of insufficient briefing by the parties. Id. ("IFIC's motion to dismiss for failure to state a claim upon which relief may be granted is stayed pending additional submissions from the parties regarding Bangladeshi law.")

        The Court concludes that the substantive law governing alter ego liability in the BVI is English law. The Court has carefully examined the Tyson Court's detailed summary of English law governing piercing the corporate veil, and finds that it is well-researched and informative, and therefore a relevant source of foreign law. See Fed. R. Civ. P. 44.1.

        "[V]eil piercing is quite rare under English law." Tyson, 433 B.R. at 86. Under English law there are no enumerated factors courts must consider when determining whether to pierce the corporate veil. Id. at 81 (citing Gabriel Capital, L.P. v. NatWest Fin., Inc., 122 F. Supp. 2d 407, 433 n.13 (S.D.N.Y. 2000)). Instead, "the plaintiff's ability to recover from the defendant on a veil-piercing theory turns on whether the defendant had already incurred some liability to the plaintiff at the time he interposed the corporate structure." Id. at 88. This is

known as the "temporal requirement," rooted in the English corporate law principle that owners are allowed to create companies with the intent of shielding themselves from liability. Id. English courts, however, will pierce the corporate veil when the corporate form is used as a way to evade prior, existing responsibilities. Id. at 81-82 (detailing two English cases in which the corporate veil was pierced because the defendants used their companies as a means of escaping their existing liabilities).

In order to exercise personal jurisdiction over the Non-Signatory Defendants as alter egos, the Court must determine whether Plaintiffs have proffered plausibly that the Signatory Defendants misused their corporate form to avoid or conceal liability to Plaintiff. Tyson, 433 B.R. at 87.  Even construing all facts in the light most favorable to Plaintiffs, the Complaint fails to allege facts sufficient to demonstrate misuse of the corporate form of the Signatory Defendants.  First, Plaintiffs allege on information and belief that Bazzoni, as the controlling person behind each corporate Defendant, transferred assets from the Signatory Defendants to the Non-Signatory Defendants.  This alleges nothing more than the "carrying on of a business," and is "not sufficient to justify piercing" the corporate veil. Tyson, 433 B.R. at 86.  Centauro's further, unsupported allegation that these transfers were done with an intent to defraud is conclusory, and cannot itself support this claim.  Second, Plaintiff alleges that CT Energia, Ltd. (a Signatory Defendant) and CT Energia Holding, Ltd. (a Non-Signatory Defendant) have been conflated in public statements.  A single unclear public statement that appears to have been drafted by a third party (it is described as the "HNR Press Release" in the Complaint) is not sufficient evidence that "special circumstances exist indicating that [CT Energia, Ltd.] is a mere façade concealing the true facts" of its relationship with CT Energia Holding, Ltd.  Id. at 87 (quoting Woolfson v. Strathclyde Reg'l Council, [1978] S.C.(H.L.) 90,

96).

Plaintiff's other allegations relating to the Signatory Defendants are entirely conclusory and therefore insufficient to make the required prima facie showing that piercing the corporate veil of the Signatory Defendants is appropriate. Similarly, Plaintiff's allegations regarding the potentially improper conduct of the Non-Signatory Defendants are irrelevant to the predicate question of whether the corporate form of the Signatory Defendants, over whom this Court has personal jurisdiction, may be disregarded. The Court therefore concludes that Plaintiff has failed to demonstrate a basis for the exercise of personal jurisdiction over Bazzoni, CT Energia Holding, Ltd., CT Energy Holding SRL, and CTVEN Investments SRL, and these Defendants' motions to dismiss the Complaint for lack of personal jurisdiction is granted.

The Signatory Defendants' Motion to Dismiss for Failure to State a Claim

The Signatory Defendants (CTFG and CT Energia, Ltd.) have separately moved to dismiss the entire Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As noted above, because this action is stayed as to CTFG, the following analysis will be limited to the motion to dismiss by CT Energia, Ltd.

The Breach of Contract Claims

Plaintiff's first cause of action is for breach of the Promissory Note, alleging that the Signatory Defendants failed to make payments as required. CT Energia, Ltd., argues that the first cause of action should be dismissed because the Note is unenforceable due to lack of consideration because, under the JVA, "any Losses . . . shall be borne solely by Centauro" (JVA § 2.2.2), and that therefore the Promissory Note did not discharge a debt owed to Centauro. Whatever the merit of this argument, it does not provide a proper ground for dismissal of the

first cause of action. "As a matter of pleading . . . the prevailing rule is that consideration need not be pled in the complaint, and that lack of consideration is best treated as an affirmative defense." Thomas H. Lee Equity Fund V, L.P. v. Bennett, No. 05 CV 9608, 2007 WL 950133, at *2 (S.D.N.Y. Mar. 28, 2007) (Lynch, J.); see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) ("To make out a viable claim for breach of contract, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." (internal quotation marks omitted)); Fed. R. Civ. P. 8(c)(1) (identifying "failure of consideration" as an affirmative defense). Centauro has adequately pled facts that demonstrate a breach of contract, and nothing more is required at this stage in the litigation. Accordingly, the motion to dismiss the first cause of action is denied.

Plaintiff's second cause of action alleges a breach of the Promissory Note's Section 2(c), which requires that "all revenues generated from the operations of" entities owned or controlled by one of the Signatory Defendants be distributed to the Signatory Defendants, presumably so that they may thereafter be paid to Centauro under the Promissory Note. (Promissory Note § 2(c).) Plaintiff identifies with specificity only two sources of revenue that allegedly should have been transferred to the Signatory Defendants: (1) CT Energia Holding, Ltd.'s $1.3 million payment from HNR; and (2) CT Energy Holding SRL's receipt of $7 million in HNR stock. (Compl. ¶ 81.) The Complaint does not, however, allege that either CT Energia Holding, Ltd., or CT Energy Holding SRL, are "majority-owned or otherwise controlled by," or "under common control with," any Signatory Defendant.

CT Energia Holding, Ltd., is allegedly "controlled by affliates of" CT Energy Holding SRL, and CT Energy Holding SRL is allegedly "owned and controlled by Bazzoni and

his business partners." (Compl. ¶¶ 9 & 11.)  Neither entity is alleged to be owned or controlled by one of the Signatory Defendants (CTFG and CT Energia, Ltd.).  Nor does the Complaint allege facts sufficient to demonstrate common control: CTFG is alleged to be owned by Bazzoni, who is not alleged to control either of the holding companies, and the ownership of CT Energia, Ltd., is not alleged at all in the Complaint.  (See Compl. ¶¶ 7-8.)  On these allegations, the Court cannot conclude that the two sources of revenue Plaintiff identifies with specificity in the Complaint are, in fact, covered by Section 2(c) of the Promissory Note.  Plaintiff's second cause of action is accordingly dismissed.

### The Fraud Claims

Centauro's fraud claims (the third and fourth causes of action) are entirely premised on representations by CTFG and Bazzoni.  (Compl. ¶¶ 86-88; 96-98.)  The Court has determined that it does not have personal jurisdiction over Bazzoni and the other Non-Signatory Defendants, and that there is no basis to pierce the veil of CTFG to reach any other corporation.  CT Energia, Ltd.'s motion to dismiss the fraud claim is therefore granted, because the Complaint does not identify any allegedly fraudulent statement or omission by CT Energia, Ltd.  See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (noting that New York law requires allegations that "the defendant made a material false representation").  Because this action is currently stayed as to CTFG, CTFG's motion to dismiss the fraud claims is terminated without prejudice to renewal.

### The Common Law Claims

Centauro also asserts causes of action for unjust enrichment and conversion.

Although both claims are pleaded against all defendants, the unjust enrichment claim is predicated on acts by Bazzoni, and the conversion claim is predicated on acts by Bazzoni and CTFG. Because Centauro has not pleaded plausibly its alter ego theory and neither of these causes of action specifically alleges any acts by CT Energia, Ltd., neither of these common law claims is pleaded sufficiently as against CT Energia, Ltd. CT Energia, Ltd.'s motion is therefore granted as to the common law unjust enrichment and conversion claims. CTFG's motion to dismiss the common law unjust enrichment and conversion claims is terminated without prejudice to renewal.

## CONCLUSION

For the foregoing reasons, the motions by Defendants Alessandro Bazzoni; CT Energia Holding, Ltd.; CT Energy Holding SRL; and CTVEN Investments SRL to dismiss the Complaint for lack of personal jurisdiction are granted. CTFG's motion to dismiss the Complaint is terminated without prejudice to renewal. CT Energia, Ltd.'s motion to dismiss is denied as to the first cause of action for breach of contract and granted in all other respects.

Centauro may move, by **October 21, 2016**, for leave to file an amended complaint. Its motion must be accompanied by a proposed amended complaint and a blackline comparison of the Complaint and the proposed amended complaint, in addition to its memorandum of law.

This Memorandum Opinion and Order resolves docket entry nos. 58 and 91. This case remains referred to Magistrate Judge Netburn for general pre-trial management.

SO ORDERED.

Dated: New York, New York
September 30, 2016

          /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge