UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

       Plaintiff,

  -v-                                       No. 15 CV 9003-LTS-SN

ALESSANDRO BAZZONI, et al.,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") brought this action against an individual, Alessandro Bazzoni, and a number of corporations Bazzoni allegedly controls, asserting breach of contract and fraud claims based principally on a Promissory Note executed by two of the named corporate defendants: Cinque Terre Financial Group Ltd. ("CTFG") and CT Energia Ltd. (together with CTFG, the "Signatory Defendants"). This action is stayed as against CTFG because of an active bankruptcy proceeding, and nothing in this Memorandum Opinion and Order constitutes an adjudication of CTFG's rights or defenses. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

On September 30, 2016, this Court granted in part and denied in part motions to dismiss by all of the named Defendants. Specifically, the Court (1) dismissed the Complaint as against Bazzoni; CT Energia Holding, Ltd. ("CT Energia Holding"); CT Energy Holding SRL; and CTVEN Investments SRL ("CTVEN") because the Complaint did not establish that the Court had personal jurisdiction over those defendants; and (2) dismissed all counts in the Complaint except for Count One, which asserted breach of the Promissory Note, as to CT

Energia Ltd. (See docket entry no. 107, Memorandum Opinion and Order (the "September Opinion"), p. 13.) The Court also granted Centauro permission to file a motion for leave to amend its complaint in light of the dismissals. (Id., p. 13.)

Centauro now moves for leave to file an Amended Complaint (docket entry no. 111, Ex. 1 (Proposed Amended Complaint ("AC")), which does not name CTVEN or CT Energy Holding SRL as defendants and adds as named defendants CT Energia Ltd. d/b/a Elemento Ltd. ("CT Energia Malta") and CT Energia Oil and Gas Ltd. d/b/a Elemento Oil and Gas Ltd. ("CTOG" and, together with CT Energia Holding, CT Energia Malta, and Bazzoni, the "Non-Signatory Defendants"). The AC asserts three claims against all Defendants: (1) breach of the Promissory Note by failure to pay as required; (2) breach of the Promissory Note by failure to distribute revenue as required; and (3) fraudulent inducement in connection with the negotiation of the Promissory Note. (AC ¶¶ 53-75.) Defendants argue that granting leave to amend would be futile because (1) the AC fails to allege plausibly facts sufficient to establish personal jurisdiction over the Non-Signatory Defendants on an alter ego theory, and (2) the AC otherwise fails to state a claim for which relief may be granted, and leave to amend would therefore be futile.

The Court has reviewed the parties' submissions in connection with the instant motion for leave to amend carefully and, for the following reasons, grants Centauro leave to file the AC as against CT Energia Ltd., Bazzoni, and CT Energia Malta, and otherwise denies Centauro's motion for leave to amend.

BACKGROUND

The Court assumes the parties' familiarity with the background of this case,

which is laid out in detail in the September Opinion. (September Opinion, pp. 3-5.) Specifically, the allegations of fact underlying Counts One and Two of the AC, which assert claims for breach of contract, are materially unchanged from the original Complaint, and the Court adopts the factual recitation from the September Opinion relating to those claims. The following supplemental recitation of facts is drawn from the AC, which is taken as true for purposes of this motion practice.

Alter Ego Allegations

Plaintiff alleges that this Court has personal jurisdiction over the Non-Signatory Defendants because they are alter egos of the Signatory Defendants, which consented to the jurisdiction of New York courts in the Promissory Note. (AC ¶¶ 5-6.) Specifically, the AC alleges that CT Energia Ltd. is wholly owned and controlled by Bazzoni, and that Bazzoni created CT Energia Malta, an entity that originally operated under the same name as CT Energia Ltd., and CTOG in order to divert resources from CT Energia Ltd. and shield that entity from liability to Centauro. (AC ¶¶ 45-49.) The AC also alleges that Bazzoni has used the corporate assets of CT Energia Ltd. in order to pay for Bazzoni's personal expenses and personal property. (AC ¶ 51.) The AC alleges that CT Energia Malta and CTOG "were created by [CT Energia Ltd.] through Bazzoni in October and December of 2015." (AC ¶ 47.) The AC then alleges that, in December 2015, Bazzoni transferred control of CT Energia Malta to CT Energia Holding in order to shield CT Energia Ltd. from liability to Centauro. (AC ¶ 48.) The AC also alleges that CT Energia Ltd., CT Energia Malta, and CTOG all "share offices, email accounts, personnel, financial accounts, and revenue streams from oil transactions, among other things." (AC ¶ 49.)

Fraudulent Inducement Allegations

Plaintiff alleges that, prior to the execution of the Promissory Note, it engaged in due diligence negotiations with CT Energia Ltd., during the course of which CT Energia Ltd. made false statements and representations. Specifically, Plaintiff alleges that CT Energia Ltd. represented that it had made an investment in Harvest Natural Resources ("HNR"), but that amended filings with the Securities and Exchange Commission ("SEC") have made clear that CT Energia Ltd. did not, in fact, have any such investment. (AC ¶ 68.) Plaintiff also alleges that CT Energia Ltd. provided Plaintiff with false information about its international business revenues as a means of demonstrating to Plaintiff that CT Energia Ltd. had access to funds sufficient to make payments on the Promissory Note. (AC ¶ 68.) Plaintiff alleges that these representations were known to be false when made, and were made with the intent to induce Plaintiff into signing the Promissory Note rather than commence litigation. (AC ¶¶ 70-71.)

DISCUSSION

Federal Rule of Civil Procedure 15 provides that the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). It also provides that "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also Foman v. Davis, 371 U.S. 178, 182 (1962). If the plaintiff has "at least colorable grounds for relief," justice requires granting leave to amend. Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).

The Second Circuit has held that "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule

15's mandate must be obeyed." Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000). "The party opposing a motion to amend bears the burden of establishing that an amendment would be futile. . . . A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss." Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008) (internal quotation marks and citations omitted). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). However, a "pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).

On a motion to dismiss a complaint for lack of personal jurisdiction, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted). If a defendant challenges personal jurisdiction, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (internal quotation marks and citation omitted). The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Licci ex rel.

Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013).

Here, the Non-Signatory Defendants contend that granting leave to file the AC would be futile because it, like the Complaint, fails to proffer a basis for this Court's exercise of personal jurisdiction over them, and both they and the Signatory Defendants contend that granting leave to amend would be futile because the AC fails to state a claim for which relief may be granted.

Personal Jurisdiction Over the Non-Signatory Defendants

The Court adopts by reference the explanation of the legal requirements for establishing alter ego liability that was provided in detail in the September Opinion. (September Opinion, pp. 6-9.) As to the Non-Signatory Defendants, the first issue "the Court must determine [is] whether Plaintiffs have proffered plausibly that the Signatory Defendants misused their corporate form to avoid or conceal liability to Plaintiff." (Id. p. 9.) The AC seeks to meet this requirement primarily by alleging that Bazzoni has used CT Energia Ltd.'s funds for his personal expenses, and by alleging that CT Energia Ltd.'s creation of the identically named CT Energia Malta, which shared personnel, operations, and revenue streams with CT Energia Ltd., constituted misuse of the corporate form. Defendants do not meaningfully contest that these allegations would suffice to demonstrate misuse of the corporate form, but rather take issue with the fact that these allegations are pled solely on information and belief. In this context, however, Centauro need only make a prima facie proffer of facts that would, if true, suffice to demonstrate that the exercise of personal jurisdiction is appropriate. See Dorchester, 722 F.3d at 85. The Court concludes that Centauro has made a prima facie showing in the AC that Bazzoni, as the controlling person of CT Energia Ltd., engaged in a misuse of the corporate form that would

have avoided CT Energia Ltd.'s liability to Centauro under the Promissory Note.

The second prong of the alter ego analysis, as explained in the September Opinion, is temporal: the corporate form must be "used as a way to evade prior, existing responsibilities." (September Opinion, p. 9.) The AC satisfies this requirement as well, by alleging that Bazzoni caused CT Energia Ltd. to create CT Energia Malta following the commencement of this litigation, and then shifted CT Energia Ltd.'s personnel, operations, and revenue streams to the new Maltese entity, allegedly as a means to avoid CT Energia Ltd.'s liability to Centauro in this action.

Accordingly, the Court concludes that Centauro has adequately made a prima facie showing that, under applicable law, the corporate form of CT Energia Ltd. may be disregarded and the corporate veil pierced to reach Bazzoni individually, and, for substantially the same reasons, to reach CT Energia Malta. However, the AC's allegations with respect to the other Non-Signatory Defendants – CT Energia Holding and CTOG – are not sufficient to establish Bazzoni's misuse of the corporate form. The AC alleges only generally that CT Energia Holding owns CTOG and CT Energia Malta, a standard corporate structure, and alleges only in a conclusory fashion that these companies lack a separate and concrete corporate character. The paucity of allegations relating to CT Energia Holding and CTOG is especially striking compared to the detailed allegations of fact relating to CT Energia Ltd. and CT Energia Malta. The Court therefore concludes that Centauro has failed to establish that the corporate forms of CT Energia Holding and CTOG may be disregarded.

For these reasons, the Court concludes that the AC adequately alleges a basis for personal jurisdiction over Bazzoni and CT Energia Malta, as alter egos of the Signatory Defendants over whom this Court has personal jurisdiction via the Promissory Note, and that

granting leave to amend would not be futile on the basis of lack of personal jurisdiction as to these Defendants. However, the AC's allegations are insufficient to establish a prima facie basis for the exercise of personal jurisdiction over CT Energia Holding and CTOG, and granting leave to amend to name these defendants would therefore be futile and is denied.

Claims Asserted in the AC

The AC asserts three claims against the remaining Defendants: (1) breach of the Promissory Note by failure to pay as required; (2) breach of the Promissory Note by failure to distribute revenue as required; and (3) fraudulent inducement in connection with the negotiation of the Promissory Note. (AC ¶¶ 53-75.)

The AC's first claim, for breach of the Promissory Note based on non-payment, was found to be adequately pled as against CT Energia Ltd. in the September Opinion. Plaintiffs assert, and Defendants do not meaningfully contest, that the Court's finding that Bazzoni and CT Energia Malta are alter egos of CT Energia Ltd. suffices to establish that the first claim is adequately stated against these two defendants as well. Accordingly, leave to add the first claim against Bazzoni and CT Energia Malta would not be futile and therefore is granted.

The AC's second claim is also for breach of the Promissory Note, and asserts that CT Energia Ltd. violated Section 2(c) of the Promissory Note by failing to distribute revenue from entities that are "majority-owned or otherwise controlled" by CT Energia Ltd. back into that company for purposes of servicing the Promissory Note. As an initial matter, Centauro is permitted to plead alternative theories for breach of contract, and so this claim would not be futile on the grounds that it is duplicative, as Defendants argue. See Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011)

("Alternative pleading is permitted because a party is only precluded from recovering on both theories at the same time." (Internal quotation marks and alterations omitted)).

In the September Opinion, the Court held that Centauro's claim based on Section 2(c) failed because Centauro did not adequately allege majority ownership or control of the entities whose revenue Centauro claims should have been remitted to CT Energia Ltd. The AC remedies that deficiency by alleging that Bazzoni, as the alter ego of CT Energia Ltd., is the majority owner or otherwise controls a number of the corporate entities at issue in this litigation, and that the revenues from these companies have not been distributed to CT Energia Ltd. as required by Section 2(c). (AC ¶¶ 47, 62-63.) This is sufficient, at the pleading stage, to assert a viable claim against CT Energia Ltd., and Bazzoni and CT Energia Malta as its alter egos, for breach of Section 2(c) of the Promissory Note, and leave to amend to add this claim against these defendants is granted accordingly.

The AC's third claim asserts that Centauro was fraudulently induced to enter into the Promissory Note by CT Energia Ltd., which allegedly provided Centauro with false or misleading information about its revenue and investments in order to induce Centauro to enter into the Promissory Note. (AC ¶¶ 67-70.)

To state a fraud claim under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." Davidowitz v. Patridge, 2010 WL

5186803, at *7 (S.D.N.Y. Dec. 7, 2010) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)).  A claim of fraudulent inducement to enter into a contract also requires an allegation that the misrepresented material fact is "collateral" to the contract, and serves as an "inducement" to enter into the contract.  Wall v. CSX Transp., 471 F.3d 410, 416 (2d Cir. 2006).

In addition, fraud claims must be evaluated in light of the heightened pleading standard established by Federal Rule of Civil Procedure 9(b), which places "two further burdens on fraud plaintiffs – the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state."  Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 171 (2d Cir. 2015). Scienter need not be alleged with great specificity to survive a Rule 12(b)(6) motion under Rule 9(b) standards.  See Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).  "Nonetheless, plaintiffs have the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.  Such a basis may be shown through allegations of a motive to deceive and access to accurate information."  Cohen v. Koenig, 25 F.3d 1168, 1173-74 (2d Cir. 1994) (internal quotations and citations omitted).

The AC adequately alleges fraudulent misrepresentation against CT Energia Ltd., and therefore against its alter egos Bazzoni and CT Energia Malta.  As an initial matter, the fraud claim is not duplicative of the breach of contract claims, because the alleged fraud does not relate to CT Energia Ltd.'s performance under the contract, but rather to its capacity to perform. The allegations of CT Energia Ltd.'s fraudulent conduct are sufficiently detailed to meet the requirements of Rule 9(b), in that they allege with specificity details about CT Energia Ltd.'s representations of its investment in HNR that are alleged to have been false when made, and whose falsity is demonstrable through SEC filings.  The allegations in the AC also support a

reasonable inference of a motive to deceive Centauro about CT Energia Ltd.'s financial situation and, insofar as the alleged misrepresentations relate to investments that CT Energia Ltd. had not in fact made, there can be no question that CT Energia Ltd. was in possession of accurate information about its own investments.  Centauro has also sufficiently alleged its own justifiable reliance; Defendants' arguments about the reasonableness of that reliance go to questions of fact that are not suited for resolution at this stage of the litigation.  See, e.g., Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 231-32 (S.D.N.Y. 2005) (denying a motion to dismiss a fraudulent inducement claim where the defendant allegedly used sham transactions to conceal the true financial state of a company during due diligence negotiations).  Accordingly, leave to amend to add a claim of fraudulent inducement against CT Energia Ltd., Bazzoni, and CT Energia Malta would not be futile, and is therefore granted.

## CONCLUSION

For the foregoing reasons, Centauro's motion for leave to amend is granted in part and denied in part.  Centauro may modify the proposed Amended Complaint to assert claims against Bazzoni, CT Energia Ltd., and CT Energia Malta in a manner consistent with this opinion.  Centauro must file the Amended Complaint by **September 11, 2017**, with a conforming caption.  Leave to amend is otherwise denied.

This case remains referred to Magistrate Judge Netburn for general pre-trial management.  The parties are directed to meet with Magistrate Judge Netburn promptly to address any discovery issues that may arise in light of this Memorandum Opinion and Order.

This Memorandum Opinion and Order resolves docket entry no. 110.

SO ORDERED.

Dated: New York, New York
August 28, 2017

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge