IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENTAURO LIQUID OPPORTUNITIES MASTER FUND, L.P., <br><br>       Plaintiff, <br><br>vs. <br><br>ALESSANDRO BAZZONI, CINQUE TERRE FINANCIAL GROUP, LTD., CT ENERGIA LTD., and CT ENERGIA LTD. d/b/a ELEMENTO LTD., <br><br>       Defendants. | Civil Action No. 15-cv-9003 (LTS) (SN) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION TO AMEND THE ORDER OF ATTACHMENT**

## Table of Contents

                                                                                                                             **Page**

Preliminary Statement ............................................................................................................... 1

Argument .................................................................................................................................. 2

**I.**      Centauro is likely to succeed on the merits of its breach of contract claim ........................ 2

**II.**     Centauro is likely to succeed on the merits of its alter ego claims. ................................... 8

Conclusion ............................................................................................................................... 10

## Table of Authorities

**Cases**                                                                                                    **Page**

*Anti-Hydro Co., Inc. v. Castiglia*,
   92 A.D.2d 741 (4th Dep't 1983) .................................................................................... 4

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
   958 F. Supp. 895 (S.D.N.Y. 1997) ................................................................................. 1

*Bandes v. Harlow & Jones, Inc.*,
   826 F. Supp. 700 (S.D.N.Y. 1993) ............................................................................... 10

*Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*,
   892 F. Supp. 478 (S.D.N.Y. 1995) ................................................................................. 3

*Chemical Bank v. Meltzer*,
   93 N.Y.2d 296 (1999) ..................................................................................................... 3

*Chevron Corp. v. Donziger*,
   840 F. Supp. 2d 773 (S.D.N.Y. 2012) ............................................................................ 3

*Citibank, N.A. v. Plapinger*,
   66 N.Y.2d 90 (1985) ....................................................................................................... 7

*Doubet LLC v. Trustees of Columbia Univ. in City of New York*,
   99 A.D.3d 433 (1st Dep't 2012) ................................................................................... 10

*Erie County Sav. Bank v. Coit*,
   104 N.Y. 532 (N.Y. 1887) .............................................................................................. 7

*Eternity Global Master Fund Ltd. v. Morgan Trust Co.*,
   375 F.3d 168 (2d Cir. 2004) .......................................................................................... 3

*First New York Bank for Business v. DeMarco*,
   130 B.R. 650 (S.D.N.Y. 1991) ....................................................................................... 6

*Hewett v. Marine Midland Bank of Southeastern New York, N. A.*,
   86 A.D.2d 263 (2d Dep't 1982) ..................................................................................... 4

*Israel Discount Bank of New York v. NCC Sportswear, Corp.*,
   No. 603912/06, 2008 WL 518151 (N.Y. Cty. Sup. Ct. 2008) ...................................... 7

*JSC Foreign Economic Association Technostroyexport v. Int'l Dev. & Trade Services, Inc.*,
   386 F. Supp. 2d 461 (S.D.N.Y. 2005) ........................................................................... 8

*Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.*,
   No. 04 Civ. 1150 (GEL), 2004 WL 2071703 (S.D.N.Y. 2004) ............................................... 5, 6

*Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*,
   No. 11 Civ. 4971 (RJH), 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) ................................... 1

*Movado Group, Inc. v. Presberg*,
   259 A.D.2d 371 (1st Dep't 1999) .............................................................................................. 7

*Thales Alenia Space France v. Thermo Funding Co., LLC*,
   959 F. Supp. 2d 459 (S.D.N.Y. 2013) ....................................................................................... 5

*Thornapple Associates, Inc. v. Sahagen*,
   No. 06 Civ. 6412 (JFK), 2007 WL 747861 (S.D.N.Y. March 12, 2007) ................................. 10

*Walter E. Heller & Co. Inc. v. Cox,*
   343 F. Supp. 519 (S.D.N.Y.1972), *aff'd*, 486 F.2d 1398 (2d Cir. 1973) ................................... 6

**Statutes**

CPLR, Article 62 ............................................................................................................................. 1

Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") respectfully submits this reply memorandum of law in further support of its motion to amend the order of attachment (ECF No. 69) to include the assets of Defendants Alessandro Bazzoni and CT Energia Ltd. d/b/a Elemento Ltd.

## PRELIMINARY STATEMENT

This is a motion to attach the assets of two demonstrably untrustworthy defendants, Alessandro Bazzoni and his company CTEL Malta (which now purports to call itself 'Elemento').[1] The Court has already issued an order attaching the assets of the other two defendants in this action, CTEL and CTFG. These entities owe Centauro over $21 million pursuant to an unambiguous Promissory Note. Centauro now seeks to add Bazzoni and CTEL Malta to that attachment order, as they are alter egos of CTEL. The Court has also already agreed that Centauro's Amended Complaint states a valid alter ego claim against Bazzoni and CTEL Malta, and the evidence that has come to light since only strengthens that finding. In their opposition papers, Bazzoni and CTEL Malta do not dispute that Centauro meets three of the statutory requirements for prejudgment attachment.[2] Their only real dispute is over whether Centauro can prove that each is an alter ego of CTEL, the entity that co-signed and guaranteed the Promissory Note. Defendants insist that the alter ego relationships alleged in the Amended Complaint are inaccurate because they systematically undertook efforts to moot them. Having

---

[1] "CTFG" refers to defendant Cinque Terre Financial Group, Ltd.; "CTEL" refers to defendant CT Energia Ltd.; "CTEL Malta" refers to alter ego defendant CT Energia Ltd. d/b/a Elemento Ltd.

[2] As described in Centauro's principal brief, to obtain an order of attachment the movant must show that: (1) that there is a cause of action; (2) that it is probable that the plaintiff will succeed on the merits; (3) that one or more grounds for attachment provided in section 6201 exist; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. *See* CPLR § 6212(a); *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 4971 (RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011). Defendants only contest the second factor, probability of success on the merits, and therefore concede the others. *See Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue.").

caught wind of Centauro's proposed amended complaint in 2016, Defendants and their lawyers worked to undermine those allegations by removing Bazzoni's name from corporate documents, changing entity names, and otherwise shielding Bazzoni's involvement. This is a remarkable admission. Not only does it further show why attachment is necessary, it also underscores Defendants' willingness to abuse the corporate form in order to hide from their debt to Centauro – a key factor in proving an alter ego relationship.

Defendants also resurrect an argument from their failed motion to dismiss: they claim that the Note is void because CTFG never owed Centauro any money in the first place, and that the Note therefore lacks consideration because CTEL also does not owe Centauro any money independent of CTFG's debt. This argument betrays a serious misapprehension of rudimentary and well-settled contract law. It also ignores the unambiguous language of the Note, which recites precisely the circumstances that gave rise to its creation, each maker's explicit agreement with **all** of its terms, and each maker's promise to be "jointly and severally liable" for repayment.

At bottom, Defendants' arguments are not only unavailing, they also reinforce that their conduct is precisely the type that prejudgment attachment laws were designed to redress.

## ARGUMENT

**I.    Centauro is likely to succeed on the merits of its breach of contract claim.**

The Court has evaluated Centauro's breach of contract claim for non-payment of the Note multiple times, each time concluding that it is valid, and that Centauro is likely to succeed on the merits. *See* Order of Attachment at 4 ("It is probable that Plaintiff will succeed on the merits of their claims to recover at least $21,092,213 owing under the Promissory Note") (Ex. 5)[3]; Ex. 14 at 11 ("Centauro has adequately pled facts that demonstrate a breach of contract").

---

[3] "Ex." refers to the exhibits to the Declaration of Byron Pacheco filed in support of the motion. *See* ECF No. 150.

Where a party alleges default of a promissory note resulting in money owed, the required proof for showing a likelihood of success on the merits is straightforward. *See Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995). Centauro has submitted: (1) the unambiguous Promissory Note; and (2) documents corroborating Centauro's allegations, including email exchanges in which Bazzoni and Rothenberg acknowledge the debt and default. *See* Exs. 21, 44, 45. Courts have observed that this showing "typically presents no difficulty in a simple action for a liquidated sum as, for example, an action on a promissory note." *Chevron Corp. v. Donziger*, 840 F. Supp. 2d 773, 775 (S.D.N.Y. 2012).

Ignoring all of this, Defendants want the Court to suspend disbelief and rule the Note void for lack of consideration. They argue that CTFG and CTEL agreed to "**re**"-pay over $21 million – and in fact made $850,000 in down payments – despite not owing Centauro anything. This argument is specious. *See Eternity Global Master Fund Ltd. v. Morgan Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004) (courts view purported ambiguity in a contract from the perspective of a "reasonably intelligent person"). Moreover, to advance this argument Defendants propose to re-litigate the very dispute the Note resolved: CTFG and Centauro had a joint venture to trade oil; when Centauro's investments in the joint venture went missing, there was a dispute about whether CTFG's misappropriation breached the parties' Joint Venture Agreement ("JVA"); to avoid being sued for breach of the JVA because it "fail[ed]…to return" Centauro's investments, CTFG agreed to "repay" the money it "lost", and Centauro agreed to waive its claims for breach of the JVA; CTEL for its part, agreed to act as a surety or guarantor, in making itself "liable" to the same extent as CTFG for the missing money.[4] But the Court need not accept Centauro's

---

[4] When a secondary obligor is bound to pay for the debt or answer for the default of the principal obligor to the obligee, the secondary obligor is said to have suretyship status. *See Chemical Bank v. Meltzer*, 93 N.Y.2d 296 (1999). Similarly, a "guarantor relationship" arises when one party becomes bound to satisfy an obligation owed by

narrative alone; the Note speaks for itself on each of these points:

- "FOR VALUE RECEIEVED, each of [CTFG and CTEL] (each of [which is] a "Maker" and collectively are the "Makers")…, **jointly and severally**, hereby unconditionally promise to pay to the order of [Centauro], upon the terms set forth below, the principal sum of [$21,092,213.00]." Note at p.1 (emphasis added).

- "Makers acknowledge…that the obligations of Makers under this [Note] **arise from and are in consideration of certain Deal Capital provided by [Centauro]** to CTFG from time to time on or prior to December 31, 2014 in connection with transactions contemplated by that certain [JVA] between CTFG and [Centauro]…CTFG has advised Centauro that such Deal Capital **has been lost and not returned** to the Payee, and **this Note evidences the commercial agreement reached between Makers and the Payee with respect to the repayment by Makers of such Deal Capital to the Payee**." *Id.* (emphasis added).

- "[Centauro] acknowledges and agrees that, **upon payment of all amounts due** under this Note in full, (a) **all disputes, claims, damages or actions** that [Centauro] may have or could have asserted against CTFG as a result of or with respect to the failure of CTFG to return such Deal Capital **will be fully and completely settled and discharged**, and (b) [Centauro] **shall be deemed to have released CTFG** from any further claims, liabilities, damages or actions as a result of such Deal Capital." *Id.* (emphasis added).

- "[Centauro] acknowledges receipt of **payments totaling $850,000 having been made prior to May 1, 2015**. Makers and the Payee agree and acknowledge that the principal amount of this Note represents the balance owing by the Makers to the Payee after receipt of such payments." *Id*. § 1(a) (emphasis added).

- "The obligations of this Note are obligations of each Maker, **severally and jointly** with the other Maker…" *Id.* § 2(a) (emphasis added).

- "This Note has been duly authorized, executed and delivered by Maker and **is the legal obligation of each Maker, enforceable against such Maker in accordance with its terms**." *Id.* § 12 (emphasis added).

- "Each Maker further represents, warrants, certifies and declares that **all acts, conditions and things required to be done and performed and to have happened precedent to the execution and delivery of this Note** and to constitute this Note **a legal, valid and binding obligation of such Maker in**

---

another. *Anti-Hydro Co., Inc. v. Castiglia*, 92 A.D.2d 741 (4th Dep't 1983). Moreover, a negotiable instrument, such as a promissory note, may contain language whereby the indorser guarantees payment of the indebtedness evidenced by the note. *Hewett v. Marine Midland Bank of Southeastern New York, N. A.*, 86 A.D.2d 263, 272 (2d Dep't 1982).

**accordance with its terms have been done, performed and have happened** in compliance with all applicable laws." *Id*. (emphasis added).

- "The parties agree that each of them and/or their respective **counsel has reviewed** and had an opportunity to revise this Note…" *Id.* § 13 (emphasis added).

- "Each of the undersigned Makers agrees to remain **fully bound hereunder until this Note shall be fully paid**…" *Id.* at p.8 (emphasis added).

- "**Each Maker fully understands the contents of this Note and, as a co-Maker, is fully aware that such Maker is jointly and severally liable for the full amount of principal and interest due and owing under this Note.**" *Id.*

The Note unequivocally recites its consideration: it is a "commercial agreement" between the parties intended to resolve a dispute over funds Centauro invested ("Deal Capital"); CTFG will return the funds due to Centauro that it "lost" in exchange for Centauro's release of legal claims; and CTEL, having been duly advised by "counsel", "fully understands" and agrees to be "fully bound" by its terms, including to be "jointly and severally liable", with principal obligor CTFG, for all payments due. These terms are unambiguous and must be enforced. *See Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 467 (S.D.N.Y. 2013) (release of claims against third party constitutes valid consideration).

Moreover, having agreed to settle the original dispute over breach of the underlying JVA (*i.e.*, whether CTFG "lost" money versus trade "losses"), Defendants are barred from alleging a lack of consideration of the agreement settling that dispute. *See, e.g., Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.*, No. 04 Civ. 1150 (GEL), 2004 WL 2071703, at *3 (S.D.N.Y. 2004) ("The Agreement represents a contract that was collateral to, and entered into in contemplation of the settlement of, a dispute over the underlying insurance contract. Whether these defendants did or did not need insurance coverage in the first place is irrelevant to the present dispute over the amount due under the Agreement, which was intended to settle any underlying dispute about the insurance contract.").

*Liberty* is instructive. There the plaintiff provided defendants insurance coverage through a series of agreements. A dispute arose regarding payments due to plaintiff under those agreements. To resolve it, the parties executed a settlement agreement in which defendants agreed to repay the disputed funds. Just as here, a third party agreed to guaranty the payments. And as here, defendants asserted that the settlement agreement was void for lack of consideration because of a supposed issue with the underlying insurance agreements. In particular, defendants claimed they never owed the insurance premiums about which they settled because they did not need the insurance coverages in the first place. Because of this alleged problem with the original contract they further claimed that the third party guarantor received no consideration for agreeing to repay the primary obligor's debt. The *Liberty* court rejected this argument for all the reasons the Court should reject Defendants' identical argument here.

For starters, the *Liberty* court held that defendants were barred from asserting lack of consideration because they had ratified the agreement by "abiding by the payment schedule it set forth." *Id.* at *3. Here, it is undisputed that CTFG and CTEL paid $850,000 of the principal sum due. Having already paid on the debt, CTEL cannot now claim that it was never owed.

The *Liberty* court also rejected the consideration argument Defendants assert here: that a third party surety or guarantor must have some independent obligation to the creditor in order to for there to be consideration. "As for the argument that [the guarantor defendant] lacked sufficient consideration," "it is well established that consideration passing from a creditor to a principal obligor is sufficient consideration to support a third-party guaranty of the principal obligor's debts." *Id.* at *3 (quoting *First New York Bank for Business v. DeMarco,* 130 B.R. 650, 654 (S.D.N.Y. 1991); *see also Walter E. Heller & Co. Inc. v. Cox,* 343 F. Supp. 519, 527–28 (S.D.N.Y.1972), *aff'd,* 486 F.2d 1398 (2d Cir. 1973). Further, the Court held that as here,

6

where CTEL has "execute[d] an[] absolute and unconditional guaranty", it "is precluded from raising not only lack of consideration, but also various contractual defenses such as fraud in the inducement." *Id.* at *3 (citing *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 93 (1985)).

Missing from Defendants' opposition papers is any law stating that CTEL must have owed Centauro money in order for its guaranty of CTFG's debt to be supported by consideration. This is unsurprising because all reported law is to the contrary. In fact, the leading New York Court of Appeals case rejected Defendants' argument over 125 years ago. *See Erie County Sav. Bank v. Coit*, 104 N.Y. 532, 537 (N.Y. 1887) ("It is needless to cite authorities to show that the surrender of an existing security is a good consideration for a new undertaking between the parties to the surrendered obligation. There being a good consideration for the bond between the obligor and obligee, it follows, we think, that the same consideration supports the guaranty…Where a contract of guaranty is entered into concurrently with the principal obligation, a consideration which supports the principal contract supports the subsidiary one also. ***We understand this to be the settled doctrine.***") (emphasis added). In other words, "it is axiomatic that the consideration which supports a principal obligation is sufficient to support a guaranty of that obligation." *Israel Discount Bank of New York v. NCC Sportswear, Corp.*, No. 603912/06, 2008 WL 518151, at *6 (N.Y. Cty. Sup. Ct. 2008) (citing *Erie County*); *see also Movado Group, Inc. v. Presberg*, 259 A.D.2d 371, 371 (1st Dep't 1999) ("An extension of credit is ample consideration for the execution of a guaranty.").

What CTEL did here – accept liability for the debt of another despite owing nothing to the creditor itself – is remarkably common. It happens tens of thousands of times daily in every commercial context imaginable. In all cases, the secondary obligor has no independent duty to the obligee: the parent who guarantees their child's student loans; the friend who co-signs the

7

apartment lease; the bank that guarantees an automobile or home purchase; or the corporation that guarantees loans or bonds for other entities. On Defendants' theory, literally trillions of dollars of commercial transactions annually (unbeknownst to everyone involved) would be void because these co-signors, sureties, guarantors, co-endorsers, and co-makers lacked consideration to make these promises. This is surely not the law, nor should it be.

**II.    Centauro is likely to succeed on the merits of its alter ego claims.**

As acknowledged in Centauro's moving papers, Bazzoni and CTEL Malta are in the case as alter egos of CTEL. As such, Bazzoni and CTEL Malta are liable for any breach of contract by CTEL. *See JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.*, 386 F. Supp. 2d 461, 479 (S.D.N.Y. 2005). To justify attachment based on alter ego status, Centauro must show that it is likely to succeed on the merits of the alter ego claims. Centauro has done so based on documentary and testimonial evidence. Moreover, in granting Centauro's motion to amend its complaint, the Court has already found that "Centauro has adequately made a prima facie showing that, under applicable law, the corporate form of [CTEL] may be disregarded and the corporate veil pierced…to reach [CTEL] Malta." Ex. 17 at 7.

Despite this Court's ruling which applied the relevant law, Bazzoni responds that the allegations on which the Court relied are insufficient. (Bazz. Opp. 6-7, ECF No. 164). To do so, he ignores the allegations on which the Court relied, and instead presents irrelevant facts, such as that he did not sign the Promissory Note in his personal capacity. Ignoring the well-documented Rothenberg-Bazzoni overlap between CTEL and CTEL Malta, Bazzoni insists that there is no overlap in personnel or operations. Bazzoni also resurrects an argument he first trotted out at his December 2016 Rule 30(b)(6) deposition for CTEL – that CTEL is not a real company and is

only a marketing brand.  (*Id.* 7-8).  Yet when confronted with examples of CTEL purporting to conduct business, including his own signature as "CEO" of CTEL, CTEL's bank account, and the numerous "charges" (i.e., bank loans) CTEL received and registered in the British Virgin Islands Registrar of Corporate Affairs, Mr. Bazzoni had no explanation.  *See, e.g.,* Dec. 5, 2016 Tr. at 18:21-20:11; 48:22-25; 51:12-52:4; 53:17-54:12; 111:10-12.[5]

      Mr. Bazzoni now claims that his December 2016 deposition effectively revoked his prior invocations of the Fifth Amendment privilege.  If his current brief is to be believed, then some of his prior invocations were in fact unlawful because they were in bad faith.  This gamesmanship only underscores his untrustworthiness as a basis for prejudgment attachment.  Mr. Bazzoni now claims that the prior invocations are void because he "never invoked the 5th Amendment" at his December 2016 deposition.  (Bazz. Opp. 9).  This is misleading and irrelevant.  Mr. Bazzoni could not invoke the privilege as a Rule 30(b)(6) witness.  Nevertheless, he **refused** to testify about CTEL Malta and its relationship to CTEL each time he was asked.  *See, e.g.*, Dec. 5, 2016 Tr. 112:2-113:2.  Moreover, none of this cancels out his prior invocations; it merely shows that he and his counsel did not invoke in good faith.  He and Mr. Rothenberg (who has yet to 'recant') cannot use this as both a shield and sword; the law is clear that Centauro is entitled to an adverse inference on this basis, and Defendants have cited no significant law to the contrary.

      To avoid alter ego liability CTEL Malta presents a counter-narrative, the sum of which is that it has actively sought to distance itself from Mr. Bazzoni and his entities since Centauro learned of its existence through this lawsuit.  It has supposedly done so despite the fact that Bazzoni and Rothenberg founded the entity, named it 'CTEL,' renamed it after an order of attachment issued here, and used it to trade oil, including through twice-forging a bill of lading to

---

[5] *See* Exhibit A to the Declaration of Matthew G. DeOreo, ECF No. 165-1.

9

execute a trade in CTEL Malta's favor in February 2017 (despite Bazzoni's supposed severing of his relationship by then). Now CTEL Malta predictably claims that it is a "Cisneros" entity that has nothing to do with Bazzoni. As noted in Centauro's moving papers, this is not the first time Bazzoni has invoked "Cisneros" to contradict his apparent control of entities. The truth of CTEL Malta's narrative remains to be seen. The parties will engage in discovery and Mr. Cisneros will have the opportunity to explain under oath his business dealings with individuals who have forged bills of lading and taken the Fifth Amendment at every turn.[6] For prejudgment attachment purposes, however, Centauro has adduced sufficient evidence to show that it is likely to succeed on the merits of the alter ego allegations in the Amended Complaint.[7]

## CONCLUSION

For the reasons stated, good cause exists for the Court to amend the Order of Attachment to include the assets of Bazzoni and CTEL Malta.[8]

Dated this 18th day of January 2018.

Respectfully submitted,

By: ___/s/ Byron Pacheco___
Donald L. Flexner
Randall W. Jackson
Byron Pacheco
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
T. 212-446-2300

---

[6] CTEL Malta incorrectly cites a 10-part alter ego test, despite this Court's prior ruling on the applicable law. (CTM Br. 17-19). That ruling is law of the case, and having presented no compelling reason to change it, CTEL Malta's contrary arguments must be disregarded. *Bandes v. Harlow & Jones, Inc.*, 826 F. Supp. 700, 706 (S.D.N.Y. 1993).
[7] CTEL Malta also incorrectly argues that its conduct is "legally irrelevant." (CTM Br. 21). This is incorrect; courts regularly look to defendant's conduct to decide whether it is a security risk. *Thornapple Associates, Inc. v. Sahagen*, No. 06 Civ. 6412 (JFK), 2007 WL 747861, at *5, * (S.D.N.Y. March 12, 2007) (collecting cases). CTEL Malta's conduct, as detailed in Centauro's motion papers, demonstrates that it poses such a risk.
[8] Centauro is unaware of the whereabouts of the $12 million CTEL Malta received from the Bankruptcy Court compromise. Even if it is located outside the physical boundaries of the State, it may still be subject to attachment. *See, e.g., Doubet LLC v. Trustees of Columbia Univ. in City of New York*, 99 A.D.3d 433, 434-35, (1st Dep't 2012).