IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

                          Plaintiff,

        vs.

ALESSANDRO BAZZONI, CINQUE TERRE
FINANCIAL GROUP, LTD., CT ENERGIA
LTD., and CT ENERGIA LTD. d/b/a
ELEMENTO LTD.,

                          Defendants.

Civil Action No. 15-cv-9003 (LTS) (SN)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**Table of Contents**

**Page**

Preliminary Statement.................................................................................................................. 1

Statement of Facts ....................................................................................................................... 2

Standard of Review...................................................................................................................... 7

Argument ...................................................................................................................................... 8

**I.**     Centauro has stated a claim for alter ego liability as to CTEL Malta.............................. 8

    **A.**     CTEL Malta misconstrues the relevant law.......................................................... 9

    **B.**     The Amended Complaint states a claim for alter ego liability. ........................... 10

    **C.**     Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply.................................................................................................................... 12

**II.**    CT Malta's ownership and financing cannot be decided on a motion to dismiss............ 13

**III.**   Leave to amend is appropriate if the Court dismisses any part of the Amended Complaint. .................................................................................................................................. 16

Conclusion ................................................................................................................................. 17

## Table of Authorities

**Cases**                                                                                          **Page**

*Accurate Grading Quality Assur., Inc. v. Khothari,*
   No. 12 Civ. 9130 (LTS), 2014 WL 5073576 (S.D.N.Y. Sept. 30, 2014) ................................... 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 8

*Baxter v. Palmigiano,*
   425 U.S. 308 (1976) ..................................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................. 8, 12

*Brink's Inc. v. City of New York,*
   717 F.2d 700 (2d Cir. 1983) ........................................................................................ 12

*Building Indus. Elec. Contractors Ass'n v. City of New York,*
   678 F.3d 184 (2d Cir. 2012) .......................................................................................... 8

*Capitol Records, LLC v. VideoEgg, Inc.,*
   611 F. Supp. 2d 349 (S.D.N.Y. 2009) ........................................................................... 8

*Chavis v. Chappius,*
   618 F.3d 162 (2d Cir. 2010) ........................................................................................ 16

*Deutsche Bank Nat. Trust Co. v. Morgan Stanley Mortgage Capital Holdings LLC,*
   97 F. Supp. 3d 548 (S.D.N.Y. 2015) ............................................................................. 7

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.,*
   722 F.3d 81 (2d Cir. 2013) ............................................................................................ 9

*Ferrara v. Smithtown Trucking Co.,*
   29 F. Supp. 3d 274 (E.D.N.Y. 2014) ...................................................................... 14, 17

*Geisler v. Petrocelli,*
   616 F.2d 636 (2d Cir. 1980) ........................................................................................ 14

*Gilbert v. Burnstine,*
   255 N.Y. 348 (1931) ...................................................................................................... 9

*Harris v. Mills,*
   572 F.3d 66 (2d Cir. 2009) ............................................................................................ 7

*Hayden v. Cnty. of Nassau,*
    180 F.3d 42 (2d Cir. 1999) ................................................................................ 16

*In re Currency Conversion Fee Antitrust Litig.,*
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ............................................................... 13

*In re Tyson,*
    433 B.R. 68 (S.D.N.Y. 2010) ............................................................................. 11

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,*
    181 F.3d 410 (3d Cir. 1999) ................................................................................. 5

*Transasia Commodities Ltd. v. Newlead JMEG, LLC,*
    45 Misc. 3d 1217(A), 2014 WL 6091958 (N.Y. Cty. Sup. Ct. 2014) ................... 9

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,*
    571 F.3d 221 (2d Cir. 2009) ................................................................................. 9

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) .......................................................... 12, 13

*Whitaker v. Am. Telecasting. Inc.,*
    261 F.3d 196 (2d Cir. 2001) ................................................................................. 8

*Xiotech Corp. v. Express Data Products Corp.,*
    11 F. Supp. 3d 225 (N.D.N.Y. 2014) ................................................................. 17

**Statutes**

Fed. R. Civ. P. 9(b) .............................................................................................. 12, 13

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1, 8, 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 7, 8, 9

Fed. R. Civ. P. 15(a)(2) ............................................................................................... 16

Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") respectfully submits this memorandum of law in opposition to Defendant CT Energia Ltd. d/b/a Elemento Ltd.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6).

## PRELIMINARY STATEMENT

Regardless of the latest name it uses, or the latest changes it makes to its corporate paperwork, CTEL Malta was created for the purpose of avoiding a debt owed to Centauro.[1] Defendant's CTFG and CTEL owe Centauro over $21 million pursuant to the unambiguous terms of a Promissory Note.  Shortly after executing the Note, they defaulted, and after repeated demands for payment, Centauro was forced to file this lawsuit.  Over the course of this two-year old lawsuit, Centauro learned that after the default, CTEL recreated itself as a Maltese company. CTEL Malta had the same corporate name ("CT Energia Ltd."), the same founder and CEO, Alessandro Bazzoni, and his right-hand man, Richard Rothenberg, the CFO, engaged in the same oil trading business as CTEL.  Centauro confronted Bazzoni with questions about the Maltese entity during a deposition.  In response, he refused to discuss CTEL Malta based on a supposed fear that the answers would expose him to criminal liability.  Centauro continued to dig.  It later learned that days after Bazzoni was confronted with these questions, he directed CTEL to change its name to "Elemento", in order to deceive Centauro and the marketplace about its true origins. On this basis Centauro sought leave to amend its complaint to add CTEL and Bazzoni as alter egos of existing defendant CTEL.

The Court reviewed Centauro's proposed amended complaint under the Rule 12 motion to dismiss standards.  It held that the Centauro had stated a claim for alter ego liability as to

---

[1] "CTFG" refers to defendant Cinque Terre Financial Group, Ltd.; "CTEL" refers to defendant CT Energia Ltd., a British Virgin Island company; "CTEL Malta" refers to alter ego defendant CT Energia Ltd. d/b/a Elemento Ltd. This action is stayed as to CTFG because it is in bankruptcy proceedings.

CTEL Malta and Bazzoni.  The Court also reviewed the relevant sources of foreign and domestic alter ego law and determined which standards govern Centauro's allegations.  In other words, the Amended Complaint has already survived a motion to dismiss during which the parties litigated precisely the grounds on which CTEL Malta now seeks dismissal.

CTEL Malta ignores all of this history.  Instead, through no less than five affidavits and dozens of accompanying exhibits, CTEL Malta has effectively filed an alternative pleading which asserts its own alternative set of facts.  In short, CTEL Malta claims that the Amended Complaint is moot ***because*** CTEL Malta mooted it.  Centauro sought leave to amend in October 2016; the Court granted leave to amend in August 2017.  In the ten-month interim, CTEL Malta admits that it systematically undermined Centauro's allegations by removing Bazzoni's name from corporate documents and shielding any public connection between its assets, and CTEL or Bazzoni.  In other words, to escape alter ego liability, CTEL Malta admits that it has behaved precisely as an alter ego would behave by altering its ownership structure and corporate documents in order to obscure its connection to a debt.

But even assuming all of what CTEL Malta says is true, none of this can be resolved on a Rule 12 motion.  A motion to dismiss tests the legal sufficiency of the factual allegations of the pleading; it does not weigh evidence or credit testimony.  The Court's only role at this stage of the litigation is to assess the Amended Complaint, for the second time, to determine whether its allegations – not CTEL Malta's alternative pleading – state a claim.  Because the Amended Complaint alleges a clear basis for alter ego liability, CTEL Malta's motion must be denied.

## STATEMENT OF FACTS

Faced with CTFG and CTEL's continued default on a $21 million Promissory Note, on November 17, 2015, Centauro filed a complaint against Alessandro Bazzoni, CTFG, CTEL, and

three purported affiliates – CT Energy Holding SRL ("CT Energy"), CT Energia Holding, Ltd.,

and CTVEN Investments SRL ("CTVEN").  That same day, Centauro moved for, and obtained a

preliminary order of prejudgment attachment against CTFG and CTEL.  *See* ECF No. 3.

Defendants subsequently appeared through counsel, *see* ECF No. 24, and Mr. Bazzoni was

personally served with the summons and complaint on February 14, 2016, while playing polo at

a luxury resort in the Dominican Republic.  ECF No. 52 ("Polo Field #3, Casa De Campo, La

Romana, Republica Dominicana").[2]

On March 11, 2016, the Court confirmed its preliminary order and issued the operative

Order of Attachment.  ECF No. 69.  It authorizes the attachment of any property in CTFG or

CTEL's name, or in which they have an interest, up to the sum of $21,092,213.00.  *Id.* at 4.

### Prior Motions to Dismiss

On February 25, 2016, defendants Bazzoni, CTFG, CTEL, CT Energia Holding and

CTVEN moved to dismiss the original Complaint.  *See* ECF No. 58.  That same day, CT Energy

answered the Complaint, and admitted that it had invested $32.2 million in a company called

Harvest Natural Resources, Inc. ("HNR"), but denied that Bazzoni provided any of the funding.

*Compare* Answer ¶¶ 37-39 (ECF No. 65) *with* Compl. ¶¶ 37-39 (ECF No. 4).  Two weeks later,

at a March 11, 2016 hearing, CT Energy notified the Court that it had amended its Securities &

Exchange Commission ("SEC") filings to clarify Bazzoni's lack of investment in HNR and lack

of ownership in CT Energy.  ECF No. 71 (March 11, 2016 Hearing Transcript, Tr. 24:17-26:24).

On April 25, 2016, CT Energy moved to dismiss the original Complaint.  *See* ECF Nos. 91, 92.

In its motion papers CT Energy again claimed that Bazzoni and CTEL own no part of CT

Energy's HNR investment.  *See* ECF No. 92 at 4, n.4.  Instead, CT Energy claimed that "Mr.

---

[2] *See also* https://www.casadecampo.com.do/, the website for the "Casa de Campo" luxury resort.

Cisneros is and always had been the sole owner of CT Energy." *Id.*  Put differently, according to

CT Energy's newly-created SEC documents, Mr. Bazzoni and CTEL had never owned nor were

they intended to benefit from oil revenues that would flow from HNR, contrary to what Bazzoni

had told Centauro, and what Centauro had alleged.  *See* Compl. ¶¶ 9-14, 38-40 (ECF No. 4).

Also in April 2016, CTFG was forced into bankruptcy in the British Virgin Islands.  ECF

No. 94 (April 14, 2016 Hearing Tr. 9:17-10:23).  On April 27, 2016, CTFG's liquidator initiated

a Chapter 15 petition to recognize the foreign proceeding in the United States Bankruptcy Court

for the Southern District of New York, *In re Cinque Terre Financial Group Limited*, No. 16-

11086 (Bankr. S.D.N.Y.) (the "CTFG Bankruptcy"), which triggered a stay of Centauro's claims

against CTFG.  *See* ECF No. 103.

On September 30, 2016, the Court issued a Memorandum Opinion and Order dismissing

all claims against Bazzoni, CT Energy, CT Energia Holding, and CTVEN for lack of personal

jurisdiction.  ECF No. 107 (the "MTD Order").  The Court rejected the defendants' motion to

dismiss the breach of contract claim against CTEL for its failure to pay the Note.  *Id.*

### Centauro's Amended Complaint

Centauro moved for leave to amend its complaint on October 21, 2016.  *See* ECF Nos.

110, 111, 112.  Because of new information regarding the second "CTEL" with an identical

name, personnel, operations, and corporate structure as the maker of the Promissory Note,

CTEL, Centauro sought to add this second "CTEL" as an alter ego defendant.  *See* ECF No. 112

at 7-8.  Both CTELs were officially formed as "CT Energia Ltd."  *Id.*  CTEL was formed as a

British Virgin Islands corporation in 2013.  The second CTEL was discovered in Malta, and was

created by CTEL, acting through Alessandro Bazzoni, in or about October 2015, several months

after Defendant CTEL had already incurred a debt to Centauro in May 2015, was in default, and

after Centauro had demanded payment. *Id.* at 7. Like CTEL, Bazzoni and Rothenberg were CTEL Malta's officers. *Id.*

Bazzoni began to alter CTEL Malta's organization and structure in order to obscure its connection with CTEL less than a month after this lawsuit was filed. First, on or about December 8, 2015, he transferred 100% of CTEL Malta's shares to another "CT" holding company called "CT Energia Oil and Gas Ltd." ("CTOG") – a Maltese entity formed and owned by Bazzoni. *Id.* at 7-8. Next, during a June 2016 deposition, Bazzoni repeatedly invoked the Fifth Amendment privilege regarding CTEL Malta. *Id.* at 8. Less than one week after responding to these deposition questions about CTEL Malta, on June 21, 2016, Bazzoni signed documents purporting to rename CTEL Malta to "Elemento Ltd." The next day, June 22, 2016, he also renamed CTOG to "Elemento Oil & Gas Ltd.", further obscuring both entities' connection to CTEL.

On August 28, 2017, the Court granted Centauro's motion to amend the complaint to add CTEL Malta and Bazzoni as alter ego defendants of CTEL. ECF No. 126 (the "MTA Order"). Centauro filed its Amended Complaint on September 8, 2017. ECF No. 129.

### CTFG Bankruptcy

During the ten months between when Centauro moved to amend its complaint, and when the Court granted the motion, a dispute arose regarding CTEL Malta in the CTFG Bankruptcy. In short, CTEL Malta was caught inappropriately using the bankruptcy debtor's license to trade oil in Peru to execute a $12 million transaction.[3] Allegedly operating on behalf of CTFG, on or

---

[3] These facts are drawn from public filings in the CTFG Bankruptcy, including that Court's October 24, 2017 "Memorandum of Decision and Order Granting Motion of Foreign Liquidator for Approval of Settlement Agreement." Docket No. 169, *In re Cinque Terre Financial Group Limited*, No. 16-11086 (Bankr. S.D.N.Y.). The Court may take notice of these judicial documents on a motion to dismiss. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citing cases).

about February 10, 2017, Bazzoni and Rothenberg authorized the purchase of 220,000 barrels of Naphtha fuel from Petroperu, the state oil company of Peru. They did so despite the fact that CTFG was in bankruptcy and no such authority was requested or given to them by CTFG's Liquidator. When it came time to complete the transaction, they requested that Petroperu change the bill of lading to be issued to "Elemento" rather than CTFG. Petroperu refused because "Elemento" was not the owner of the relevant license with whom it believed it had been transacting – CTFG was. Despite Petroperu's refusal, Bazzoni and Rothenberg nevertheless forged the bill of lading to say that it had been endorsed to "Elemento". The oil cargo was subsequently sold to a company called SK Energy Americas ("SK Energy"), and the bill of lading was endorsed a second time from "Elemento" to SK Energy.

Prior to the completion of the SK Energy sale, on March 14, 2017, Chemoil Latin America ("Chemoil"), filed an action in United States District Court for the Southern District of Texas, Case No. 4:17-cv-00813, *Chemoil Latin America v. Cinque Terre Financial Group Ltd., et al.* (S.D. Tex. 2017). Chemoil is also a creditor in the CTFG Bankruptcy, and claims to be owed $3,948,502.41 pursuant to an unfulfilled maritime oil contract from August 2014. Chemoil obtained a maritime writ of attachment on the allegation that CTFG and CTEL Malta/Elemento are alter egos, effectively freezing the $12 million in funds due to CTEL Malta (d/b/a Elemento) from SK Energy. As a result, the $12 million in funds from the SK Energy transaction were held for a time by the United States District Court for the Southern District of Texas, pursuant to the attachment writ.

The Chemoil Action triggered a series of events in the CTFG Bankruptcy. In April 2017, the Liquidator filed motions seeking (i) sanctions against Rothenberg, Bazzoni, and others for violation of the automatic bankruptcy stay; (ii) for a determination that the $12 million is

property of CTFG; and (iii) for relief from the bankruptcy stay so that CTFG could participate in

the Chemoil Action.  On July 20, 2017, without Centauro's approval (also a creditor in the

CTFG Bankruptcy), the Liquidator announced that he had reached a settlement with CTEL Malta

whereby CTEL Malta would receive nearly all of the $12 million from the SK Energy

transaction, minus $437,000 to the CTFG Bankruptcy estate, and the Liquidator's attorneys'

fees.  Centauro vigorously opposed the settlement.  In particular, Centauro objected to the

inconsistent, self-serving evidence CTEL Malta presented that lacked credibility on its face.  On

October 24, 2017, the New York Bankruptcy Court nevertheless approved the settlement.  It did

so without making any factual findings as to CTEL Malta's alter ego status.

### *CTEL Malta's Current Motion*

CTEL Malta appeared in the case on September 28, 2017.  The next day, its counsel

submitted an inappropriate letter to the Court seeking dismissal of the claims against it without

the need for motion practice.  *See* ECF No. 138.  The Court denied the request for violating its

Individual Practices.  ECF No. 141.  On November 28, 2017, the parties held a telephone

conference with Magistrate Judge Netburn during which CTEL Malta sought to stay all

discovery pending resolution of its motion to dismiss.  *See* ECF No. 159.  Judge Netburn denied

the request.  *Id.*  CTEL Malta's motion to dismiss followed on December 22, 2017.

### STANDARD OF REVIEW

### A.  Federal R. Civ. P. 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim,

the Court assumes the truth of the facts asserted in the complaint and draws all reasonable

inferences from those facts in favor of the plaintiff.  *See Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.

2009); *Deutsche Bank Nat. Trust Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 97 F.

Supp. 3d 548, 551-52 (S.D.N.Y. 2015) (Swain, J.).  To survive a motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.  In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider "only the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." *Building Indus. Elec. Contractors Ass'n v. City of New York,* 678 F.3d 184, 187 (2d Cir. 2012) (citation omitted).

## B.  Federal R. Civ. P. 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), dismissal is appropriate if the court does not have personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2); *Whitaker v. Am. Telecasting. Inc.,* 261 F.3d 196, 208 (2d Cir. 2001).  "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker*, 261 F.3d at 208.  However, the plaintiff need only make a *prima facie* showing of proper grounds for the court's exercise of personal jurisdiction.  *Id*.; *see also Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349, 356 (S.D.N.Y. 2009).  Moreover, any ambiguity is resolved in favor of the plaintiff.  *Accurate Grading Quality Assur., Inc. v. Khothari*, No. 12 Civ. 9130 (LTS), 2014 WL 5073576, at *5 (S.D.N.Y. Sept. 30, 2014).

<u>ARGUMENT</u>

## I.    Centauro has stated a claim for alter ego liability as to CTEL Malta.

CTEL Malta moves to dismiss under both Rules 12(b)(2) and (6) for substantially the same reason – a purported lack of an alter ego relationship between it and CTEL.  This is

8

redundant.  As the Amended Complaint acknowledges, Centauro's basis for personal jurisdiction over CTEL Malta is that it is an alter ego of CTEL.  Thus, if there is no valid alter-ego claim under 12(b)(6), then there also is no personal jurisdiction under 12(b)(2), and vice versa. However, as detailed below, the Amended Complaint does contain sufficient alter ego allegations; the Court has already reviewed it and agreed; and CTEL Malta offers nothing new that would cause the Court to revisit its prior holding.

### A.  CTEL Malta misconstrues the relevant law.

As a threshold matter CTEL Malta's motion should be denied outright because it applies the wrong law, and fails to engage the applicable law.

Pursuant to § 15 of the Promissory Note, CTEL consented to personal jurisdiction in New York.  Am. Compl., Ex. B at 7-8; *see also Gilbert v. Burnstine,* 255 N.Y. 348, 355 (1931) ("Jurisdiction over the person of the defendant may be acquired by his consent.") (internal quotation marks and citation omitted).  For purposes of a motion to dismiss, [w]here personal jurisdiction exists over a defendant, jurisdiction over his alter-ego is proper as well." *Transasia Commodities Ltd. v. Newlead JMEG, LLC*, 45 Misc. 3d 1217(A), 2014 WL 6091958, at *6 (N.Y. Cty. Sup. Ct. 2014); *see also Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("alter egos are treated as one entity for jurisdictional purposes").  Thus, because the Court has personal jurisdiction over CTEL, it also has personal jurisdiction over its alter egos, including CTEL Malta.  The only question before the Court now is whether the Amended Complaint "make[s] a *prima facia* proffer of facts that would, if true, suffice to demonstrate" that alter ego liability exists (i.e., personal jurisdiction).  MTA Order 6 (citing *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

The Court has twice considered alter ego liability in the context of the motion to dismiss standards and construed the relevant foreign law.  *See* MTD Order 6-9; MTA Order 6-8.  It did

so after considering arguments regarding New York law, British Virgin Islands law, and affidavits from foreign law experts, including on Maltese law.  After weighing the various authorities, the Court held that to state an alter ego claim, first, "the Court must determine whether Plaintiffs have proffered plausibly that [CTEL] misused [its] corporate form to avoid or conceal liability to Plaintiff."  MTA Order 7 (applying British Virgin Islands law).  Second, there is a "temporal requirement" that the corporate form has been "used as a way to evade prior, existing responsibilities."  *Id.*

CTEL Malta ignores all of this and instead insists that a ten-part New York test applies. *See* Br. 16-17.  It does so based on the theory that because CTEL Malta is incorporated in Malta, and Maltese and New York law are similar, New York law applies.  This is flat wrong.  As the Court articulated in the MTD Order, it is the law of **CTEL's** place of incorporation that governs, not CTEL Malta's.  Personal jurisdiction already exists over CTEL, and to decide whether to pierce CTEL's corporate form and reach its alleged alter ego CTEL Malta, "the law of the BVI governs."  MTD Order 7.  Having applied the wrong law, and failed to even engage the applicable law, CTEL Malta's motion should be denied.

**B. The Amended Complaint states a claim for alter ego liability.**

Centauro's allegations in the Amended Complaint meet the two part standard that applies under BVI law.  First, Bazzoni and CTEL have abused CTEL's corporate form.  The Amended Complaint  alleges that "CTEL and Bazzoni are one and the same" in that Bazzoni uses CTEL's accounts for personal expenses, including purchasing and renovating property for himself and his friends, and paying for polo tournaments, luxury travel, automobiles, and medical expenses, among other things.  Am. Compl. ¶ 47.  Second, CTEL and Bazzoni created and used CTEL Malta to avoid CTEL's pre-existing debt to Centauro.  *Id.* ¶ 49.  CTEL created a second "CTEL" with an identical name, personnel, operations, and corporate structure as the maker of the

Promissory Note, CTEL. *Id.* ¶ 44. The second CTEL (CTEL Malta) was discovered in Malta, and was created by CTEL, acting through Alessandro Bazzoni. *Id.* The timing of CTEL Malta's creation is pivotal. CTEL Malta was created by CTEL ***after*** it incurred a debt to Centauro; ***after*** CTEL was in default on that debt; and ***after*** Centauro had demanded payment. Equally important, CTEL, acting through Bazzoni, directed that the second CTEL change its name to "Elemento," to remove the "CT" moniker typically associated with Bazzoni and his companies. *Id.* He did so ***after*** Centauro filed this lawsuit; ***after*** Centauro obtained an order attaching over $21 million of CTEL's assets; and only a few days ***after*** Centauro asked Bazzoni about the entity during a deposition. The Amended Complaint alleges that CTEL Malta was created alongside two other "CT" Malta entities, CTOG, and CT Energia Holding. Centauro alleges that these entities were created or used by CTEL, operating through Bazzoni, to avoid a preexisting debt to Centauro and to use their separate corporate forms to shield CTEL from that obligation. *Id.* ¶ 45. These allegations directly address CTEL Malta alter ego status, particularly given the "temporal requirement" under the laws of the British Virgin Islands for piercing the corporate veil. *See* MTD Order 7 (citing *In re Tyson*, 433 B.R. 68 (S.D.N.Y. 2010)).

CTEL Malta's response is to proclaim that these allegations do not contain the "requisite particularity." Br. 18. At best, CTEL Malta grudgingly concedes that these allegations do in fact satisfy two of the (inapplicable) ten-factor standard it has concocted. *Id.* To the contrary, the Court has already reviewed these exact allegations and held that they constitute "a *prima facia* showing that, under applicable law, the corporate form of [CTEL] may be disregarded and the veil pierced…to reach [CTEL Malta]." MTA Order at 7. CTEL Malta completely ignores this prior holding. It further makes no effort to distinguish its motion from the failed arguments the other defendants made in opposing Centauro's motion to amend the complaint.

11

Moreover, developments over the course of this litigation confirm that the alter ego allegations are not simply possible, but plausible. *See Twombly*, 550 U.S. at 554. In particular, deposition testimony from CTEL and CTEL Malta's officers, Bazzoni and Rothenberg, corroborate the factual allegations on which the Court found that Centauro could proceed with its alter ego claims. They were given an opportunity to explain their conduct under oath. Rather than discuss how their creation and renaming of shell companies was the honest work of a trading company, they instead invoked their Fifth Amendment privilege on every relevant topic. At his deposition Bazzoni was explicitly asked about CTEL Malta and its connection to CTEL. In response he repeatedly invoked the privilege.

It is black letter law that a defendant's or defendant's employee's invocation of the Fifth Amendment privilege against self-incrimination in a civil case will entitle the plaintiff to an adverse inference. *See Baxter v. Palmigiano,* 425 U.S. 308, 318-20 (1976); *Brink's Inc. v. City of New York,* 717 F.2d 700, 707-10 (2d Cir. 1983). To be sure, Rothenberg and Bazzoni's admissions that they cannot answer questions under oath for fear of self-incrimination about: (i) CTEL's structure and finances; (ii) CTEL's attempts to shield its assets through CTEL Malta; and (iii) the co-mingling of CTEL's funds with their own will allow the fact-finder to infer that CTEL and CTEL Malta are alter egos of one another and of Bazzoni. At this stage, however, Centauro need only show plausibility of the allegations, which their conduct surely demonstrates.

## C. Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply.

CTEL Malta contends that Centauro's alter ego allegations "must meet Rule 9(b)'s heightened pleading standard" simply because the Amended Complaint includes a fraud claim. Br. 15. That is not the law. In support CTEL Malta cites a single case that does not even stand for that proposition, *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198 (S.D.N.Y. 2002). There the Court stated that "[w]hether Fed.R.Civ.P. 9(b) applies

12

to veil-piercing claims has been characterized as a knotty question…depending largely on whether the particular veil-piercing claim asserted in the complaint is based on allegations of fraud." *Id.* at 222-23.  In fact, "the heightened pleading standard in Fed.R.Civ.P. 9(b) need not be met in every case in which a claimant seeks to lift the corporate veil…" *Id.* at 223 (citations and internal quotation marks omitted) (emphasis in original). Other courts similarly adopt "the more well-reasoned rule…that where the veil-piercing claims are not based on allegations of fraud, the liberal notice pleading standard of Rule 8(a) applies." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003).

Here, Centauro has asserted a single cause of action for fraudulent inducement related to CTEL's provision of false due diligence information in order induce the Promissory Note.  Am. Compl. ¶¶ 63-72.  This fraud is wholly unrelated to the alter ego allegations regarding the creation and functioning CTEL Malta.  Thus, it cannot be said that Rule 9(b) applies: the alter ego allegations are not based on the same fraud as the fraudulent inducement cause of action.

## II.    CT Malta's ownership and financing cannot be decided on a motion to dismiss.

To distract the Court from the lack of legal support for its motion, CTEL Malta has submitted so-called "evidence" purporting to affirmatively disprove the allegations in the Amended Complaint.  CTEL Malta offers no less than **<u>five</u>** evidentiary declaration and dozens of exhibits in an effort to seek premature dismissal: (i) the Declaration of Michael T. Sullivan, with thirty-seven (37) exhibits; (ii) the Declaration of Eduardo Cisneros (the son of its supposed owner, rather than the owner himself) with two (2) exhibits; (iii) the Declaration of Liana Galanti, with six (6) exhibits; (iv) the Declaration of Carlos Galindez, with three (3) exhibits; and (v) the Declaration of Joan Burton Jensen (who purports to be general counsel of a corporation that is not a party to this dispute), with four (4) exhibits.  CTEL Malta's submission of these materials on a motion to dismiss is improper for a host of reasons.  For starters, the declarations

13

are replete with inconsistences and the witnesses purport to know facts well beyond their knowledge (for example, Mr. Galindez and Ms. Galanti provide no basis for testifying about events that clearly predated their tenure; they appear to be no more than a mouthpiece for counsel's arguments).  In addition, discovery is ongoing, and Centauro has had no opportunity to test any of this information through the normal channels.

Finally, CTEL Malta has confused a motion to dismiss, which tests only the sufficiency of a plaintiff's allegations, with summary judgment or trial, which test the facts themselves. *See Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see also Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 285 (E.D.N.Y. 2014) (Defendant's challenge to the veracity of facts "incorrectly implies that plaintiffs must prove, rather than simply allege, the existence of alter ego liability at this juncture.").  The function of a Rule 12 motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler*, 616 F.2d at 639.

Despite its overheated rhetoric and accusations, CTEL Malta does not cite a single case that would allow a court to consider five evidentiary affidavits and dozens of exhibits on a motion to dismiss.  We are told that "[o]verwhelming evidence demonstrates that [CTEL Malta] was never the alter ego of [CTEL]."  Br. 20.  Moreover, "[e]vidence produced in the Bankruptcy Case eviscerates" the allegations in the Amended Complaint.  *Id.* at 13.  And further, that the Amended Complaint "verges on the sanctionable" and was filed in "bad faith" because Centauro allegedly knew its allegations were wrong, based on CTEL Malta's assertions during its dispute with CTFG in the Bankruptcy Court.  *Id.* at 20.

**_First_**, all of this is beyond the pale for a motion to dismiss.  As noted, the motion only tests the pleadings; CTEL Malta's injection of purported evidentiary affidavits, some of which

14

were created solely to defeat the Amended Complaint, have no place in this motion.  Moreover, CTEL Malta recently trotted this argument out before the Magistrate Judge, when it sought to stay discovery pending resolution of its motion to dismiss, because it claimed to have evidence that the Amended Complaint was inaccurate.  It failed.  Magistrate Judge Netburn denied the request and ordered 120-days of discovery precisely so that the parties could investigate these allegations through the normal discovery process.  *See* ECF No. 159.

**_Second_**, CTEL Malta fails to mention that Centauro vigorously contested the self-serving and inconsistent affidavits it had created in order to convince the CTFG bankruptcy liquidator to settle a dispute.  CTEL Malta has again trotted out much of this deficient "evidence" to evade liability here (i.e., the Declaration of Carlos Galindez).  The Bankruptcy Court resolved CTEL Malta's dispute with CTFG – which was over CTEL Malta's admitted forgery of commercial paper and theft of CTFG's oil trading license – by imposing a settlement.  In so doing, in language CTEL Malta also fails to mention, the Bankruptcy Court explicitly refused to rule on CTEL Malta's alter ego status:

> On a motion to approve a settlement…, the Court does not decide underlying questions of law or fact...In resolving the Centauro Litigation, it may be necessary for the District Court to determine whether [CTEL Malta] is the *alter ego* of CTEL [].  In contrast, in resolving the Motion [to approve the settlement], the Court merely must canvass the issues and determine whether the settlement falls below the lowest point in the range of reasonableness…In doing so, the Court **_need not, and will not_**, rule on whether [CTEL Malta] is an *alter ego* of the Debtor, CTEL [] or any other party.  (citations omitted, emphasis added).

Docket No. 169 at 23, *In re CTFG Ltd.*, No. 16-11086.  Contrary to CTEL Malta's misdirected accusations, Centauro has no duty to credit the representations it made to the Bankruptcy Court – which that court also refused to pass judgment on in approving the settlement.

**III.     Leave to amend is appropriate if the Court dismisses any part of the Amended Complaint.**

Although CTEL Malta has requested that the Court dismiss the Amended Complaint without leave to amend, (Br. 22), it has provided no basis for such a dismissal.  Pursuant to Federal Rule of Civil Procedure 15, [t]he court should freely give leave [to amend a pleading] when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Thus, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999).  The "district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010).

CTEL Malta's injection of an alternate set of facts provides a roadmap for Centauro to make additional alter ego allegations, and potentially assert additional claims against additional defendants.  The core of its factual claims are that "Cisneros" is its true owner, and that during the course of this litigation it has altered its corporate documents to remove any outward appearance of Bazzoni's involvement.  Br. 5-8.  Of course, this is not the first time "Cisneros" has appeared in this case for the purpose of contradicting legal filings regarding Bazzoni entities. In April 2016, attorneys for then-defendant CT Energy Holding SRL appeared in the case to do just that:  they claimed that SEC documents which showed that Bazzoni had ownership in the entity were in fact false **at the time they were filed**.  *See* ECF No. 92 at 4, n.4.  Indeed the day before a court hearing, they amended those SEC filings to reflect what the supposedly true ownership structure.  *See* ECF No. 71 (March 11, 2016 Hearing Transcript, Tr. 24:17-26:24). Counsel insisted that "Mr. Cisneros is the hundred percent" owner of the entity, and that Centauro's claims against that entity were "essentially a case of mistaken identity."  *Id.* at Tr. 26:7-9.  Eighteen months later CTEL Malta is now also claiming mistaken identity.

16

If its motion papers are to be believed, CTEL Malta has been busy secreting assets, renaming itself and dissolving and founding new entities in response to this lawsuit.  Meanwhile its officers have refused to answer questions about CTEL Malta under oath for supposed fear of self-incrimination and have participated in forging commercial paper for their own gain.  On the basis of this information Centauro could further amend its complaint to correct any deficiency in its alter ego allegations.[4]  Indeed, in light of CTEL Malta's conduct, Centauro also has a basis for adding additional fraud, civil conspiracy, and civil RICO claims in any amended pleading.

## CONCLUSION

For the reasons stated, the Court should deny CTEL Malta's motion to dismiss in its entirety.  If the Court were to dismiss any part of the Amended Complaint, Centauro would respectfully request leave to amend.

Dated this 18th day of January 2018.

Respectfully submitted,

By: ___/s/  Byron Pacheco_____
      Donald L. Flexner
      Randall W. Jackson
      Byron Pacheco
      BOIES SCHILLER FLEXNER LLP
      575 Lexington Avenue
      New York, NY 10022
      T. 212-446-2300

---

[4] *See, e.g., Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 284 (E.D.N.Y. 2014) (granting leave to amend alter ego allegations after recognizing that "the test of alter ego status is flexible"); *Xiotech Corp. v. Express Data Products Corp.*, 11 F. Supp. 3d 225, 237-38 (N.D.N.Y. 2014) (granting leave to amend where plaintiff's "alter ego allegations can easily be remedied by pleading more specific facts in support of that theory.").