# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CENTAURO LIQUID OPPORTUNITIES    :
MASTER FUND, L.P.    :
    :
        Plaintiff,    :
    :    15 Civ. 9003 (LTS) (SN)
        - against -    :
    :
ALESSANDRO BAZZONI, CINQUE    :
TERRE FINANCIAL GROUP, LTD.,    :
CT ENERGIA LTD., and CT ENERGIA    :
LTD. d/b/a ELEMENTO LTD.,    :
    :
        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF EDUARDO CISNEROS

EDUARDO CISNEROS, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am the son of Ricardo J. Cisneros ("RJC"), the ultimate beneficial owner of Cedaridge Investments SA ("Cedaridge") and CISA Holdings Limited ("CISA").

2.    Set forth below are facts respecting Elemento Ltd. ("Elemento"), a defendant herein.  The statements asserted are based on my personal knowledge to the best of my recollection or, when indicated, upon information and belief.

3.    In this declaration I explain:

    a.  The ownership of Elemento; and

    b.  The involvement in Elemento of Cedaridge and CISA.

4.    In brief,

    a.  Since February 7, 2017, Elemento has been 100 percent owned by CISA, which is 100 percent ultimately beneficially owned by RJC.



b. Since January 2016, Elemento's activities have been funded by the proceeds of a $30 million loan from Cedaridge (the "Cedaridge Loan"), which is also 100 percent beneficially owned by RJC.

**The Involvement of RJC Companies and the Creation of Elemento**

5. In late September 2015, acting on behalf of RJC, I participated in discussions among Richard Rothenberg, Alessandro Bazzoni, and Francisco D'Agostino in connection with their request for financial support for a new company to be established in Malta to pursue oil trading.

6. During those discussions, Messrs. Rothenberg and Bazzoni explained that they were involved with other companies based in the British Virgin Islands ("Original BVI Companies") involved in other aspects of the oil business, including distribution, storage, and exploration, but that they intended to pursue oil "trading" exclusively through the new Malta entity. This was a point of importance because I wanted assurance that their Original BVI Companies would not compete with the contemplated new Malta oil trading business.

7. Based on assessments of the new oil trading venture, I decided to continue discussions with an aim to finance a new venture which Messrs. Rothenberg and Bazzoni represented would be organized under the laws of Malta, and which would be independently funded and ultimately controlled by RJC, and distinct and independent from the other operations of Messrs. Rothenberg and Bazzoni, including the previously described Original BVI Companies. Messrs. Rothenberg and Bazzoni again assured me that his new venture would pursue oil trading only; it would not pursue oil distribution, storage, exploration, or any other activity.

2



8.      At some point during this period, I became aware of litigation against one or more of Mr. Bazzoni's entities, in particular, the claims of the plaintiff in the above-captioned action.

9.      By December 2015, on behalf of RJC, I agreed to loan up to $30 million to allow the proposed new venture to begin doing business (the "Financing"). None of the Financing was directly or indirectly related to, or sourced from Bazzoni.

### The Financing

10.      To the best of my recollection, the contemplated Financing structure was generally intended as follows:

> a.  Cedaridge, a company of which RJC was the ultimate beneficial owner, would make available up to $30 million as a loan to a Malta holding company, then called CT Energia Oil & Gas Ltd. ("CTEO&G-Malta") to be used to capitalize its operating subsidiary, eventually named Elemento, which was to be organized in Malta.
>
> b.  Cedaridge would become a 50 percent shareholder of CTEO&G-Malta and would have the right to appoint 50 percent of the seats on CTEO&G-Malta's board of directors.
>
> c.  Neither CTEO&G-Malta nor Elemento would pursue any material business transaction without the approval of 100 percent of CTEO&G-Malta's board of directors, half the seats of which were allocated to Cedaridge.

11.      I have been informed that Cedaridge's acquisition of shares in CTEO&G-Malta was delayed because of certain regulatory requirements. The parties, however, proceeded with the Financing with Cedaridge. Further, Cedaridge was to acquire the right to appoint two of CTEO&G-Malta's directors and the parties acted as such.

12.      Cedaridge caused the transfer of the Financing proceeds, $30 million, from its affiliate and another of RJC's companies, Brightpark Investments LLC, to CTEO&G-Malta. True and correct copies of the transfer records are attached as Exhibits A and B. None of the Financing proceeds was directly or indirectly related to or sourced from Bazzoni.



## CISA Acquires Elemento

13.     Because of regulatory delays, Cedaridge did not become a shareholder in CTEO&G-Malta at the time of Financing.  I understand that Messrs. Bazzoni and D'Agostino caused CTEO&G-Malta to transfer its shareholding interest in Elemento to CISA.  Like Cedaridge, CISA's ultimate beneficial owner was RJC.

14.     I am told that CISA completed its acquisition of Elemento in February 2017.

## The Alter Ego Allegations

15.     From the beginning of 2016, Elemento was a wholly-owned subsidiary of CTEO&G-Malta the control of which was effectively shared by Cedaridge pursuant to the Shareholders' Agreement.  Cedaridge was and is beneficially owned by RJC and was and is unrelated to Mr. Bazzoni.

*[Space Intentionally Left Empty]*

*[Signature Page Follows]*



CONFIDENTIAL

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 31, 2017.