UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

        Plaintiff,

  -v-                                      No. 15 CV 9003-LTS-SN

ALESSANDRO BAZZONI, et al.,

        Defendants.

--------------------------------------------------------x

## MEMORANDUM ORDER

Before the Court is a motion filed by Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") to amend the operative Order of Attachment in this case (docket entry no. 69, the "Attachment Order") to include Defendants Alessandro Bazzoni and CT Energia Ltd. d/b/a Elemento Ltd. ("Elemento"). (Docket entry no. 149, the "Motion.") The Court held oral argument on the Motion on July 19, 2018 (the "Hearing"). The Court has carefully reviewed and considered all of the submissions made in connection with the Motion, including the arguments presented at the Hearing and, for the following reasons, the Motion is denied.

Pursuant to New York Civil Practice Law and Rules section 6212(a), as the party seeking confirmation of the preliminary order of attachment, Centauro has the burden of establishing that the following requirements are met: (1) that there is a cause of action, (2) that Centauro has a probability of success on the merits, (3) that a ground for attachment enumerated in CPLR section 6201 is present, and (4) that the amount sought by Plaintiff exceeds the value of all counterclaims.

The Court finds that Centauro has demonstrated that it has a valid cause of action against the other two Defendants, Cinque Terre Financial Group Ltd. ("CTFG") and CT Energia, Ltd. ("CTEL"), who are signatories to the promissory note that is the subject of this action, and whose assets are currently subject to the Attachment Order.  The Court also finds that an enumerated ground in CPLR section 6201(1) is present, in that the Defendants are foreign corporations not qualified to do business in New York.  The Court finds that the amount sought by Centauro exceeds the value of all counterclaims, as Defendants have not identified any counterclaim for damages they would plead in this action.

Bazzoni and Elemento principally contest whether Centauro has met its burden of demonstrating a probability of success on the merits of its breach of contract claim against CTEL and its claim that Defendants Bazzoni and Elemento are alter egos of CTEL and thus liable for CTEL's debt to Centauro.  As explained in the Court's September 30, 2016, Memorandum Opinion and Order, "alter egos are treated as one entity" for jurisdictional purposes.  (Docket entry no. 107, the "September Opinion.")  Because Centauro contends that Bazzoni and Elemento are alter egos liable for the debt of CTEL, the law of the British Virgin Islands ("BVI"), where CTEL is incorporated, governs the assessment of Plaintiff's alter ego theory.  (Id. at 7.)  Under BVI law, a plaintiff seeking to pierce the corporate veil must allege that defendant misused a corporate façade, and that the misuse occurred after the liability arose.  (See id.)

Centauro argues that it is likely to succeed on the merits of its alter ego liability claims against Bazzoni and Elemento based principally on corporate formation documents for Elemento and the deposition testimony of Bazzoni and CTEL officer Richard Rothenberg, who both invoked their Fifth Amendment privilege when asked about CTEL and Elemento's

structures and finances, thus entitling Centauro to an adverse inference.  (See docket entry no. 150, Pacheco Decl. at Exs. 8, 9, 10.)  In its Amended Complaint, Centauro has alleged that Bazzoni, the sole owner of CTEL, formed Elemento in October 2015, after CTEL executed a promissory note with Centauro, in order to shield CTEL's assets from Centauro.  (Docket entry no. 129, the "AC," ¶¶ 44-45.)  Centauro alleges, on information and belief, that CTEL and Elemento are principally engaged in the same oil trading ventures, using the same offices, email accounts, revenue streams, and personnel, and that Elemento's assets and profits ultimately flow back to CTEL through Bazzoni, who has used CTEL's accounts to purchase personal property and pay for personal expenses.  (AC ¶¶ 43, 45-46, 48.)  Based principally on Bazzoni's invocation of his Fifth Amendment right against self-incrimination in response to general questions about misuse of Elemento and CTEL, Plaintiff asserts that the Court should infer that Bazzoni used Elemento to hide CTEL's assets from Centauro.

In response, Elemento proffers factual affidavits and other written material that purports to establish, among other things, that Elemento was created to pursue an oil trading venture with non-party Ricardo Cisneros, and did not conduct any substantial business activity before receiving a $30 million financing in January 2016 from Cedaridge, an entity owned by Cisneros.  (See docket entry no. 169, Cisneros Decl. ¶¶ 5-7; docket entry no. 170, Galanti Decl. ¶ 6; docket entry no. 171, Galindez Decl. ¶¶ 10-11.)  Elemento proffers that there has never been a financial relationship between CTEL and Elemento, that Bazzoni transferred control of Elemento to Cisneros and his companies through various shareholder and share purchase agreements, and that Bazzoni's ownership interest in Elemento was terminated in February 2017, when Elemento was acquired by CISA Holdings Limited, another company owned by Cisneros.  (Docket entry no. 168, Sullivan Decl. Ex. KK; Cisneros Decl. ¶¶ 4, 10; Galindez Decl. ¶ 17; docket entry no.

172, Jensen Decl. Exs. A, B.)  Elemento contends that, other than Richard Rothenberg, there are no employees of Elemento who were also employees of CTEL.  (Galindez Decl. ¶ 28.)  Elemento does not appear to dispute that it was established by Bazzoni in October 2015, and that Bazzoni was the sole owner of Elemento until March 2016, when shares were issued to an individual named Franscisco D'Agostino.  (See Sullivan Decl. Exs. DD, GG, HH; Galindez Decl. ¶ 7.)  For his part, Bazzoni cites his testimony as a corporate representative on behalf of CTEL, in which he testified that CTEL was "just a company that was created for marketing purpose[s] . . . [that] did not have any activity . . . related to . . . the purchase and sale of oil," and that Bazzoni never used CTEL funds to purchase personal property.  (Docket entry no. 165, DeOreo Decl. Ex. A at 16:13-21, 113:10-13.)

On the basis of the current record, the Court finds that Centauro has not demonstrated a probability of success on its alter ego liability claims against Bazzoni and Elemento.  The largely unrebutted evidence proffered by Elemento and Bazzoni calls into question the extent to which Elemento and Bazzoni share offices, email accounts, personnel, financial accounts, and revenue streams with CTEL.  Other than the apparently undisputed fact that both Elemento and CTEL were owned and operated solely by Bazzoni from October 2015 to March 2016, and the fact that Elemento was created after CTEL signed the promissory note held by Plaintiff, the record before the Court does not contain any evidence to support Plaintiff's assertion that Elemento and Bazzoni misused CTEL's corporate form by, for example, diverting CTEL's funds, in an effort to evade liability under the promissory note.  Indeed, the facts proffered by Elemento suggest that, even during the period when it was solely controlled by Bazzoni, Elemento did not engage in any business activity, including any financial transactions with CTEL.

At the Hearing, Centauro argued that CTEL was connected to Elemento based upon a September 29, 2015 email between Centauro managing partner Yvonne Morabito and Rothenberg, in which Rothenberg states that CTEL was "still in the process of setting up the financing" for certain deals.  (Docket entry no. 150, Pacheco Decl. Ex. 21.)  This email, which refers solely to "those transactions we discussed" and "these deals," contains no context from which the Court can infer that the transactions or deals being discussed were ones that were diverted or in any other way related to Elemento, and the simple fact that the email was sent around the time Elemento was created does not support such an inference.  Centauro also argued at the Hearing that, despite Bazzoni's execution of various shareholder and share purchase agreements, ownership of Elemento was not transferred until February 2017, several months after this Court had entered the Attachment Order.  (See Cisneros Decl. ¶ 14.)  While the parties do not appear to contest that Elemento was acquired by CISA Holdings Limited in February 2017, this fact alone does not suggest that CTEL's corporate form was misused during the period before February 2017, or that Elemento operated as CTEL's alter ego during that time.  Finally, Centauro argued at the Hearing that Elemento was obligated to "act[] on behalf of the CT Energia Group and controlled affiliates," including CTEL, based on a December 2015 shareholders agreement between Bazzoni, D'Agostino, and Cedaridge.  (Jensen Decl. Ex. 1 ¶ 2.)  However, without additional evidence to support Centauro's assertion that "CT Energia Group and controlled affiliates" includes CTEL, or that Elemento did in fact "act on behalf of" CTEL in some way, this evidence does not aid Plaintiff in demonstrating a likelihood of success on the merits of its alter ego claim.

Because Centauro has not proffered evidence to support its allegations that CTEL and Elemento are principally engaged in the same business ventures, using the same offices,

email accounts, revenue streams, and personnel, that Elemento's assets and profits ultimately flow back to CTEL through Bazzoni, who has used CTEL's accounts to purchase personal property, or that Bazzoni or Elemento misused CTEL, the Court finds that Centauro has not met its burden, on the basis of the current record, of demonstrating a likelihood of success on the merits of its alter ego claims.  Centauro's motion to amend the Attachment Order is accordingly denied.  In light of this determination, the Court does not address the parties' remaining arguments regarding consideration under the promissory note.  This Memorandum Order resolves docket entry no. 149.

      SO ORDERED.

Dated: New York, New York
       July 23, 2018

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            United States District Judge