UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

                Plaintiff,

    vs.

ALESSANDRO BAZZONI, CINQUE TERRE
FINANCIAL GROUP, LTD., CT ENERGIA
LTD.,  and CT ENERGIA Ltd. d/b/a,
ELEMENTO LTD.,

                Defendants.

Case No. 15-cv-9003 (LTS)

---

## MEMORANDUM OF LAW OF DEFENDANTS ALESSANDRO BAZZONI AND CT ENERGIA|LTD. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**TACOPINA & SEIGEL**
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
*Attorneys for Defendants Alessandro Bazzoni*
*and CT Energia Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………...……………………………………………………ii

INTRODUCTION…………………………………………………………………………………………...1

PRELIMINARY STATEMENT AND BRIEF STATEMENT OF FACTS………………………1

POINT I        PLAINTIFF'S BREACH OF CONTRACT CLAIMS
               FAIL FOR LACK OF CONSIDERATION……………………………….3

POINT II       PLAINTIFF HAS FAILED TO ESTABLISH THAT
               BAZZONI IS AN ALTER EGO OF CTEL……………………………….7

CONCLUSION………………………………………………………………………………………..13

# TABLE OF AUTHORITIES

*Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095 (1993)…………………………………....5

*Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014)………………………………………………………………………..9

*Beck v. Sheldon*, 259 N.Y. 208 (1932)………………………………………………………4

*Brodie v. New York City Transit Auth.*, No. 96 CIV. 6813 LMM, 2000 WL 557313 (S.D.N.Y. May 5, 2000)………………………………………………………………………...4

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 CV 9003-LTS-SN, 2016 WL 5719793 (S.D.N.Y. Sept. 30, 2016)……………………………………………………8

*Country Trust Co. of NY v. Mara*, 273 N.Y.S. 597 (1st Dep't 1934)……………………………...6

*Davis v. Sisti*, 148 N.Y.S.2d 76 (Sup. Ct. Oneida Co. 1955)…………………………………...5

*FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 794 F. Supp. 2d 449 (S.D.N.Y. 2011)……………………………………………………………………………10

*Glahn v. Clark*, 251 A.D. 747 (2d Dep't1937)………………………………………………4

*Hemmings v. Sutton*, 151 A.D.3d 457 (1st Dep't 2017)………………………………………..3

*In re Optimal U.S. Litig.*, No. 10 CIV 4095 SAS, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011)………………………………………………………………...9, 11

*In re Tyson*, 433 B.R. 68 (S.D.N.Y. 2010)…………………………………………..…8, 9

*Neo Universe Inc. v. Ito*, 48 N.Y.S.3d 352 (1st Dep't 2017)…………………………………4

*Samet v. Binson*, 122 A.D.3d 710 (2d Dep't 2014)……………………………………..…3

*Schwartzreich v. Bauman-Basch*, 231 N.Y. 196 (1921)………………………………………6

*Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F.Supp. 2d 459 (S.D.N.Y. 2013)……………………………………………………………………………...6

*Wahl v. Barnum*, 116 N.Y. 87 (1889)………………………………………………………...5

*Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441 (1982)……………………………………………5

## INTRODUCTION

Defendants Alessandro Bazzoni ("Bazzoni") and CT Energia Ltd. of the British Virgin Islands ("CTEL") respectfully submit this Memorandum of Law in opposition to the Motion for Partial Summary Judgment of Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Plaintiff" or "Centauro") seeking judgment on its breach of contract and alter-ego claims.

In opposition to Plaintiff's Motion for Partial Summary Judgment, Bazzoni and CTEL respectfully incorporate, as if set forth herein: (a) the Summary Judgment papers filed by Bazzoni and CTEL on September 28, 2018; (b) the Summary Judgment papers filed by Defendant CT Energia Ltd. d/b/a Elemento Ltd. ("Elemento" or "CTEL Malta") on September 28, 2018; and (c) Elemento's papers filed today in opposition to Plaintiff's Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT AND BRIEF STATEMENT OF FACTS

Bazzoni and CTEL respectfully refer the Court to the Preliminary Statement and Statement of Facts of their September 28, 2018 Memorandum of Law in support of their Motion for Summary Judgment ("Prior MOL").

However, some initial points should be made concerning the arguments raised by Plaintiff in its Motion for Partial Summary Judgment. **First**, as to Plaintiff's breach of contract claims arising from the May 21, 2015 Promissory Note ("Promissory Note") executed by Cinque Terre Financial Group, Ltd. ("CTFG") and CTEL, these claims fail for lack of consideration. Plaintiff argues in its Motion that the consideration for the Promissory Note was Centauro's purported detriment in foregoing a claim against CTFG arising under the prior Joint Venture Agreement ("JVA") between Centauro and CTFG. However, the plain and unambiguous terms of the Promissory Note state that Centauro did not release its right to sue CTFG under the JVA, and was free to sue thereunder after the Promissory Note was

1

executed.

**Second**, as to Plaintiff's alter ego claim against Bazzoni, Plaintiff's motion papers show that Centauro is arguing that the alter ego of CTEL is Elemento, not Bazzoni in his personal capacity. Plaintiff does not assert that Bazzoni, in his personal capacity, shared offices, email accounts, personnel, financial accounts, and revenue streams with CTEL. Nor does Plaintiff have any evidence that Bazzoni transferred any CTEL funds to himself or anyone else to avoid liabilities.

Additionally, Plaintiff's entire alter ego argument is that Bazzoni continued CTEL's business (to the extent it had any) through Elemento. However, this Court has already held that such evidence merely establishes a carrying on a business and is not sufficient to establish an alter ego claim under the laws of the British Virgin Islands ("BVI"). Moreover, even if Bazzoni did take CTEL's business and run it through Elemento, those purported facts would only be relevant to the alter ego analysis if Bazzoni did this *after* he was *personally* indebted to Plaintiff. Bazzoni has never been personally liable to Plaintiff, let alone before allegedly transferring CTEL's purported business to Elemento. Lastly, under BVI law, the alleged pre-existing liability of Bazzoni must have existed *irrespective* of CTEL, which is not the case here because Centauro is seeking to hold Bazzoni liable for CTEL's purported obligations under the Promissory Note. If CTEL never existed, this pre-existing liability would not have existed, and it thus did not arise *irrespective* of CTEL.

Accordingly, Plaintiff's breach of contract and alter ego claims fail as a matter of law and Plaintiff's Motion for Partial Summary Judgment should denied.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S BREACH OF CONTACT CLAIMS
FAIL FOR LACK OF CONSIDERATION**

Bazzoni and CTEL respectfully refer the Court to POINT I of their Prior MOL as to why Plaintiff's breach of contract claims fail because the Promissory Note lacks consideration.

Furthermore, the Court should reject Plaintiff's arguments as to consideration made in their current Motion, namely that (a) there was consideration because the Promissory Note states there was consideration, and (b) Plaintiff suffered a detriment by way of the Promissory Note.

This is so because the plain and unambiguous terms of the Promissory Note states that Plaintiff alone received a benefit from the Promissory Note, not CTEL or CTFG, and Plaintiff suffered no detriment. Specifically, the Promissory Note states that CTEL and CTFG have to pay off the Promissory Note, but that Plaintiff is free to pursue claims under the JVA against CTFG until the Promissory Note has been paid off. *See* Prior MOL at pp. 4-11.

Therefore, Plaintiff suffered no detriment because the Promissory Note gave Centauro more remedies in pursuing its rights against CTFG and CTEL but did not deprive Plaintiff of *any* remedy. Consequently, there was no consideration provided by Plaintiff, and this is made clear by the very terms of the Promissory Note. *See Hemmings v. Sutton*, 151 A.D.3d 457, 457–58 (1st Dep't 2017)("The trial court properly concluded that the note plaintiff sought to enforce was void due to a lack of consideration. Plaintiff testified that the note was given in exchange for past economic, technological, and financial assistance, but failed to submit any documentary evidence of such work.")(citations omitted); *Samet v. Binson*, 122 A.D.3d 710, 711 (2d Dep't 2014)("[T]he agreement did not express any consideration. Thus, it is not enforceable as a promissory note or as a contract."); *see also Beck v.*

*Sheldon*, 259 N.Y. 208, 211 (1932)("Marion was not benefitted by her promise to pay the Roseville street mortgage, for she received nothing for it. Sheldon suffered no detriment, but rather a benefit, for he gave nothing to Marion for her promise. He received her mortgage without giving any consideration therefor. Nothing is consideration that is not regarded as such by both parties.")(quotations and ellipses omitted); *Brodie v. New York City Transit Auth.*, No. 96 CIV. 6813 LMM, 2000 WL 557313, at *3 (S.D.N.Y. May 5, 2000)(McKenna, J.)("[P]laintiff has failed to adequately allege consideration. He has not alleged that in forming the oral contract, he transferred some right, interest, profit, or benefit to the TWU defendants, or suffered some forbearance, detriment, loss or responsibility. Plaintiff does claim that in exchange for a position at JBC, he agreed to have his termination converted into a resignation. However, plaintiff fails to indicate how having his termination recorded as a resignation constituted something of value to the TWU defendants. From the facts alleged in the Second Amended Complaint, plaintiff alone benefitted from this arrangement, since future employers would not learn that he was terminated from his past employment, which might reflect poorly on him.")(citations omitted); *Glahn v. Clark*, 251 A.D. 747, 747 (2d Dep't 1937)("As matter of law, the promise of the defendant contained in the writing was gratuitous and without consideration. The detriment claimed to have been suffered by the plaintiff because of his refraining from selling his stock in New York Investors, Inc., before the end of the period mentioned in the writing, does not furnish such consideration. That detriment was not requested by the defendant promisor.").

Furthermore, the cases cited by Plaintiff do not support its position.  In *Neo Universe Inc. v. Ito*, 48 N.Y.S.3d 352 (1st Dep't 2017), the Court held that a loan existed as to the defendant because the loan agreement stated that plaintiff's payments to defendant's wife's company "shall be considered as a loan to B [defendant]," and the consideration was documented by "the checks in evidence" proving that

4

plaintiff made such payments to such company. *Id.* at 354. Here, there is no evidence in the record that Plaintiff made any payments to CTEL pursuant to the Promissory Note, and this instrument specifically states that Plaintiff gave up no rights and was still free to pursue a claim against CTFG under the JVA.

In *Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095 (1993), the Court held that plaintiff suffered a detriment by providing defendant with its intellectual property that defendant utilized to generate business, and defendant's competitors did not have access to such intellectual property. Here, pursuant to the Promissory Note, Centauro did not provide any property, intellectual or otherwise, to the makers that CTFG and CTEL utilized.

In *Wahl v. Barnum*, 116 N.Y. 87 (1889), the parties had a dispute as to their respective membership interests in a partnership, which they finally resolved through an agreement that credited plaintiff with $3,000 on the books of the partnership. Hence, defendant suffered a detriment by way of that $3,000 credit. Here, Plaintiff did not provide CTFG or CTEL a credit or any funds pursuant to the Promissory Note.

In *Davis v. Sisti*, 148 N.Y.S.2d 76 (Sup. Ct. Oneida Co. 1955), plaintiff suffered a detriment by agreeing not to pursue a lawsuit. Here, Plaintiff did not agree to forego any lawsuit through the Promissory Note. In fact, Plaintiff was still free to sue CTFG for a breach of the JVA even after the execution of the Promissory Note.

In *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441 (1982), plaintiff suffered a detriment from accepting defendant's offer of employment by way of him quitting his prior job and turning down other employment opportunities. Here, Plaintiff did not forego any business opportunities in executing the Promissory Note.

In *Country Trust Co. of NY v. Mara*, 273 N.Y.S. 597 (1ˢᵗ Dep't 1934), the defendant signed an

unconditional guarantee that was a separate agreement from the promissory notes at issue. Additionally, the detriment in that case was a "discharge of a pre-existing debt owing by a third person." *Id*. at 603. Here, we are not dealing with a separate personal guaranty, and the Promissory Note does not discharge CTFG's obligations under the JVA.  Indeed, the Promissory Note only added to CTFG's obligations for the sole benefit of Plaintiff.

In other words, the Promissory Note did not cancel CTFG's previous obligations under the *continued* JVA and replace them with new obligations (it only added to them), which is necessary for this type of consideration to be valid.  *See Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F.Supp. 2d 459, 466–67 (S.D.N.Y. 2013)(Scheindlin, J.)("The text of the Settlement Agreement reveals that the parties intended to cancel their previous obligations and create a new agreement on the same subject, which the law permits them to do."); *Schwartzreich v. Bauman-Basch*, 231 N.Y. 196, 203 (1921)("Any change in an existing contract, such as a modification of the rate of compensation, or a supplemental agreement, must have a new consideration to support it. In such a case the contract is continued, not ended. Where, however, an existing contract is terminated by consent of both parties and a new one executed in its place and stead, we have a different situation and the mutual promises are again a consideration.").

Accordingly, based upon the foregoing and POINT I of the Prior MOL, the Promissory Note lacked consideration, Plaintiff's breach of contract claims should be dismissed with prejudice, and Plaintiff's Partial Summary Judgment Motion as to these claims should be denied.

6

## POINT II

## PLAINTIFF HAS FAILED TO ESTABLISH THAT BAZZONI
## IS AN ALTER EGO OF CTEL

Bazzoni respectfully refers the Court to (a) POINT III of his Prior MOL as to why the Court should dismiss Plaintiff's alter ego claims against him because Plaintiff has no evidence that Bazzoni was an alter ego of CTEL under BVI law; and (b) Elemento's September 28, 2018 Summary Judgment Papers and its papers in opposition to Plaintiff's present Motion as to why Elemento is not an alter ego of CTEL.

Initially, it should be noted that Plaintiff's Memorandum of Law in support of its Partial Summary Judgment Motion ("P.MOL") concedes that Plaintiff is seeking a holding that Elemento (CTEL Malta), *not Bazzoni*, is the alleged alter ego of CTEL.  *See* P. MOL at pp. 2, 4, 5, and 20 ("CTEL Malta is an alter ego of CTEL,"  "CTEL Malta benefitted from this alter ego status: instead of starting from the ground up; it was able to leverage the connections, talent, opportunities, registrations, and brand that CTEL had built. CTEL Malta's alter ego status was a central part of its business strategy," "CTEL Malta took efforts to obfuscate its alter ego status," "CTEL Malta's alter ego relationship with CTEL").

This concession is not surprising since this Court has previously held that, for Centauro to be successful, it must establish that "Elemento and Bazzoni share[d] offices, email accounts, personnel, financial accounts, and revenue streams with CTEL." *See* Exhibit G of Elemento's September 28, 2018 Summary Judgment papers, which is this Court's Memorandum Order entered in this action on July 23, 2018 (Docket No. 209), at p. 4.  Plaintiff utterly fails to assert that Bazzoni, *in his personal capacity*, had any shared offices, email accounts, personnel, financial accounts, and revenue streams with CTEL.

7

Additionally, this Court held that another alter ego factor to be considered under BVI law is whether "Bazzoni misused CTEL's corporate form by, for example, diverting CTEL's funds, in an effort to evade liability under the promissory note." *Id.*  However, Plaintiff has zero evidence that Bazzoni diverted CTEL's funds to evade liability under the Promissory Note, let alone diverted any funds to Elemento or himself.  Nor does Plaintiff have evidence that Bazzoni diverted such funds after he personally was indebted to Plaintiff, which is a critical requirement under BVI alter ego law.  *See* discussion *infra*.

These failures of proof alone require a dismissal of Plaintiff's alter ego claim against Bazzoni.

Furthermore, to the extent that it is relevant to Bazzoni's purported alter ego liability, Plaintiff's alter ego claim against Elemento also fails and should be dismissed.  Boiled to its essentials, Plaintiff is arguing that Bazzoni continued CTEL's business (to the extent it existed) into Elemento (CTEL Malta).  However, this Court already held that such facts – even if true – cannot establish alter ego under BVI law.  *See Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 CV 9003-LTS-SN, 2016 WL 5719793, at *5 (S.D.N.Y. Sept. 30, 2016)("Plaintiffs allege on information and belief that Bazzoni, as the controlling person behind each corporate Defendant, transferred assets from the Signatory Defendants to the Non-Signatory Defendants. This alleges nothing more than the 'carrying on of a business,' and is 'not sufficient to justify piercing' the corporate veil.")(quoting *In re Tyson*, 433 B.R. 68, 86 (S.D.N.Y. 2010)); *see also In re Tyson*, 433 B.R. 68, 86 (S.D.N.Y. 2010)("Bearing in mind these words of caution, some general conclusions about the current state of English veil-piercing law may be drawn. ... [T]he fact that a person engages in the 'carrying on of a business' using a duly incorporated, yet seemingly artificial, entity is not sufficient to justify piercing that entity's veil.").

In this regard, the Court must not overlook that "veil piercing is quite rare under English law. *See Hashem*, [2008] EWHC 2380 [¶ 221] (noting that opportunities for veil-piercing are 'extremely limited indeed' and that '[r]eported cases in any context where the claim has succeeded are few in number and striking on their facts.' (quoting Ord, [1998] B.C.C. at 615))." *In re Tyson*, 433 B.R. 68, 86 (S.D.N.Y. 2010).

Moreover, even if Bazzoni somehow continued CTEL's business (to the extent it had any) through Elemento, such a continuation of business (which is not a basis for alter ego liability) could only be relevant under BVI alter ego law if Bazzoni did so *after* he *personally* was indebted to Plaintiff. *In re Tyson* makes this point blatantly clear: "where a corporate structure is interposed for the purpose of shielding a defendant from liability to the plaintiff ..., the plaintiff's ability to recover from the defendant on a veil-piercing theory turns on **whether the defendant had already incurred some liability to the plaintiff** at the time he interposed the corporate structure." 433 B.R. at 88 (emphasis supplied); *see also Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650, at *7 (S.D.N.Y. Mar. 7, 2014)(Castel, J.)("This limited principle, designed to prevent abuses of the corporate form, applies 'when a person is under an **existing legal obligation or liability or subject to an existing legal restriction** which he deliberately evades or whose enforcement he deliberately frustrates by interposing a company under his control.' *Petrodel Resources Ltd. v. Prest*, [2013] UKSC 34, [35] (appeal taken from Eng.).")(emphasis supplied); *In re Optimal U.S. Litig.*, No. 10 CIV 4095 SAS, 2011 WL 4908745, at *7 (S.D.N.Y. Oct. 14, 2011)(Scheindlin, J.)("Bahamian law requires that the defendant incurs a liability to plaintiffs before creating a fraudulent shell entity. *** [T]o pierce the corporate veil a **defendant must have already incurred a liability and then set up a fraudulent shell entity to avoid that liability**. Multiadvisors was founded in 1995 and issued the

allegedly false and misleading statements—the acts, together with the losses resulting from Madoff's 2008 arrest, which incurred liability—between July 2001 and October 2008. Because OIS had not incurred any liability to plaintiffs in 1995, and thus could not have created Multiadvisors to avoid such liability, plaintiffs' corporate veil-piercing claim must fail under Bahamian law.")(emphasis supplied); *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 794 F. Supp. 2d 449, 461 (S.D.N.Y. 2011)(Holwell, J.)("[T]o pierce the corporate veil under English law on the theory that a company was set up to evade liabilities, **the liabilities at issue must be existing at the time of the transaction in question**. \*\*\* [T]he MOA was not even signed until April 14, 2008, twelve days after Albacore's incorporation. FR8 also does not specify what these 'existing obligations' were at the time of Albacore's incorporation. **FR8's complaint might allege that the Prime Defendants controlled Albacore, but it does not show that Albacore was set up to evade existing liabilities**. FR8's argument is therefore unavailing.")(emphasis supplied).

Furthermore, the pre-existing liability of the person who formed the company to be pierced must have existed regardless of that company's creation and be independent of the company. *See In re Tyson*, 433 B.R. at 88 ("The common theme running through all the cases in which the court has been willing to pierce the veil is that the company was **being used by its controller in an attempt to immunize himself from liability for some wrongdoing which existed entirely** *dehors* **[i.e., outside or irrespective of] the company**. It is therefore necessary to identify the relevant wrongdoing—in *Gilford* and *Jones v. Lipman* it was a breach of contract which, itself, had nothing to do with the company, in *Gencor* [*ACP Ltd. v. Dalby*, [2000] 2 B.C.L.C. 734(Ch.)] and *Trustor* it was a misappropriation of someone else's money which again, in itself, had nothing to do with the company—before proceeding to demonstrate the wrongful misuse or involvement of the corporate structure.")(quotation omitted;

emphasis supplied; quoting *Hashem*, [2008] EWHC 2380 [¶ 199]).

As demonstrated in Bazzoni's September 28, 2018 Summary Judgment papers, Bazzoni had no personal liability to Plaintiff prior to the creation of CTEL or CTEL Malta, *or at any time*.  Moreover, the alleged wrong for which Plaintiff seeks to hold Bazzoni liable is the very liability of the company to be pierced, namely CTEL's alleged contractual obligations under the Promissory Note.  Thus, this liability did *not* exist entirely *dehors* (*i.e.*, outside or irrespective of) CTEL, and Plaintiff's alter ego claim fails for that reason as well.  These facts alone mandate the dismissal of Plaintiff's alter ego claims.

To the extent that Plaintiff argues that alter ego liability should arise from Bazzoni allegedly creating CTEL Malta after CTEL executed the Promissory Note, this argument is unavailing.  These facts would only be relevant to an argument to pierce the corporate veil of CTEL Malta, not CTEL, which is not issue in this Action.  Regardless, that argument would fail under BVI law as well because Bazzoni (the alleged creator of CTEL Malta) was never personally indebted to Plaintiff.

Plaintiff may also argue that Bazzoni owned and controlled both CTEL and CTEL Malta, and those alleged facts alone serve as a basis for alter ego liability.  However, "'ownership and control of a company are not of themselves sufficient to justify piercing the veil.' *Ben Hashem*, [2008] EWHC (Fam) 2380, [159]." *FR 8 Singapore Pte. Ltd.*, 794 F. Supp. at 459; *see also In re Optimal U.S. Litig.*, 2011 WL 4908745, at *3 (holding same).

Lastly, Plaintiff's entire alter ego theory arises from its simple failure to obtain a personal guaranty from Bazzoni for the Promissory Note.  Centauro cannot now attempt to remedy such failure through an after-the-fact personal guaranty by way of a bogus alter ego claim.  *See In re Tyson*, 433 B.R. at 90 ("English courts have observed that parties may avoid the harsh effects of the [English alter

11

ego law] by the exercise of due diligence, for instance, by contracting around a potential problem. As Lord Herschell observed ...: '[I]t must be remembered that no one need trust a limited liability company unless he so please, and that before he does so he can ascertain, if he so please, what is the capital of the company and how it is held.' More recently, ... the High Court stated that '[i]t has long been recognised that the [English alter ego law] can cause hardship, although **those dealing with one-man companies may, and commonly do, seek to protect themselves by requiring a personal guarantee**.")(emphasis supplied).

Therefore, Plaintiff's alter ego claim against Bazzoni should be dismissed with prejudice, and Plaintiff's request for summary judgment on such claims should be denied.

12

## CONCLUSION

Based upon the foregoing, Defendants Alessandro Bazzoni and  CT Energia Ltd.

respectfully request the Court deny Plaintiff's motion for Partial Summary Judgment, and grant

such other and further relief and the Court deems just and proper.

Dated: New York, New York
         November 2, 2018

Yours, etc.,

TACOPINA & SEIGEL


By:     /s/ *Matthew G. DeOreo*

Joseph Tacopina, Esq.
Chad D. Seigel, Esq.
Matthew G. DeOreo, Esq.
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
*Attorneys for Defendants Alessandro*
*Bazzoni  and CT Energia Ltd.*
