UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENTAURO LIQUID OPPORTUNITIES MASTER FUND, L.P., | |
| Plaintiff, | Case No. 15-cv-9003 (LTS) |
| vs. | |
| ALESSANDRO BAZZONI, CINQUE TERRE FINANCIAL GROUP, LTD., CT ENERGIA LTD., and CT ENERGIA Ltd. d/b/a, ELEMENTO LTD., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE SUMMARY JUDGMENT MOTION OF DEFENDANTS ALESSANDRO BAZZONI AND CT ENERGIA LTD.**

**TACOPINA & SEIGEL**
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
*Attorneys for Defendants Alessandro Bazzoni
and CT Energia Ltd.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………...…………………………………………ii

INTRODUCTION……………………………………………………………………...1

ARGUMENT……………………………………………………………………...1

POINT I        PLAINTIFF'S BREACH OF CONTRACT CLAIMS
FAIL FOR LACK OF CONSIDERATION………………………….1

POINT II        PLAINTIFF HAS FAILED TO ESTABLISH THAT BAZZONI
IS AN ALTER EGO OF CTEL…………………………………………3

POINT III        PLAINTIFF'S LACK OF REASONABLE RELIANCE
MANDATES THE DISMISSAL OF IT'S FRAUDULENT
INDUCEMENT CLAIM……………………………………………….4

CONCLUSION…………………………………………………………………..10

# TABLE OF AUTHORITIES

*Abbey v. Skokos*, 509 F. App'x 92 (2d Cir. 2013)……………………………………………..7

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333 (2d Cir. 2011)……………………………7

*Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648 n. 4
(S.D.N.Y. 1990) (Wood, D.J.)……………………………………………………………………6

*Baraliu v. Vinya Capital, L.P.*, No. 07 CIV. 4626 (MHD), 2009 WL 959578
(S.D.N.Y. Mar. 31, 2009)………………………………………………………………………8

*Crigger v. Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006)…………………………………………8

*F.T.C. v. Navestad*, No. 09-CV-6329T, 2012 WL 1014818
(W.D.N.Y. Mar. 23, 2012)……………………………………………………………………...7

*Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.,* No. 04 CIV. 1150 (GEL)
2004 WL 2071703 (S.D.N.Y. Sept. 16, 2004)………………………………………………….2

*Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB)
2017 WL 2984023 (S.D.N.Y. July 6, 2017)……………………………………………………8

*Semple v. Eyeblaster, Inc.*, No. 08CIV.9004 (HB), 2009 WL 2709281
(S.D.N.Y. Aug. 27, 2009)……………………………………………………………………….2

*Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816
(S.D.N.Y. 2016)………………………………………………………………………………...8

## INTRODUCTION

Defendants Alessandro Bazzoni ("Bazzoni") and CT Energia Ltd. of the British Virgin Islands ("CTEL") respectfully submit this Reply Memorandum of Law in further support of their Motion for Summary Judgment seeking a dismissal, with prejudice, of Plaintiff Centauro Liquid Opportunities Master Fund, L.P.'s ("Plaintiff" or "Centauro") Amended Complaint.

Bazzoni and CTEL respectfully incorporate, as if set forth herein: (a) their papers, filed on November 2, 2018, in opposition to Plaintiff's Motion for Partial Summary Judgment; (b) the Summary Judgment papers filed by Defendant CT Energia Ltd. d/b/a Elemento Ltd. ("Elemento" or "CTEL Malta") on September 28, 2018; and (c) Elemento's papers, filed on November 2 and 13, 2018, in opposition to Plaintiff's Motion for Partial Summary Judgment.

## ARGUMENT

## POINT I

## PLAINTIFF'S BREACH OF CONTACT CLAIMS
## FAIL FOR LACK OF CONSIDERATION

The issue of whether Plaintiff's breach of contract claims are barred by lack of consideration has been extensively briefed by Bazzoni and CTEL in their prior Memoranda of Law in support of their Summary Judgment Motion (Docket No. 220) and in opposition to Plaintiff's Motion for Partial Summary Judgment (Docket No. 240). Plaintiff's arguments as to this issue, set forth in its Memorandum of Law in opposition to the present Motion of Bazzoni and CTEL, essentially mirror its arguments set forth in its Memorandum of Law in support of its Motion for Partial Summary Judgment. Therefore, Bazzoni and CTEL will not brief this issue again herein other than to provide a brief summary of their arguments and distinguish a few cases cited in Plaintiff's Memorandum of Law in opposition to the Motion of Bazzoni and CTEL that Plaintiff did not cite in its earlier Memorandum

1

of Law in support of its Motion for Partial Summary Judgment.

In summary, Plaintiff argues that the consideration for the Promissory Note was Centauro's purported detriment in foregoing a claim against Cinque Terre Financial Group, Ltd. ("CTFG") arising under the prior Joint Venture Agreement ("JVA") between Centauro and CTFG. However, the plain and unambiguous terms of the Promissory Note state that Centauro did not release its right to sue CTFG under the JVA, and was free to sue thereunder after the Promissory Note was executed. Thus, Plaintiff suffered no detriment in executing the Promissory Note, and only received benefits therefrom.[1]

In its opposition Memorandum of Law, Plaintiff cites the additional cases *Semple v. Eyeblaster, Inc.*, No. 08CIV.9004 (HB), 2009 WL 2709281 (S.D.N.Y. Aug. 27, 2009), and *Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.,* No. 04 CIV. 1150 (GEL), 2004 WL 2071703 (S.D.N.Y. Sept. 16, 2004), which are distinguishable from this Action. In *Semple*, the detriment that constituted consideration was a written settlement agreement that settled a dispute between an insured and insurer concerning the amount of premiums owed. *Id.* at * 3. The parties agreed to a compromise dollar amount, and thus suffered a detriment by foregoing a claim for the amount that they deemed correct. *Id.* Here, even after the execution of the Promissory Note, Centauro was free to sue CTFG for any amount that it deemed owed under the JVA.

As to *Liberty Mut. Fire Ins. Co.*, the portions of the opinion cited by Plaintiff relate to whether the agreement in that case was unenforceable due to fraudulent inducement and a conflict of interest, not an argument as to lack of consideration. 2004 WL 2071703 at * 3. Hence, that holding is not material to the lack of consideration issue of this case.

---

[1]     For a discussion as to why Plaintiff may not rely upon Bazzoni declining to answer deposition questions pursuant to the Fifth Amendment, as evidence for this Motion, *see infra* at POINT III, pp. 6-7.

2

**POINT II**

**PLAINTIFF HAS FAILED TO ESTABLISH THAT BAZZONI**
**IS AN ALTER EGO OF CTEL**

The issue of whether Plaintiff's alter-ego claim against Bazzoni fails has been extensively briefed by Bazzoni in his prior Memoranda of Law in support of his Summary Judgment Motion (Docket No. 220) and in opposition to Plaintiff's Motion for Partial Summary Judgment (Docket No. 240). Plaintiff's arguments as to this issue, set forth in its Memorandum of Law in opposition to the Motion of Bazzoni, are the same as set forth in its Memorandum of Law in support of its Motion. Therefore, Bazzoni will not brief this issue again herein other than to provide a brief summary of his arguments.

Plaintiff's motion papers show that Centauro is arguing that the alter ego of CTEL is Elemento, not Bazzoni in his personal capacity. Plaintiff does not assert that Bazzoni, in his personal capacity, shared offices, email accounts, personnel, financial accounts, and revenue streams with CTEL. Nor does Plaintiff have any evidence that Bazzoni transferred any CTEL funds to himself or anyone else to avoid liabilities.

Additionally, Plaintiff's entire alter ego argument is that Bazzoni continued CTEL's business (to the extent it had any) through Elemento. However, this Court has already held that such evidence merely establishes the "carrying on of a business," which is not sufficient to establish an alter ego claim under the laws of the British Virgin Islands ("BVI"). *See Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 CV 9003-LTS-SN, 2016 WL 5719793, at *5 (S.D.N.Y. Sept. 30, 2016). Moreover, even if Bazzoni did take CTEL's business and run it through Elemento, those purported facts would only be relevant to the alter ego analysis if Bazzoni did this *after* he was *personally* indebted to Plaintiff. Bazzoni has never been personally liable to Plaintiff, let alone before allegedly transferring

3

CTEL's purported business to Elemento.  Lastly, under BVI law, the alleged pre-existing liability of Bazzoni must have existed *irrespective* of CTEL, which is not the case here because Centauro is seeking to hold Bazzoni liable for CTEL's purported obligations under the Promissory Note.  If CTEL never existed, this pre-existing liability would not have existed, and it thus did not arise *irrespective* of CTEL.

## POINT III

### PLAINTIFF'S LACK OF REASONABLE RELIANCE MANDATES THE DISMISSAL OF IT'S FRAUDULENT INDUCEMENT CLAIM[2]

In its opposition Memorandum of Law (pp. 3-4 and 13-14), Plaintiff clarifies that its fraudulent inducement claim arises from CTEL's alleged fraudulent statements to Plaintiff concerning CTEL's purported potential deals.  However, even though it is undisputed that (a) Centauro was a sophisticated investor represented by counsel, (b) Yvonne Morabito ("Morabito") thought, prior to the execution of the Promissory Note, that  Bazzoni and Richard Rothenberg were fraudsters who stole Centauro's funds,  and (c)  Bazzoni emailed Morabito prior to Centauro executing the Note that the debt could not be paid off [3], Centauro did no due diligence or investigation as to the status of such potential CTEL deals.

In its opposition Memorandum of Law for this Motion (pp. 18-19), Plaintiff lists four bullet points describing its purported due diligence, and none of it related to whether CTEL truly had potential

---

[2]      It should also be noted that regardless of the merits of Plaintiff's fraudulent inducement claim against Bazzoni, this claim must be dismissed because Plaintiff has no alter ego claim against him (*see* POINT II *supra*), and Plaintiff's alter ego claim is the sole alleged basis for personal jurisdiction over Bazzoni.  *See Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 CV 9003-LTS-SN, 2017 WL 3726754, at *2 (S.D.N.Y. Aug. 28, 2017)("Plaintiff alleges that this Court has personal jurisdiction over the Non-Signatory Defendants because they are alter egos of the Signatory Defendants, which consented to the jurisdiction of New York courts in the Promissory Note. (AC ¶¶ 5-6.)").

[3]      *See* Bazzoni's September 28, 2018 Memorandum of Law (Docket No. 220) at pp. 16-18.

deals.  The first bullet point merely relates to the amount of debt CTFG – **not CTEL** – owed to BNP Paribas ("BNPP"), and not to CTFG's remaining debt owed to RB International USA, Inc., Credit Suisse SA, and Bancredito International Bank, Corp.  (Bazzoni/CTEL Ex. A at Ex. B, §2(a) and Annex A thereto).

The second bullet point relates to some undisclosed "opinion" of BNPP regarding CTFG's – **not CTEL's** – purported ability to pay off CTFG's debt owed to BNPP. Such "opinion" is not in the record of these Motions, and Plaintiff fails to cite to the record for this bullet point. The third bullet point merely states that Plaintiff received "an advance payment on CTFG's debt," but Plaintiff fails to explain how a single payment establishes that CTEL had potential deals in the works that could allow CTEL to make payments on the Promissory Note in the future.  That failure is particularly glaring in light of Bazzoni's email to the contrary, that the Makers could not satisfy the Note. (*See supra* at Note 3).

The last bullet point merely relates to unverified emails from the alleged fraudsters – Bazzoni and Rothenberg (citing to Bazzoni/CTEL Exhibit M and Exhibit 2 of Mr. Pacheco's November 2, 2018 Declaration).  These emails also only evidence communications as of April 22, 2015, and subsequent emails establish that Centauro had no confidence in CTEL's ability to pay off the Promissory Note through any potential deals.  For example, on April 30, 2015, Ronald Dagar ("Dagar") of Centauro emailed Rothenberg and Bazzoni stating that Plaintiff still needed critical financial records for its due diligence. (Bazzoni/CTEL Ex. N).  On May 1, 2015, **merely three weeks before the execution of the Promissory Note**, Dagar emailed one of Centauro's investors stating that Centauro was still in the process of doing due diligence and attempting to "verify the facts." (Bazzoni/CTEL Ex. N).

Indeed, prior to the execution of the Promissory Note, Morabito thought CTFG's attitude about

providing Plaintiff the financial records of CTFG and CTEL was "was cavalier and infuriating" (Bazzoni/CTEL Ex. F at 138:12-14; Bazzoni/CTEL Ex. M).  Morabito also testified that she could not remember if, prior to the execution of the Promissory Note, Plaintiff received any balance sheets or any financial statements for CTFG and CTEL for years 2012 to 2014 (Bazzoni/CTEL Ex. F at pp. 110, 115-119,122-133, 142-147,155-160, 180, Bazzoni/CTEL Ex. N).  Morabito further admits that, prior to the execution of the Promissory Note, Plaintiff only obtained "piece meal" financial records from CTFG (Bazzoni/CTEL Ex. F at 92:22), not the "the full picture" of CTFG's finances (*id.* at 97:16), and "[w]e did not receive everything we wanted *** I did not get to see that whole universe of information" with regards to the finances of CTFG and CTEL (*id.* at 122:9-10, 125:15-16).

Furthermore, Plaintiff claims that the purported potential deals of CTEL had allegedly fallen through prior to Centauro learning of them.  However, Plaintiff never asserts that it ever requested or received any contracts, term sheets, or bidding documents concerning such purported CTEL deals.  In fact,  Morabito admitted that Plaintiff did not contact any of the counter-parties to those alleged deals to see if such deals were viable (Bazzoni/CTEL Ex. C at pp. 142).  Despite Plaintiff's deficiencies in this regard, the JVA specifically states that "Centauro shall have access to the books and records of the Joint Venture and the right to inspect and copy them."  (Ex. A to Complaint, p.11, § 3.7.2).

Lastly, as to Bazzoni relying on the Fifth Amendment, "[a]ny adverse inference that permissibly could be drawn from the invocation of the Fifth Amendment would not substitute for evidence necessary to meet plaintiff's burden of production and thereby shift the burden over to defendants." *Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648, 650 n. 4 (S.D.N.Y. 1990) (Wood, D.J.); *see also F.T.C. v. Navestad*, No. 09-CV-6329T, 2012 WL 1014818, at *3 (W.D.N.Y. Mar. 23, 2012) (Court declined to take a negative inference from invocation of Fifth Amendment on summary judgment

6

motion).  Plaintiff also fails to highlight any question that Bazzoni declined to answer relating to Plaintiff's failure to conduct due diligence, and Bazzoni testified as a Fed.R.Civ.P. 30(b)(6) witness for CTEL and never raised the Fifth Amendment during that testimony. (Bazzoni/CTEL Ex. D).[4]

Simply put, Plaintiff, a sophisticated investor represented by counsel, made the business decision not to obtain such deal documents, and merely relied upon the representations of the alleged fraudsters. Therefore, prior to executing the Promissory Note, Centauro did no due diligence or investigation as to CTEL's purported potential deals, and its fraudulent inducement claim should thus be dismissed for lack of reasonable reliance.  *See Abbey v. Skokos*, 509 F. App'x 92, 93 (2d Cir. 2013)("The undisputed evidence in this case, taken in the light most favorable to Abbey, demonstrates that he is a sophisticated investor. Reliance is unreasonable if through minimal diligence, the investor should have discovered the truth in a situation where related documents were readily available, or where a sophisticated investor failed to take reasonable steps to access critical information. Here, there were documents readily available to Abbey that would have demonstrated the financial state of 3FTI and undermined any reliance on Theodore Skokos's representation to Abbey that Abbey's investment was merely window dressing.")(citations and quotations omitted); *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 338 (2d Cir. 2011)("Ashland, which admits to being a sophisticated investor, was not justified in relying on Byrne's statements that SLARS had no liquidity issues, or that in the event of instability or weakness, Morgan Stanley would come in and make a market, as it had always done in the past.")(quotations omitted); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006)("The law is indulgent of the simple or untutored; but the greater the sophistication of the investor, the more

---

[4]        It should be noted that the sole case cited by Plaintiff on this issue relates to an adverse inference arising from spoilation of evidence, not from a party asserting the Fifth Amendment.  *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001).

inquiry that is required. Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.")(quotations omitted); *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB), 2017 WL 2984023, at *5 (S.D.N.Y. July 6, 2017)(Buchwald, J.)("[P]laintiffs did not discharge their duty to inquire. True, plaintiffs allege that, first, they asked for and were denied access to the subcontractors, and second, they crafted a Settlement Agreement designed to cause defendants to reveal any problems. But these indirect actions failed to make use of the protective means available to the plaintiffs."), aff'd, 739 F. App'x 664 (2d Cir. 2018); *Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 837 (S.D.N.Y. 2016)(Rakoff, J.)("When the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it. It cannot reasonably rely on such representations without making additional inquiry to determine their accuracy. Indeed, when a party fails to make further inquiry it has willingly assumed the business risk that the facts may not be as represented. That is precisely what occurred here. SCS points to no facts indicating that it exercised the due diligence required by New York law to show reasonable reliance under the circumstances. As such, SCS cannot demonstrate reasonable reliance as a matter of law and the Court grants Commerzbank summary judgment on plaintiff's fraud claim.")(citations, quotations, brackets and ellipses omitted); *Baraliu v. Vinya Capital, L.P.*, No. 07 CIV. 4626 (MHD), 2009 WL 959578, at *9 (S.D.N.Y. Mar. 31, 2009)(Dolinger, M.J.)("While it may be true that the documentation—if any existed—of investors' intentions was not within plaintiff's immediate access, as a 'substantial and sophisticated' trader in the industry, he can be expected to have insisted on securing available documentation, such as letters of intent or draft contracts speaking to the question as a condition of entering into the addendum agreement. This is

particularly the case since, by the terms of the addendum, plaintiff was surrendering a substantial contractually guaranteed and imminent bonus payment in exchange for a very large future financial interest in Vinya that was entirely contingent upon the future investments as described by deSa. Plaintiff does not allege that he undertook any due diligence as to these investments, and indeed asserts that he simply relied on deSa's oral representations. As a matter of law. New York courts would find plaintiff's reliance to be unreasonable.") .

## **CONCLUSION**

Based upon the foregoing, Defendants Alessandro Bazzoni and  CT Energia Ltd. respectfully request the Court grant their motion for Summary Judgment, dismiss all claims against them with prejudice, and grant such other and further relief and the Court deems just and proper.

Dated: New York, New York
       November 16, 2018

<div style="margin-left:40%;">

Yours, etc.,

TACOPINA & SEIGEL

By:   /s/ *Matthew G. DeOreo*

Joseph Tacopina, Esq.
Chad D. Seigel, Esq.
Matthew G. DeOreo, Esq.
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
*Attorneys for Defendants Alessandro
Bazzoni  and CT Energia Ltd.*

</div>

10