UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CENTAURO LIQUID OPPORTUNITIES : 
MASTER FUND, L.P., :
 :
                 Plaintiff, :
 : 15 Civ. 9003 (LTS) (SN)
         - against - :
 :
ALESSANDRO BAZZONI, CINQUE :
TERRE FINANCIAL GROUP, LTD., :
CT ENERGIA LTD., and CT ENERGIA :
LTD. d/b/a ELEMENTO LTD., :
 :
           Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF ELEMENTO LTD. <u>FOR SUMMARY JUDGMENT</u>

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendant Elemento Ltd.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    THE COURT SHOULD APPLY CONTROLLING
      ENGLISH LAW ...................................................................................................... 1

      A.    The Law of the Case Doctrine Does Not Preclude
            Application of the Controlling Alter Ego Standard ......................................... 1

            1.    The Doctrine is Inapplicable ................................................................. 2

            2.    Elemento's Motion is Consistent with Prior Rulings........................... 3

            3.    The Court Should Not Apply the Doctrine Under
                  the Facts of this Action. .................................................................... 3

      B.    Plaintiff Refuses to Address the Failings in its Alter Ego
            Proposition ..................................................................................................... 4

II.   PLAINTIFF HAS FAILED TO CREATE A GENUINE
      ISSUE OF MATERIAL FACT AS TO ALTER EGO LIABILITY ........................... 4

      A.    Bazzoni did not "Control" Elemento .............................................................. 4

      B.    CTEL's Assets Were not Transferred to Elemento......................................... 8

            1.    Capital. ................................................................................................. 8

            2.    Office Space and Records .................................................................... 9

            3.    Bank Account........................................................................................ 9

            4.    Business Model. ................................................................................... 9

            5.    Plaintiff Misstates the Record Regarding the Logo ............................ 10

            6.    Elemento did not Divert any CTEL-BVI Revenue Streams ................. 10

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Mukasey,*
  529 F.3d 478 (2d Cir. 2008)................................................................................... 2

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n., Inc.,*
  No. 10 Civ. 3314, 2014 U.S. Dist. LEXIS 199601 (S.D.N.Y. Mar. 14, 2014)........................2-3

*Prisco v. A & D Carting Corp.,*
  168 F.3d 593 (2d Cir. 1999)................................................................................... 2

*Prest v. Petrodel Resources Ltd,*
  [2013] UKSC 34 (June 12, 2013) ......................................................................... 3, 4

*VTB Capital plc. Nutritek International Corp.,*
[2013] UKSC 5 (February 6, 2013) ......................................................................... 3, 4

Plaintiff continues in its effort to seize property to which it has no legitimate claim. Whatever its quarrel with defendants CT Energia Ltd. ("CTEL-BVI") or Alessandro Bazzoni, plaintiff has no claim against Elemento Ltd. ("Elemento"), a company initially financed—with $30 million (the "Financing")—and ultimately fully acquired by a company whose ultimate beneficial owner is Ricardo Cisneros.

For the reasons that follow and those in its initial moving papers,[1] Elemento's motion for summary judgment should be granted.

## I.   THE COURT SHOULD APPLY CONTROLLING ENGLISH LAW

### A.   The Law of the Case Doctrine Does Not Preclude Application of the Controlling Alter Ego Standard

In opposition, plaintiff ignores controlling law. *VTB Capital plc. Nutritek International Corp.*, [2013] UKSC 5 (February 6, 2013) and *Prest v. Petrodel Resources Ltd*, [2013] UKSC 34 (June 12, 2013) firmly establish two principles of English law. First, veil piercing is rarely (if ever) available under English law. Second, veil piercing will be allowed only under facts not present in this case: if an entity already burdened by a pre-existing obligation seeks to avoid that obligation by interposing another company between it and the party to which the obligation is owed, then (and only then) will English law allow veil piercing. But—and this is crucial— English law will allow veil piercing only of the interposed company, and only to the extent of depriving the "[interposed] company or its controller of the advantage that they would otherwise have obtained by the [interposed] company's separate legal personality." *Prest* at ¶ 35.

Rather than confront these decisions, plaintiff relies on the "law of the case" doctrine. But the law of this case is (at most) this: the ability of plaintiff to pierce CTEL-BVI's corporate

---

[1] Elemento respectfully incorporates its Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, dated September 28, 2018 (the "56.1") (ECF 229) and its (I) Response to Plaintiff's Statement of Undisputed Material Facts and (II) Supplemental Statement of Material Undisputed Facts, dated November 2, 2018 (the "Supp. 56.1") (ECF 257).

veil is a question to be determined under English law.  That is what Elemento seeks.  Even if

were it otherwise, the law of the case doctrine is far from an immutable, inflexible rule:  absent

cognizable prejudice, which plaintiff cannot demonstrate, the doctrine has no application.

 The law of the case doctrine "counsels a court against revisiting its prior rulings in

subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'"  *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008).

"The decision whether or not to apply law-of-the-case is . . . informed principally by the concern

that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the

doctrine." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999).  "'Prejudice' in this

context does not mean harm resulting from the failure to adhere to the prior decision, but instead

refers to a lack of . . . sufficient opportunity to prepare armed with the knowledge that the prior

ruling is not deemed controlling." *Id.* (internal quotation marks omitted).

 1. *The Doctrine is Inapplicable.*  Here, of course, plaintiff turns the doctrine on its

head.  The predicate ruling on which plaintiff relies was issued eleven months before Elemento

was even a party to the case.[2]  To the extent plaintiff's putative law of the case is based on

proceedings occurring before Elemento was a party, the doctrine is inapplicable.  "A 'party

joined in an action after a ruling has been made should be free to reargue the matter without the

constraints of law-of-the-case analysis.'"  *Alzheimer's Found. of Am., Inc. v. Alzheimer's

Disease & Related Disorders Ass'n., Inc.*, No. 10 Civ. 3314, 2014 U.S. Dist. LEXIS 199601, at

---

[2] Elemento was named a party only in plaintiff's amended complaint, which was filed only after (a) the Court dismissed the original complaint (in which Elemento was not named) (Memorandum Opinion and Order, dated September 30, 2016) ("2016 Opinion") (ECF 107) and (b) after the Court granted the plaintiff's motion to amend (in which motion Elemento did not participate) (Memorandum Opinion and Order, dated August 28, 2017) (ECF 126).

*11 (S.D.N.Y. Mar. 14, 2014) (quoting Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, § 4478.5 at 811 (2d ed. 2002)).

      2.      *Elemento's Motion is Consistent with Prior Rulings.*  In denying Elemento's motion to dismiss, the Court rejected Elemento's application of Malta law, finding that English law governed the question of veil piercing.[3]  Elemento has accordingly applied English law. Thus, even if the law of the case doctrine were applicable, Elemento is in compliance.

      3.      *The Court Should Not Apply the Doctrine Under the Facts of this Action.*  To be sure, the parties previously provided the Court with only the thinnest of descriptions of English law.  Elemento, for example, did not brief English law in connection with its motion to dismiss, largely because (a) Elemento did not fully appreciate the Court's interpretation of the plaintiff's Amended Complaint and (b) Elemento was not in a position to comment on the affairs of CTEL-BVI.  But with the Court's interpretation of plaintiff's pleading made clear, Elemento has presented the Court with a thorough analysis of English law, including of the two dispositive decisions of the UK's Supreme Court, *VTB Capital* and *Prest. VTB Capital* and *Prest* necessitate departing from the prior ruling.  Whether viewed as a change in law (albeit not intervening), error, or to prevent injustice, there is no support for asking the Court to apply incorrect law. Plaintiff identifies no cognizable prejudice.[4]  The consequences of *VTB Capital* and *Prest* are legal, not factual; plaintiff's counsel has a fully staffed London office; and plaintiff has had five weeks to respond.  More to the point, plaintiff's application of English law was defective from its initial pleading.  The true prejudice is that suffered by the defendants, who have been compelled to defend a meritless action.

---

[3] Rejecting Elemento's reference to Malta law, the Court determined that Elemento "misinterprets the AC, which asserts that Elemento is an alter ego of CTEL [-BVI].  (See AC ¶ 12.)  Thus, the relevant question is whether CTEL[-BVI]'s corporate form will be disregarded, not Elemento's."  Memorandum Opinion and Order, dated July 20, 2018 at 4 n.1 (ECF 208).
[4] Plaintiff refers to unspecified discovery it might have pursued.  But Elemento's activities in 2017 are irrelevant.

In short, the law of the case doctrine is inapplicable, but even it were otherwise, the Court should use its discretion to depart from the determination in the 2016 Opinion and apply the correct standard under English law for veil piercing as set forth in *Prest* and *VTB Capital*.

B.      Plaintiff Refuses to Address the Failings in its Alter Ego Proposition

With respect to its veil piercing attack on CTEL-BVI, plaintiff has proffered no evidence that: CTEL-BVI's controller(s) (presumably, Mr. Bazzoni) was burdened by a pre-existing debt; or that to evade such a debt, that controller interposed CTEL-BVI.[5]

## II.     PLAINTIFF HAS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT AS TO ALTER EGO LIABILITY[6]

Assuming that CTEL-BVI's corporate veil mattered, plaintiff fails to proffer probative evidence sufficient to create a material issue of fact as to alter ego liability.

A.      Bazzoni did not "Control" Elemento

The $30 million Financing was predicated on robust documentation, the negotiation of which was led the Cisneroses' internal counsel, Joan Jensen.  Documentation was executed in or about December 2015.  Reference to 2016 in interrogatory answers is an obvious typographic error.  *See, e.g.*, Declaration of Joan Jensen, dated September 27, 2018 ("Jensen Decl.") (ECF 224) at Exs. H and I (confirming earlier execution).  As demonstrated in Elemento's opening papers, that documentation provided Cedaridge Investments S.A. ("Cedaridge," the relevant Cisneros company) with ultimate control over Elemento.[7]

---

[5] To be clear, the plaintiff has steadfastly refused to seek veil piercing of the interposed company, Elemento.  This Court has twice emphasized plaintiff's election to seek to pierce the corporate veil of CTEL-BVI alone.  *See* Memorandum Opinion and Order, dated July 20, 2018 (ECF 208) at 4 n.3.

[6] Elemento also respectfully incorporates by reference the arguments set forth in the Reply Memorandum of Law in Support of the Summary Judgment Motion of Defendants Alessandro Bazzoni and CT Energia Ltd. (ECF 262) as to why summary judgment is warranted on plaintiff's breach of contract claims fraudulent inducement claim.

[7] Oddly, plaintiff disputes that the Loan Agreement incorporates the Shareholders' and Share Purchase Agreement.  Plaintiff is mistaken.  "Lender is willing to make such credit facility available to Borrower on the terms and conditions set in this Agreement, including specially execution, delivery and performance of the terms and conditions contained in the Promissory Note, Share Purchase Agreement and the Shareholders' Agreement. . . ."

Beyond that actual power, Cisneros had and exercised de facto control.[8]  That control found its ultimate expression beginning in August 2016.  On August 22, 2016, D'Agostino reported to Bazzoni, Rothenberg, and Goldstein that, after a long call with "our investors" (the Cisneroses) about the fact that Elemento "again will not deliver the revised business plan for 2016 we agreed that if by December we don't have the following transactions done it doesn't make sense to continue and we will begin to unwind the company."  *See* Supp. 56.1 ¶ 2; Declaration of Francisco D'Agostino, dated Nov. 2, 2018 (ECF 248), ¶ 11, Ex. C.   Following this, Eduardo Cisneros determined to end the equity interest of Bazzoni and his brother-in-law, D'Agostino:  another Cisneros entity, CISA Holdings Ltd. ("CISA") acquired the entirety of Elemento in a transaction consummated in February 2017.

As to Cedaridge's veto authority over Elemento's oil trading activities, the evidence shows that Eduardo Cisneros in fact approved all of Elemento's deals.  *See* 56.1 ¶ 61; Declaration of Eduardo Cisneros, dated Sept. 28, 2018 (ECF 223), at ¶ 5.  The fact that that approval was not sought for each deal in the company's chat forum as opposed to through other means, such as a phone call, is insufficient to create a material question of fact on this point.  Indeed, even a cursory review of the extensive Slack instant messaging evidence, *id.* Ex. B, demonstrates Mr. Cisneros's constant involvement in, and regular explicit and implicit approval of, Elemento's activities.

---

The control that was, in fact, exercised, is set out in Elemento's initial memorandum at pp. 8-10.  Ultimate control, of course, was based in Cedaridge's ability to call the Loan, i.e., to demand repayment of the $30 million Financing on 90 days' notice.  *See* Loan Agreement § 2.4, Jensen Decl. (ECF 224) Ex. E.  That control was fully manifested with CISA's acquisition of the entirety of Elemento.

[8] The extent and basis of Cedaridge's de facto control are described in Elemento's opening Memorandum at 6-10.  *See* Jensen Decl. ¶¶ 12-20.

Elemento has never denied that fact of Mr. Bazzoni's involvement in its affairs.  He was one of three "partners" whose agreement was sought for all transactions.[9]  But as Mark Walker, a former consultant to CTFG, now former consultant to Elemento, made clear, Bazzoni was not "in control" of Elemento.  *See* Supp. 56.1 at ¶ 74.  Mr. Bazzoni's involvement, as deal finder, spiritual advisor, resident soothsayer, thought leader, or whatever, whether during or after his directorship, or even after the sale of his (indirect) ownership interest in Elemento, is simply not probative of anything relevant to plaintiff's alter ego case.

In that vein, plaintiff seeks wrongly to equate Mr. Bazzoni's service as the Director and CEO of Elemento with impermissible domination.  *See, e.g.*, Pltf. Opp. Mem. at 16.  In support of this erroneous conclusion, plaintiff cites to pieces of the record that demonstrate (1) that Mr. Bazzoni was, in fact, the CEO and (2) that he was engaged in normal business activities such as the hiring and firing of employees and the approval and execution of trades.  *See* Pacheco Decl., Exs. 43, 67, 68, 73.  But these are precisely the tasks a CEO is supposed to perform.

Plaintiff's evidence that Mr. Bazzoni continued in this role after his August 2016 resignation in fact clearly shows that he stepped back significantly and—to the extent he was involved—was involved in an advisory capacity.[10]  Plaintiff cites to an instance in which Rothenberg "seeks Bazzoni's permission" to send an email to Joan Jensen after Bazzoni resigned as director.  *See* Second Pacheco Decl., Ex. 5.  But that email concerned the CISA transaction

---

[9] In an effort that verges on the comedic, plaintiff cites to an email from Ms. Jensen for the proposition that "partners" refers not to Messrs. Cisneros, Bazzoni and D'Agostino, but only to Messrs. Bazzoni and D'Agostino.  In fact, Ms. Jensen's email makes precisely the opposite point,  referring to Messrs. Bazzoni and D'Agostino as "our partners."  *See* Pacheco Decl. Ex. 61 at 4, cited at Plaintiff's Opp. Mem. at 4.

[10] Once again, plaintiff distorts the record for the point it would make.  Ms. Galanti did not testify that Bazzoni was asked, twenty-two months after he resigned, for approval of Elemento's payments and general business activities.  Rather, she testified that Mr. Bazzoni was "sometimes" cc'ed on e-mails seeking approval for payments and general business activities.  *See* Pacheco Decl., Ex. 18 at 48:9-23.  Ms. Galanti goes on to confirm that she reported to Mr. Rothenberg—not Mr. Bazzoni.  *See id.* at 49:22-50:8.  Similarly, the fact that Mr. Bazzoni was not contacted by PricewaterhouseCoopers about Elemento's audit in March of 2017 shows that he was no longer the primary contact—the fact that Mr. Rothenberg forwarded a proposed response for his and Mr. D'Agostino's review does not controvert that.  *See* Pacheco Decl., Ex. 69.

and was written when Mr. Bazzoni still owned an interest in Elemento.  Thus, the CISA

transaction directly concerned Bazzoni  and it therefore was appropriate for Rothenberg to

consult him before communicating with the counterparty.

Plaintiff also points to Slack "chat logs" as evidence that Mr. Bazzoni continued to

oversee Elemento's trading after his resignation.  Again, plaintiff misses the mark.  The

referenced message is from December 4, 2016—a few months after Mr. Bazzoni's resignation as

CEO and before conveyance of his ownership interest—and is simply a short review of various

business endeavors.  *See* Pacheco Decl., Ex. 83.  It certainly does not show that Mr. Bazzoni

dominated Elemento or that he continued in his role as CEO after his resignation.

Plaintiff speculates about Eduardo Cisneros's  pre-Financing knowledge that Elemento

was an alter ego.  For this it relies on marketing materials, expressions of business aspirations,

and email suffixes.  Plaintiff's smoking gun is Eduardo Cisneros's use of the phrase "hit the

ground rolling."  This must mean, plaintiff speculates, that he knew Bazzoni, *et al.* planned to

steal registrations issued to CTFG (or CTEL-BVI) for Elemento's benefit.  This of course is

nonsense.  But is also a glaring example of plaintiff's lack of care in its use of exhibits.  In fact,

the relevant testimony makes precisely the opposite point.

> My best understanding – we probably formed the company the end of that prior year and
> the business plan was to hit the ground rolling.  And, originally, we should have had
> deals within a couple of months.
>
> And for the most part, in 2016, due to the fact that it was kind of a start up and we needed
> to get registrations everywhere, I don't think we did any deals.  We might have done one
> – one or two at best.

Ex. 17 at 32:24 – 33:8.

Plaintiff also notes reference in pre-Financing marketing materials to Venezuela's state

oil monopoly, PDVSA, a company with which CTFG had been registered.  But there are a

limited number of sources for oil.  Their identities do not represent the secret formula for Coca Cola.  Targeting Venezuela's monopoly is hardly evidence of asset theft.[11]

Singly or together, plaintiff's factoids do not support the conjecture, much less establish as fact, that anyone on the Cisneros team had any knowledge of any details of the prior activity of Messrs. Bazzoni and Rothenberg or any business or person with which they were involved or that anticipated exploiting the assets of any of those operations.

But there is nothing in the record that supports plaintiff's speculation that the Financing was fueled by an improper motivation or that the Cisneroses' investment and ultimate ownership are illegitimate.  This failure of proof  has particular consequences beyond impeaching the overall credibility of plaintiff's submissions:  English law does not allow veil piercing if to the injury of minority shareholders or creditors.  *See Prest* at ¶¶ 22, 23.  Thus even if plaintiff were somehow able to assemble facts demonstrating the potential for veil piercing, it would still lose.

B.    CTEL's Assets Were not Transferred to Elemento

Elemento was not a wholesale lift-out of a vibrant trading company.  By the summer of 2015, CTFG was in extremis.  (CTEL-BVI itself was never anything but a marketing concept, a "brand" for CTFG's operations.)  As plaintiff points out, they had failed to make a single payment following the May 2015 execution of the Note.  And as Goldstein and others testified, deal flow had stopped, having previously slowed to a crawl.  *See* Supp. 56.1 at ¶ 56.  Associated persons were cut loose.[12]  CTFG was well on the path to its eventual bankruptcy.

The Financing did not resurrect CTFG (or CTEL-BVI).  Instead, it allowed Bazzoni and Rothenberg, now joined by D'Agostino, to pursue a new venture from which they sought to pursue wholesale oil trading.

---

[11] The reference to Venezuela is hardly surprising.  The Cisneros family has Venezuelan roots.  *See, e.g.*, http://www.cisneroscorp.com/history/.  Elemento's trading center is in Caracas.
[12] Many were independent contractors, not employees.  *See* Supp. 56.1 at ¶ 66-76, 78-83.

1. _Capital_.  In its Gotcha Moment plaintiff points out that Elemento's records show $1,308.00 in share capital before receiving the $30 million Financing.  Thus, Elemento in fact did not obtain the _entirety_ of its capital from the Financing.  Fine.  Plaintiff also notes that Elemento's 2016 general ledger has a line item for "Cinque Terre Current Account," totalling $1,430.41.  Fine.  Plaintiff proffers nothing as to the origin of this trivial sum, $2,738.41.

2. _Office Space and Records_. Plaintiff's own evidence, including the testimony of Mr. Goldstein, establishes that CTFG closed its Fort Lauderdale, FL office at the end of 2015.  _See_ Supp. 56.1 ¶ 30.  Plaintiff proffers no evidence that Elemento ever used the Florida address at any time (other than as a pre-Financing mail drop) before or after the Financing.  Elemento's Hector Nuñez expressly repudiates plaintiff's conjecture that Elemento stores CTFG's records.[13]

3. _Bank Account_.  CTEL-BVI and Elemento did not share a bank account.  Banque de Commerce and de Placements' ("BCP") February 24, 2016 letter expressly references the entity "registered in Malta", i.e, Elemento, not CTEL-BVI.  _See_ Supp. 56.1 at ¶ 29.[14]

4. _Business Model_.  Evidence conclusively proves that Elemento and CTEL-BVI engaged in different businesses.  _See supra_; 56.1 ¶ 50.  One of Elemento's two directors, Carlos Galindez, explained: "Elemento intermediates the purchasing and selling of case fuel from certain providers to certain clients."  56.1 ¶ 52.  As Mr. Goldstein and Ms. Galindez explained, CTFG conducted that type of transaction only "sporadically."  56.1 ¶ 51.

In fact, the undisputed evidence shows that CTEL-BVI <u>never</u> engaged in oil trading.  _See_ 56.1 ¶ 48.  As Mr. Bazzoni testified at his Rule 30(b)(6) deposition on behalf of CTEL-BVI, the

---

[13] _See_ Declaration of Hector Nuñez dated November 2, 2018 ("Nuñez Decl.") (ECF 249) at ¶ 19.

[14] The account was not used until April 18, 2016—almost two months after the date of the letter—when Elemento transferred $5,000,000 out of its Sudameris account into the BCP account for transactions with Luton Holdings Ltd. and Chemium International Corp.  _See_ Declaration of Liana Galanti dated Nov. 2, 2018, at ¶ 17 and Ex. K.

company "never sold or bought any drop of oil, never had the possibility to do it, didn't have the logistic[s] to do it, because it was just a name."  *See* 56.1 ¶ 48.

5.      *Plaintiff Misstates the Record Regarding the Logo.*  Plaintiff mischaracterizes the expense associated with CTEL-BVI's logo: the cited invoices show a cost of $2,500.  *See* Pltf. R. 56.1 ¶ 76.  But if someone has claim concerning the "prancing lion" logo, it is CTFG's liquidator, not plaintiff.  Indeed, the whole point of the logo and the company was to serve as a brand for CTFG.  Mr. Bazzoni explained that he established CTEL-BVI because "Cinque Terre Financial Group" did not reflect the activity that the company, in fact, pursued.  *See* Supp. 56.1 at ¶ 42.  CTEL-BVI was "the branded name" but that if a transaction occurs, "the contract, the payment and the title to the goods always [sic] been" CTFG.  Supp. 56.1 at ¶ 45.

6.      *Elemento did not Divert any CTEL-BVI Revenue Streams.*  CTEL-BVI had no revenue streams to divert.  As to PDVSA, Elemento obtained its own unique registration, as of March 11, 2016.  *See* Supp. 56.1 ¶ 27; Nuñez Decl. Ex. A.  Moreover, plaintiff has offered no evidence that CTEL-BVI *ever* successfully transacted any business with PDVSA.  *See* Pltf. 56.1 ¶¶ 47-48.  Similarly, Elemento never did business with Petro China.  *See* Supp. 56.1 ¶ 28.[15]

## CONCLUSION

For the foregoing reasons, and those set forth in its initial moving papers, Elemento respectfully requests that the Court grant summary judgment in favor of Elemento on Counts One through Three, dismiss the Amended Complaint in its entirety as against Elemento, with prejudice, and grant such other and further relief as is just and appropriate.

---

[15] Plaintiff also vaguely refers to "West Africa".  Even assuming that Elemento pursued a transaction with one or more regional national oil companies, there is no evidence that links any transaction (or registration) to CTEL-BVI.

Dated: New York, New York  
       November 16, 2018

**SULLIVAN & WORCESTER LLP**

By: /s/Michael T. Sullivan  
    Michael T. Sullivan  
    Clark A. Freeman  
1633 Broadway  
New York, New York 10019  
Telephone: (212) 660-3000  
Facsimile:  (212) 660-3001  
msullivan@sandw.com  
cfreeman@sandw.com

*Attorneys for Defendant Elemento Ltd.*