IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

                Plaintiff,

vs.

ALESSANDRO BAZZONI, CINQUE TERRE
FINANCIAL GROUP, LTD., CT ENERGIA
LTD., and CT ENERGIA LTD. d/b/a
ELEMENTO LTD.,

                Defendants.

Civil Action No. 15-cv-9003 (LTS) (SN)

**REPLY IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Donald L. Flexner (*Counsel*)
Byron Pacheco
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
T. 212-446-2300

**Table of Contents**

Preliminary Statement ............................................................................................................... 1

Argument ..................................................................................................................................... 3

I.    CENTAURO IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIMS. ........................................................................................................ 3

    A.    There is no dispute that CTEL defaulted on a duly-executed Promissory Note. .... 3

    B.    There is no dispute that the Note is supported by valid consideration. ................. 3

    C.    There can be no dispute that Defendants breached Section 2(c) of the Note. ........ 7

II.    CENTAURO IS ENTITLED TO SUMMARY JUDGMENT ON ITS ALTER EGO CLAIMS AGAINST BAZZONI AND CTEL MALTA. .................................................... 7

    A.    Centauro has established that CTEL Malta is an alter ego of CTEL. ..................... 7

        1.    The Court has already determined the alter ego law of the case, and CTEL Malta offers no basis to depart from it. ....................................................... 8

        2.    CTEL Malta's purported evidence should not be considered after blocking Centauro's efforts to take discovery, and even if allowed, it supports Centauro's claims. ........................................................................................ 9

        3.    CTEL Malta's innocent investor narrative is belied by the facts.............. 12

    B.    Centauro has established that CTEL is an alter ego of Bazzoni. .......................... 15

Conclusion ................................................................................................................................. 15

# Table of Authorities

**Cases**

*AM Cosmetics, Inc. v. Solomon*,
   67 F. Supp. 2d 312 (S.D.N.Y. 1999) ........................................................................................ 3

*Apfel v. Prudential-Bache Sec. Inc.*,
   616 N.E.2d 1095 (N.Y. 1993) .................................................................................................. 5

*Davis v. Sisti*,
   148 N.Y.S.2d 76 (Oneida Cty. Sup. Ct. 1955) ......................................................................... 5

*Neo Universe Inc. v. Ito*,
   48 N.Y.S.3d 352 (1st Dep't 2017) ............................................................................................ 5

*Novick v. AXA Network, LLC*,
   No. 07 Civ. 7767(AKH), 2009 WL 2753201 (S.D.N.Y. Aug. 27, 2009) ................................. 3

*Prest v. Petrodel Resources Ltd*,
   [2013] UKSC 34 (June 12, 2013) ............................................................................................ 9

*Reich v. Lopez*,
   38 F. Supp. 3d 436 (S.D.N.Y. 2014) ...................................................................................... 11

*Schwartzreich v. Bauman-Basch*,
   231 N.Y. 196 (1921) ................................................................................................................ 6

*Thales Alenia Space France v. Thermo Funding Co., LLC*,
   959 F. Supp. 2d 459 (S.D.N.Y. 2013) ...................................................................................... 6

*VTB Capital plc. Nutritek International Corp.*,
   [2013] UKSC 5 (February 6, 2013) ......................................................................................... 9

**Rules**

Fed. R. Civ. P. 37 ........................................................................................................................ 10

Fed. R. Civ. P. 56 .......................................................................................................................... 1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Centauro"), respectfully submits this reply in further support of its motion for partial summary judgment.

### PRELIMINARY STATEMENT

After over three years of litigation, Defendants[1] have failed to proffer any legitimate defense to their default on a $21 million Promissory Note that CT Energia Ltd. ("CTEL") and Cinque Terre Financial Group, Ltd. ("CTFG") executed in favor of Centauro. In that Note, which was reviewed by lawyers on both sides and twice signed by Defendant Alessandro Bazzoni, CTFG and CTEL agreed that the debt was valid and thus owed to Centauro; that they would "re" pay the debt; that the Note is supported by consideration; and that it constitutes a "legal, valid and binding obligation." In response to this unambiguous Note, Defendants have asserted a series of non-sequiturs about a supposed lack of consideration. Their latest non-sequitur is that because CTEL and CTFG have never paid the Note, their non-payment makes the Note inoperative because they claim that the Note does not extinguish Centauro's ability to separately sue CTFG (despite its Chapter 15 proceedings) under a different contract not at issue (a joint venture agreement between CTFG and Centauro). At best, this nonsensical position is irrelevant and inaccurate, and in any event, has no support in New York law.

After executing the Note, Defendant Alessandro Bazzoni and CTEL's CFO, Richard Rothenberg, repeatedly assured Centauro that CTEL was in the process of setting up transactions in Venezuela, West Africa, and elsewhere, that would generate revenue for CTEL to pay on the

---

[1] Unless otherwise noted, the term "Defendants" includes all Defendants, as this Reply addresses the two separate memoranda of law filed in response to Centauro's motion for partial summary judgment—each of which incorporated one another's arguments. *See* ECF Nos. 240 (cited as "CTB") & 256 (cited as "CTM"). As used herein, "Ex." refers to the exhibits to the Declaration of Byron Pacheco submitted in support of Centauro's Motion for Summary Judgment, *see* ECF No. 234, and "PMF" refers to Plaintiff's Rule 56.1 Statement, *see* ECF No. 232.

1

Note. At the very same time, CTEL was scheming to avoid its Note obligations by cloning itself in another jurisdiction. After CTEL had already defaulted on the Note, Bazzoni created a second, identically-named "CT Energia Ltd." in Malta—CTEL Malta—and used CTEL's employees, infrastructure, business opportunities, and CTEL's oil trading registrations to operate CTEL Malta. Bazzoni and Rothenberg made no mention – none – of the second CTEL to Centauro. It was only through discovery in this litigation that Centauro learned about the clone. Soon after the Court issued an order attaching CTEL's assets, Bazzoni caused the cloned CTEL to change its name to "Elemento," so as to avoid public association with its debt-ridden alter ego. These facts, alone, entitle Centauro to summary judgment on its alter ego liability claim.

CTEL Malta responds that these facts are "irrelevant", "wrong" or "disputed." It claims irrelevance based largely on an attempt to rewrite the law of the case, without any grounds to do so. It claims that Centauro's facts are wrong based on new testimony and on documents CTEL Malta blocked Centauro from obtaining in discovery. In any event, nothing about this one-sided effort undercuts the facts Centauro have proffered. And finally, by acknowledging that certain facts are "disputed," CTEL Malta concedes that its own summary judgment motion cannot be granted, while also continuing to push this false narrative that it is an innocent third-party. In fact, CTEL Malta's financiers knew full well that they were investing in a pre-existing brand, which made investing in CTEL Malta attractive: it would continue the "Cinque Terre" branded trading operations as 'CTEL,' but it would be hidden in a different jurisdiction so as to evade Centauro's Note, and later, the order this Court issued attaching CTEL's assets.

In sum, summary judgment in Centauro's favor is warranted on its breach of contract claims, and Centauro should be allowed to recover on those claims against Bazzoni, and CTEL Malta, because the evidence establishes that they are alter egos of the Note signatory, CTEL.

<u>ARGUMENT</u>

I. **CENTAURO IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIMS.**

    A. **There is no dispute that CTEL defaulted on a duly-executed Promissory Note.**

Under New York law, Centauro is entitled to judgment on the Note if it can establish "execution and default." *AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 324 (S.D.N.Y. 1999) (quotation omitted). Centauro has proffered undisputed evidence of both: (1) a copy of the Note, duly executed by CTEL; and (2) uncontroverted testimony and documentary evidence showing that neither CTEL (nor CTFG) has made any payments. PMF ¶¶ 36, 45. Moreover, CTEL does not dispute non-payment. ECF No. 241 (Response to ¶ 45(f)). Thus, Centauro has made the necessary "showing of execution and default" and "is entitled to judgment as a matter of law" against CTEL. *Novick v. AXA Network, LLC*, No. 07 Civ. 7767(AKH), 2009 WL 2753201, at *1 (S.D.N.Y. Aug. 27, 2009).

    B. **There is no dispute that the Note is supported by valid consideration.**

Defendants do not seriously contest execution and default. Instead, they have cobbled together a series of "consideration" defenses that have no support in New York law, and that belie the facts in this case. In their summary judgment motion, Bazzoni and CTEL argued that the Note lacks consideration because CTEL (and CTFG) never owed Centauro any money in the first place, and because there was no separate consideration for CTEL. *See* ECF No. 220 at 4-5, 10. Those arguments misapprehend New York law, and ignore the four corners of the Note, as explained in Centauro's response. *See* ECF No. 260 at 7-11.

Their newly hatched argument fares no better. Defendants now claim that the Note lacks consideration because Centauro suffered no "detriment" in executing it. In particular, they claim that despite executing a release of claims in the Note, Centauro could theoretically sue CTFG

3

under a different contract, the Joint Venture Agreement ("JVA") between CTFG and Centauro, which they say remained valid and enforceable because CTFG and CTEL have never paid off the Note. This incoherent argument is followed by a lengthy, boilerplate string-cite to cases that offer no support for this proposition, have nothing to do with the facts here, or support Centauro's position. CTB at 3-4, 6.

*First*, the duly-executed Promissory Note provides an unambiguous accounting of the consideration on which it is based:

> FOR VALUE RECEIEVED . . . CTFG . . . and CT Energia Ltd. . . . collectively [] the 'Makers'[] . . . jointly and severally, hereby unconditionally promise to pay to the order of [Centauro]…" Ex. 31, Note at p.1.
>
> "Makers acknowledge and agree . . . that the obligations of Makers under this [Note] **arise from and are in consideration of certain Deal Capital provided by [Centauro]** to CTFG from time to time on or prior to December 31, 2014 in connection with transactions contemplated by that certain [JVA] between CTFG and [Centauro] . . . CTFG has advised Centauro that such Deal Capital **has been lost and not returned** to the Payee, and **this Note evidences the commercial agreement reached between Makers and the Payee with respect to the repayment by Makers of such Deal Capital to the Payee**." *Id.* (emphasis added).
>
> "[Centauro] acknowledges and agrees that, **upon payment of all amounts due** under this Note in full, (a) **all disputes, claims, damages or actions** that [Centauro] may have or could have asserted against CTFG as a result of or with respect to the failure of CTFG to return such Deal Capital **will be fully and completely settled and discharged**, and (b) [Centauro] **shall be deemed to have released CTFG** from any further claims, liabilities, damages or actions as a result of such Deal Capital." *Id.* (emphasis added).

Thus, the consideration is two-fold: (1) past consideration for the funds Centauro had already provided to CTFG (*i.e.*, "FOR VALUE RECEIVED"; "arise from and are in consideration of certain Deal Capital"); and (2) Centauro's promise to settle all future claims regarding the mishandling of those funds, if any occurred. None did, and in all events, past consideration is

4

sufficient consideration as a matter of law. *See Neo Universe Inc. v. Ito*, 48 N.Y.S.3d 352, 354 (1st Dep't 2017). Also, a promise to settle claims is also sufficient consideration. *See Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095, 1097 (N.Y. 1993).

Defendants' attempt to distinguish these cases is unavailing. They argue that *Neo Universe* is inapposite because it turns on there being "checks in evidence" showing consideration passing from the plaintiff. CTB at 4. Not so. There, "Plaintiff . . . demonstrated his entitlement to judgment by the introduction of the Loan Agreement, the Promissory Note (Note), and plaintiff's own testimony that defendant had not paid any portion of the debt owed . . . ." *Neo Universe*, 48 N.Y.S.3d at 353. Here, the Note specifically lists the previous "Deal Capital" as "consideration" that had already been received, which is valid consideration under New York law. *Id.* at 354. Further, the parties acknowledged that the debt is valid:

> "…all acts, conditions and things required to be done and performed and to have happened precedent to the execution and delivery of this Note and to constitute this Note a legal, valid and binding obligation of such Maker in accordance with its terms have been done, performed and have happened . . . ." Ex. 31, Note at p.1

Defendants argue that *Apfel* is inapposite because "Centauro did not provide any property" to CTFG or CTEL. CTB at 5. But *Apfel* says the opposite, "[t]he fact that the sellers may not have had a property right in what they sold does not, by itself, render the contract void for lack of consideration." *Apfel*, 616 N.E.2d at 1097. Rather, what matters is that the consideration has some "real value", even if it is "dubious." *Id.* at 475-76 (quotation omitted).[2]

---

[2] CTEL Malta asserts that *Davis v. Sisti*, 148 N.Y.S.2d 76 (Oneida Cty. Sup. Ct. 1955) requires separate note consideration for a co-maker like CTEL. CTM at 24 n.58. It does not. *Davis* held that consideration **might** be lacking for a note that references a pre-existing contractual debt where that debt is "not released or discharged, and was not intended to be released or discharged . . . by acceptance of the note." 148 N.Y.S.2d at 78. That is not what happened here. First, the Note does in fact include a promise to settle "all . . . claims" for monies CTFG owed Centauro, including contract and fraud claims arising from the lost funds. *See* Ex. 31, Note p.1; *see generally* Bazzoni and CTEL Rule 56.1 Statement ¶ 33. Thus, the language CTEL Malta quoted from *Davis* does not apply. Indeed, *Davis* held that "there are other acts in connection with a pre-existing debt which may constitute new

5

***Second***, this is a case about enforcing the Promissory Note; this is not a case about breaching the JVA.  To distract the Court from their lack of an actual contract defense, Defendants offer dizzying circular logic: they claim the Note is invalid because it did not "cancel CTFG's obligations" under the JVA (CTB at 6), and those obligations could have only been cancelled if CTEL or CTFG were to "pay off the Promissory Note" (*id.* at 3).  Of course, if CTEL or CTFG had paid off the Note, this lawsuit would not exist.  Setting that aside, the only relevance of the JVA to this lawsuit is that it explains, in part, how it came to be that Bazzoni and CTFG possessed over $21 million of Centauro's money—because Centauro and CTFG had a joint venture to trade oil through which Centauro invested with CTFG.  *See* PMF ¶¶ 35-36; Ex. 30, at 2 (JVA).  However, Centauro is not suing to enforce any rights under the JVA.  Nor is the Note some contractual modification of the JVA.  It is an agreement, separate and distinct from the JVA, to repay a debt.  Thus, Defendants' lack of "detriment" argument is wholly irrelevant.

Moreover, the notion that the Note's validity depends on cancelling a different contract has no support in New York law, including in Defendants' cases.  *See* CTB at 6.  In *Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 466 (S.D.N.Y. 2013), the court noted that "the law permits" parties to use one agreement to cancel another, but it does not require such.  *Thales* also held, contrary to Defendants' argument (*see* ECF No. 220 at 6-10), that "[c]onsideration does not have to flow directly to the promisor; it may flow to a third party instead."  *Id.*  The *Schwartzreich v. Bauman-Basch* case is also inapposite.  *See* CTB at 6.  That case addressed the distinction between modifying and rescinding contracts, 231 N.Y. 196, 203 (1921), not, as here, settling a debt as well as "any further claims."  Ex. 31, Note p.1.

---

consideration to bind an accommodation maker of a promissory note," 148 N.Y.S.2d at 79, and an intent to settle instant and future claims together would qualify as one of those "other acts," *id.*  Second, the prior deal capital, recognized in the Note itself, was separate and independent consideration, which CTEL Malta does not address.

6

## C. There can be no dispute that Defendants breached Section 2(c) of the Note.

Under Section 2(c) of the Note, CTEL covenants that all revenues from its commonly controlled affiliates will be distributed to CTEL and CTFG, less allowable expenses. *See* Ex. 31 § 2(c). To prevail, the Court has explained that Centauro must prove: (1) that the entities generating those revenues are "majority-owned or otherwise controlled by, or under common control with" CTEL; and (2) Centauro must "identif[y] with specificity" the "sources of revenue that [] should have been transferred to" CTEL. ECF No. 107 at 12 (quotations omitted).

CTEL Malta disputes whether it is commonly controlled with CTEL, and the existence of revenues. CTM at 24-25. However, the undisputed evidence establishes that CTEL Malta was under common control with CTEL. For instance, Bazzoni was CEO, director, and owner of CTEL in 2016, PMF ¶ 5-6, 22, and he was owner, director, and CEO of CTEL Malta in 2016, *id.* ¶¶ 48-56, 64, 136; *see* ECF No. 251 (admitting PMF ¶ 136). Centauro has also established that

████████████████████████████████████████████████████████████

meaning that there must have been revenues to generate those profits. *See* ECF No. 243, (Response to ¶ 75). Thus, because there is no dispute as to either common control or the existence of revenues, Centauro is entitled to summary judgment on its Section 2(c) claim.

## II. CENTAURO IS ENTITLED TO SUMMARY JUDGMENT ON ITS ALTER EGO CLAIMS AGAINST BAZZONI AND CTEL MALTA.

### A. Centauro has established that CTEL Malta is an alter ego of CTEL.

The Court has recognized that any CTEL alter egos are "liable for CTEL's debt to Centauro." ECF No. 209 at 2. The Court has also determined that BVI law governs Centauro's alter ego claim, which requires Centauro to prove that: (1) "defendants misused a corporate façade" and (2) the "misuse . . . occurred after the liability arose." ECF No. 107 at 7; *see id.* at 9. The Court has referred to this second element as the "temporal" prong. ECF No. 126, at 7.

7

Applying BVI law, the Court has identified a set of allegations that, if proven, "suffice to demonstrate misuse of the corporate form," including that CTEL and CTEL Malta "shared personnel, operations, and revenue streams," ECF No. 126, at 6, as well as that Bazzoni "divert[ed] CTEL's funds, in an effort to evade liability under the [Note]." ECF No. 209 at 4.

Centauro has provided extensive evidence to support these allegations. After CTEL executed the Note, CTEL's bank accounts were emptied, PMF ¶¶ 137-38; Bazzoni set up an identically-named "CT Energia Ltd." in Malta, owned by him, *id.* ¶¶ 48-51; documents described the CTEL Malta as an active and developed platform, *i.e.*, as if it were CTEL, *id.* ¶¶ 104, 106, 139; CTEL employees shifted to CTEL Malta, *id.* ¶¶ 22-34, 64-75; CTEL's trading registrations with PDVSA and PetroChina were transferred to CTEL Malta, *id.* ¶¶ 86-87, 93, 108(a), 130; CTEL's business transactions in Venezuela and West Africa were inherited by CTEL Malta, *id.* ¶¶ 86-91, 94, 107-118, 123-26, 131-35; CTEL's logo, email addresses, office, and files were transferred over to CTEL Malta, *id.* ¶¶ 57-63, 76-82; and CTEL received no apparent compensation for any of these transfers, *id.* ¶ 45; Ex. 94 (Response No. 8). After this Court issued an order attaching CTEL's assets, ECF No. 69, and after Centauro deposed Bazzoni about CTEL Malta, Ex. 6, 53:4-5, its name was changed to "Elemento Ltd.," PMF ¶ 121; Ex. 65 at 3.

1. **The Court has already determined the alter ego law of the case, and CTEL Malta offers no basis to depart from it.**

CTEL Malta first claims that's Centauro's facts are "irrelevant", based on its rewriting of the alter ego law the Court has applied to this case, CTM at 1. In fact, CTEL Malta spends seven (7) pages of its brief constructing a new alter ego standard (that CTEL Malta's veil, not CTEL's, must be pierced) despite the fact that the Court has articulated the governing standard at least four times (*see* ECF Nos. 107 at 7-10; 126 at 6-7; 208 at 3-4 & n.1; 209 at 2)—including in a motion on which CTEL Malta avoided alter ego-based attachment (largely by proffering

8

assertions that discovery has shown to be false), ECF 209, at 3-4.

As Centauro has explained, there is no basis to change the law of the case, and doing so at this stage would only damage Centauro more.  *See* ECF No. 261 at 6-11.  Indeed, the two main cases CTEL Malta cites (*VTB Capital* and *Prest*) are not new; they predate the Court's September 30, 2016 decision (ECF No. 107), which set the law of the case, and they were cited either in case law relied on in that decision or in briefing prior to that decision, *see* ECF No. 261 at 8.  CTEL Malta also distorts *VTB Capital* to claim that it bars "recover[y] against a corporate obligor's owners or controller."  CTM at 9.  It does no such thing; the part of *VTB Capital* to which CTEL Malta's points states only that fraudulent inducement, alone, is not a reason to create alter ego liability.  *See* CTM at 6 (citing *VTB Capital* at ¶ 139).

> **2. CTEL Malta's purported evidence should not be considered after blocking Centauro's efforts to take discovery, and even if allowed, it supports Centauro's claims.**

CTEL Malta next claims that Centauro's factual assertions about Bazzoni's domination and control, and CTEL Malta's operations are "wrong."  CTM at 4.  This is largely based on evidence CTEL Malta created or produced at the eleventh hour in a desperate attempt to avoid summary judgment, including declarations from Francisco D'Agostino and Hector Nunez, and documents that should have been produced in discovery.  This is improper many times over.  As a threshold matter, the Court cannot rely on the declarations because D'Agostino and Nunez were nowhere identified as witnesses in CTEL Malta's initial disclosures.  *See* Second Pacheco Decl. Ex. A at 2-3 (CTEL Malta's Initial Disclosures); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Indeed, CTEL Malta now offers as evidence documentation that it refused to provide during discovery. For instance, CTEL Malta refused to produce documents about its oil trading activities, on the grounds that such documents were "irrelevant" or "lack[ed] [] importance" to the case, among others. *See* ECF No. 193-1 (Response to Request No. 24); *see also* ECF No. 197 at 3 (objecting "to the Oil Requests as . . . irrelevant to the allegations in the Amended Complaint."). Yet CTEL Malta now offers a purported PDVSA oil trading registration, despite its prior refusals. *See* ECF No. 249-1. Likewise, CTEL Malta refused to identify all of its bank accounts in its interrogatory responses, Ex. 94 (Response to Interrogatory 9), yet it now offers a declaration about the provenance of one of those accounts, *see* ECF No. 250 ¶ 17. There is nothing justifiable or "harmless" about CTEL Malta's conduct. To the contrary, allowing CTEL Malta to bring in evidence it previously argued against producing and repeatedly refused to provide, would be extraordinarily unfair and prejudicial to Centauro. Given these circumstances, the D'Agostino and Nunez Declarations, and exhibits thereto, should not be considered.

Moreover, apart from the impropriety and prejudice inherent in CTEL Malta's deceptions, much of the evidence it chose to suppress in fact supports Centauro's contentions. For example, Centauro has argued that CTEL Malta used CTEL's oil trading registration in order to continue CTEL's operations in Venezuela. *See* ECF No. 261 at 18, 20. Yet CTEL Malta now claims to have had its own Venezuelan registration (which it held back from discovery). CTM at 19. But, even that is not the whole story. First, it does not mean that CTEL Malta was not initially using CTEL's registration. And second, assuming the registration is not a forgery like other CTEL Malta documents,[3] the reason CTEL Malta would have been able to obtain this

---

[3] It is beyond dispute that CTEL Malta executed on a scheme to trade oil with PetroPeru by misappropriating CTFG's registration and forging a bill of lading to that effect. *Compare* ECF No. 153, at 6-7, *with* ECF No. 167, at 14 (conceding that "it was wrong for CTEL Malta to have used CTFG's registration to bid").

10

registration is because ███████████████████████████████████████

██████████████████████████████ PMF ¶ 108(a), Ex. 95 at 5.  Also, as the CTEL Malta

registration is dated March 2016, Nunez Decl. Ex. 1, at 2, it confirms that Rothenberg was

relying on CTEL's registration when he bragged, the month before, ████████████████

████████████████████████████ PMF ¶105(b); Ex. 77 at 2.[4]

Other aspects of the new evidence are demonstrably false.  Francisco D'Agostino—who

is no stranger to accusations of fraud and racketeering in dealings in Venezuela[5]—now claims

that he has never been involved in CTFG or CTEL.  D'Agostino Decl. ¶ 15.  ████████████

████████████████████████████████████████████████████████████████ *i.e.*,

shortly after CTFG and CTEL had executed the Note with Centauro, and shortly before CTEL

Malta was created.  *See* Second Pacheco Decl. Ex. B.  Sixteen thousand Euros is no small sum

that would be easily forgotten.  Nor is it plausible that this was an innocent omission.  Also, new

witness Hector Nunez claims that former CTEL employee Jesus Pereya is not an employee or

trader for CTEL Malta.  CTM at 14 (citing Nunez Decl. ¶ 16).  To the contrary, ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Inconsistencies

like these are routine for CTEL Malta, which told the court that it had "terminated" an employee

---

[4]   CTEL Malta's insistence that it did not rely on CTEL's relationship with PDVSA faces a fundamental problem.  *See* CTM at 19.  Long after CTEL Malta changed its name to Elemento, it continued to use CTEL's name when trading with PDVSA.  *See*  PMF ¶¶ 121, 123, 126.  CTEL Malta tries to explain this away by claiming that it simply reflects a delay in getting its registration updated.  *See* CTM at 16.  That is beyond implausible: CTEL Malta would have the court believe that it obtained a PDVSA registration in March 2016, *id.* at 19, just one month after receiving Cedaridge funding in February 2016, Galanti Decl. ¶ 4, ECF No. 170, but that it somehow took seventeen months (or longer) for CTEL Malta to get the name on the registration updated, *compare* PMF ¶ 121 (July 2016 name change), *with id.* ¶ 126 (Dec. 2017 Securities & Exchange Commission filing discussing "CT Energia" transaction with PDVSA).  Nor can the supposed delay explain why CTEL Malta continued to use the CTEL name when transacting business other than with PDVSA.  PMF ¶ 122.

[5]   *See Reich v. Lopez*, 38 F. Supp. 3d 436, 465 (S.D.N.Y. 2014) (Plaintiffs alleged that D'Agostino "profited wildly" from an "illegal bribery scheme" in Venezuela; the RICO claims were dismissed against D'Agostino, but state law conspiracy to defame claims were not.).

11

involved in an improper PetroPeru transaction, *see* ECF No. 153 at 6-7, when in fact she had merely been suspended, *see* Ex. 19 at 53:12-14. These inconsistencies in the new evidence further demonstrate why the Court should not credit it.

### 3. CTEL Malta's innocent investor narrative is belied by the facts.

CTEL Malta continues to claim that it is an innocent unrelated company, which coincidentally has the same name, CEO, CFO, business model, employees, branding, registrations, and business lines as the company that owes Centauro over $21 million. But the undisputed evidence indicates that CTEL Malta's supposed beneficial owners at the Cisneros Corp. were aware that CTEL Malta's business plan was premised on being CTEL's alter ego. For instance, when Bazzoni and Rothenberg emailed the Cisneros Corp. about doing business together as CT Energia Ltd., they did so from their CTEL (*i.e.,* CT Energia Ltd.) accounts. *See* ECF No. 243 (Response to ¶ 13). From this alone, it is implausible and misleading to suggest that the Cisneros Corp. believed the identically named Maltese "CT Energia Ltd." was a new company on a blank slate. Indeed, Rothenberg emailed the Cisneros Corp. in November 2015, saying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The Cisneros Corp. would have known that CTEL Malta had no prior deals and no substantial operating history, as it has just been created; thus it would have understood these as relating to the prior company, CTEL. *See id.* Similarly, Eduardo Cisneros testified that he understood that CTEL Malta would "hit the ground rolling" once it started and that it would be trading with PDVSA. PMF ¶¶ 100-01. But a new trading company cannot just start trading with PDVSA immediately; it takes time to obtain registrations. *Id.* ¶ 103. Thus, the only way CTEL Malta would be able to "hit the ground rolling" would be to rely on CTEL's relationship, which CTEL Malta did. *See* PMF ¶ 108(a).

12

CTEL Malta also claims that the evidence Centauro has proffered is "disputed." CTM at 11. By doing so it necessarily concedes that its own summary judgment motion on alter ego liability cannot be granted. Of course, its officers, Bazzoni and Rothenberg, have refused to testify given their criminal exposure. *See* ECF No. 245, Additional Facts ¶¶ 6-12. Regardless, CTEL Malta's attempts to dispute Centauro's evidence fall flat.

*First*, instead of rebutting Centauro's showing that CTEL Malta and **CTEL** have the same business model, *see* ECF No. 258, 16-17, it responds by distinguishing **CTFG**'s business model from CTEL Malta's, *see* CTM at 5. Moreover, it is undisputed that CTEL and CTEL Malta were oil trading entities, *see* ECF No. 258, at 16-17; both focused on Venezuela and West Africa, *see id.* at 17-20; and both focused on the same counterparties, including PDVSA, NNPC, and Jesper Oeschlanger, *compare* PMF ¶¶ 86, 94(c), (e), *with*, PMF ¶¶ 123-124, 126, 132(b), 135. CTEL Malta even acknowledges the overlap, but claims there is nothing improper about "hiring employees, submitting bids for transactions, and entering into agreements." CTM at 23. What it omits, of course, is that it was hiring **CTEL** employees, submitting bids building on **CTEL's** "fantastic relationship with PDVSA", PMF ¶ 90(b), and entering into agreements using **CTEL's** counterparties, ¶¶ 122-25, 132(b), all while relying on **CTEL's** branding.[6]

*Second*, in an effort to rebut evidence showing that it hired CTEL's employees, CTEL Malta quibbles over the word "employee," using instead the term "consultant," even though that distinction has never made a difference to CTEL Malta. Its own financial manager testified that

---

[6] CTEL Malta continues to resort to inflammatory rhetoric to distract the Court from the falsehoods and inconsistencies in its story. It accuses Centauro of "fabricat[ing]" evidence, and calls "laughable" Centauro's assertion that CTEL spent over $100,000 on its branding. *See* CTM at 1, 16. To the contrary, the documents Centauro relies on speak for themselves, and in fact, the invoices add up to **over $120,000**; are from "Trew Marketing"; and cover typical brand-building services such as "press releases," "web services," and "logo development." Ex. 49 at 2-11. So eager is CTEL Malta to cast aspersions that it ignores basic arithmetic. CTEL Malta also asserts that CTEL's "prancing lion" logo actually belongs to CTFG, *see* CTM at 16, but cites nothing to support that claim. Thus, it is CTEL Malta, not Centauro, that has made 'fabrications' about branding.

when it comes to CTEL Malta, "I think they are the same thing", *see* Ex. 18 at 41:8, and that the company's CFO submits invoices for fees, just as a consultant would, *see id.* at 65:11-14.  CTEL Malta also denies that these persons ever worked for CTEL, on the theory that they could not have worked for CTEL if they had also worked for CTFG at any point.  CTM at 11-14.  But there is no reason these employees had to work for one or the other, and documentary evidence shows that by 2015, many of these CTFG persons were on CTEL's budget as employees. PMF ¶¶ 25-26.[7]  Moreover, CTEL Malta has shown a remarkable inability to keep its own employment information straight: to avoid attachment of its assets it told the Court that "[t]he only overlapping employee between Elemento and CTEL-BVI is Mr. Rothenberg," ECF No. 167 at 20, but it now concedes that Bazzoni also overlapped as CEO of both companies, CTM at 21.

> ***Third***, CTEL Malta now acknowledges that it took on CTEL's West African business, but says, "[s]o what?"  CTM at 20.  It also does not dispute its use of CTEL's PetroChina registration.  *Id.* at 19.  Nor does it dispute that after changing its name to Elemento, it continued to use CTEL's name in transactions.  *Id.* at 16.  It further concedes that it used CTEL's email system, D'Agostino Decl. ¶ 15 (email chain using "fd@ctenergia.com"), and that CTEL Malta received financing from Bazzoni to pay CTEL Malta's employees.  *Id.* ¶ 17.  Despite all of this, it claims that because it was a "new" company, there is nothing improper about any overlap with its namesake CTEL.  *See* CTM at 20.  Of course, the evidence shows the opposite: it was not "new"; it was a mere continuation of CTEL.  *See* ECF No. 258, 11-24.  Although there is nothing inherently illegal about transferring business lines from an identically-named company with the same CEO and personnel, doing so undoubtedly evidences an alter ego relationship.

---

[7]   Defendants claim that the budget at issue was for CTFG, not CTEL.  *See* ECF No. 241, Response to ¶ 26(c); ECF No. 257, Response to ¶ 26.  Yet the budget plainly states that it is for "CTE", which undoubtedly refers to CTEL. *See* ECF No. 245, Additional Fact ¶ 15; *cf.* CTM at 18.

### B. Centauro has established that CTEL is an alter ego of Bazzoni.

Centauro has also established that, by virtue of his dominance and misuse of CTEL and CTEL Malta's corporate form, Bazzoni and CTEL (and CTEL Malta) are one and the same. *See* ECF No. 258 at 22-24. CTEL and Bazzoni ignore this evidence and falsely claim that Centauro did not assert that Bazzoni and CTEL are alter egos. CTB at 7. They also claim that Centauro has alleged nothing more than "carrying on of a business," rather than misuse of the corporate form. CTB at 8. This too, is false. The Court has ruled repeatedly that the amended allegations in the complaint are sufficient for alter ego liability, *i.e.*, they go beyond the mere carrying on of business. *See* ECF No. 126, 6-7; ECF No. 208, 3-4. As Centauro has provided undisputed evidence of those allegations, it is entitled to summary judgment against Bazzoni.[8]

### CONCLUSION

For the reasons stated, Centauro respectfully requests that the Court grant Centauro's motion for partial summary judgment and deny Defendants' motions for summary judgment.

Dated: November 16, 2018

    Respectfully submitted,

    By:   /s/ *Byron Pacheco*
    Donald L. Flexner (*Counsel*)
    Byron Pacheco
    BOIES SCHILLER FLEXNER LLP
    575 Lexington Avenue
    New York, NY 10022
    T. 212-446-2300

---

[8] Bazzoni and CTEL misstate the temporal element of alter ego liability in arguing that Bazzoni must have had a pre-existing debt to Centauro before CTEL was created. CTB at 9-10. That is not the law. The temporal element focuses on when the misuse occurred, not when the corporation was first created. ECF No. 107 at 7.