UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CENTAURO LIQUID OPPORTUNITIES
MASTER FUND, L.P.,

          Plaintiff,

     -v-                                  No.  15 CV 9003-LTS-SN

ALESSANDRO BAZZONI, CINQUE
TERRE FINANCIAL GROUP, LTD., CT
ENERGIA LTD., CT ENERGIA HOLDING,
LTD., CT ENERGY HOLDING SRL, and
CTVEN INVESTMENTS SRL,

          Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

          Plaintiff Centauro Liquid Opportunities Master Fund, L.P. ("Plaintiff" or

"Centauro") brings this action for fraud and breach of contract against Defendants Cinque Terre

Financial Group Ltd. ("CTFG"),[1] CT Energia Ltd. ("CTEL"), CT Energia Ltd. d/b/a Elemento

Ltd. ("Elemento"), and Alessandro Bazzoni ("Bazzoni").  Plaintiff's claims arise, in part, from

CTFG and CTEL's default on a promissory note that Bazzoni signed on behalf of CTFG and

CTEL on May 21, 2015, in favor of Centauro (the "Note").  (See docket entry nos. 219, 234 Ex.

31 at 1.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332.

---

[1]       This action is stayed as against CTFG by an order of the United States
Bankruptcy Court for the Southern District of New York pending resolution of a
petition for recognition of a foreign liquidation proceeding under Chapter 15 of
the United States Bankruptcy Code, and nothing in this Memorandum Order
constitutes an adjudication of CTFG's rights or defenses.

The Note included a provision by which CTEL consented to resolution in New York of any disputes arising thereunder,

By Memorandum Opinion and Order dated September 18, 2019, the Court, <u>inter alia</u>, dismissed Centauro's claims against Bazzoni and Elemento (collectively, the "Defendants") for lack of personal jurisdiction (docket entry no. 272, the "September Order").[2]  In light of the determination as to lack of personal jurisdiction, the Court denied the defendants' motions for summary judgment to the extent that they sought dismissal of Centauro's alter ego and other claims against Bazzoni and Elemento on the merits.  The Court held that Plaintiff's alter ego claims against Bazzoni and Elemento could not be sustained under the law of the British Virgin Islands (the jurisdiction in which CTEL was incorporated, which applies English law), and gave leave to Centauro to make a written proffer, consistent with the Federal Rule of Civil Procedure 12(b)(2) standard, demonstrating a legal and factual basis for the exercise of personal jurisdiction over Bazzoni and/or Elemento on a veil piercing theory under Maltese law, Elemento having been created under the laws of Malta.  Centauro's subsequently proffered bases for personal jurisdiction over Elemento and Bazzoni (<u>see</u> docket entry no. 287, the "Proffer") are the subject of this Memorandum Order.  The Court has considered carefully the parties' submissions filed in connection with the Proffer and, for the following reasons, the Court finds no basis for the exercise of personal jurisdiction over Elemento and Bazzoni.

---

[2]     The September Order also granted Centauro's motion for summary judgment as against CTEL with respect to Centauro's First Cause of Action and denied it in all other respects; it denied CTEL's motion for summary judgment to the extent it sought dismissal of Centauro's breach of contract claims against CTEL for lack of consideration, and to the extent it sought dismissal of Centauro's Third Cause of Action for fraudulent inducement.

<u>DISCUSSION</u>

The Court assumes the parties' familiarity with the facts of this case, which are laid out in detail in the September Order.

<u>Personal Jurisdiction under Maltese Law Over Elemento and Bazzoni</u>

The Court's decision in the September Order to allow Centauro an opportunity to proffer a basis upon which the Court may exercise personal jurisdiction over the Defendants Bazzoni and Elemento under Maltese law was prompted by the Defendants' prior efforts to disclaim liability under Maltese law for lack of personal jurisdiction (<u>see</u> docket entry no. 60), and Plaintiff's failure to meaningfully address jurisdictional issues under Maltese law (presumably because the Court had previously held that CTEL's corporate veil could be pierced, and Bazzoni and Elemento reached, under English law).  In its Amended Complaint, Plaintiff alleges that CTFG and CTEL have consented to jurisdiction in the Southern District of New York, and that Bazzoni and Elemento are subject to such jurisdiction as alter egos of CTEL.  <u>See</u> docket entry no. 129 at ¶¶ 5-6.  Plaintiff has consistently relied solely on its assertion of alter ego claims under English law as a basis for personal jurisdiction over Bazzoni and Elemento throughout the course of this litigation.

In the September Order, the Court recognized that its prior decisions had been erroneous to the extent those decisions concluded that Centauro had pled facts sufficient to demonstrate under English law that CTEL's corporate veil could be pierced on the theory advanced by Centauro to reach Bazzoni in his individual capacity and reach the assets of Elemento.  <u>See</u> September Order at 17.  Accordingly, the Court determined that it would give Centauro an opportunity to seek to demonstrate the existence of a proper basis under Maltese law for the exercise of personal jurisdiction over Bazzoni and Elemento.  The Court has considered

the parties' supplemental submissions carefully, and concludes that Plaintiff has failed to meet its burden of demonstrating a basis under Maltese law for the exercise of personal jurisdiction over Bazzoni or Elemento in connection with its claims relating to CTEL's liability under the Note.

CTEL, a British Virgin Islands corporation, is the entity that consented contractually to this Court's exercise of personal jurisdiction.  None of Plaintiff's arguments regarding Malta's allegedly more liberal standards for alter ego liability identifies a viable principle that would support a determination that CTEL's consent to jurisdiction can be enforced in this Court against Bazzoni or Elemento.  The arguable demonstration of a possibility that a court applying Maltese law might find that Bazzoni misused Elemento to divert assets or business opportunities from CTEL and thus find Elemento or Bazzoni liable to CTEL's creditors does not demonstrate that Maltese law provides a basis for subjecting Bazzoni or Elemento to jurisdiction based on a provision of a contract signed by CTEL.  For these reasons, the September Order stands and Centauro's alter ego claims against Bazzoni and Elemento remain dismissed.

Long-Arm Jurisdiction Over Bazzoni

In the alternative, Centauro argues in its Proffer that the Court independently has personal jurisdiction over Bazzoni under New York's long-arm statute such that Centauro may pursue its claim for fraudulent inducement against Bazzoni in his personal capacity.  To determine the existence of jurisdiction under New York's long-arm statute, N.Y. CPLR § 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007).  "[C]ontract negotiations occurring in New York are sufficient to support jurisdiction when they either substantially advance or were

essential to the formation of a contract or if they resulted in a more solid business relationship between the parties." SAS Grp., Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003) (citation and internal quotation marks omitted).  Where a Plaintiff asserts a fraud claim arising from a transaction, there must be "some 'articulable nexus' or 'substantial relationship' between the transaction and the claim asserted." Newmont Mining Corp. v. AngloGold Ashanti Ltd., 344 F. Supp. 3d 724, 741 (S.D.N.Y. 2018).

Under Federal Rule of Civil Procedure 12(b)(2), the burden for establishing personal jurisdiction "varies depending on the procedural posture of the litigation." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Where discovery has been completed and no evidentiary hearing has been held, a plaintiff seeking to make a prima facie showing of jurisdiction must proffer "facts that, if credited by the trier, would suffice to establish jurisdiction." De Lorenzo v. Ricketts & Assocs., Ltd., No. 15 Civ 2506 (VSB), 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) (citation and internal quotation marks omitted). "Furthermore, although pleadings and affidavits are construed in the light most favorable to the plaintiff, conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction." Id. (internal quotation marks omitted).

Here, Centauro argues that it is has proffered facts sufficient to prove that Bazzoni had specific contacts with New York relating to the Note to support jurisdiction of its claims for fraudulent inducement against Bazzoni in his personal capacity.  Centauro submits that Bazzoni took part in multiple in-person meetings at the New York law offices of Baker Mackenzie, CTEL's counsel, to negotiate the Note directly with Centauro's representatives on behalf of CTEL.  See Proffer at 11.  Centauro asserts that Bazzoni's negotiations in New York

substantially advanced the parties' relationship and were essential to the formation of the Note because the negotiations "were part of [the] parties' coming to ground on the length of the payback period" and involved discussions regarding servicing of the Note.  Id. at 12.  Centauro also contends that the New York negotiations substantially relate to its fraud claim against Bazzoni because these meetings involved discussions regarding essential aspects of the Note and that Bazzoni did not correct misrepresentations that were made during the meetings.  Id.

The evidence cited by Centauro in support of its claims regarding Bazzoni's participation in the New York meetings is, however, too vague to establish a basis for the exercise of personal jurisdiction.  For example, Centauro relies solely on the testimony of Yvonne Morabito ("Morabito"), General Partner at Centauro, as the evidentiary basis for its assertion that Bazzoni attended multiple "in person meetings in New York to negotiate the Note."  Id. at 11.  Centauro's argument mischaracterizes Morabito's testimony.  Morabito did testify during her deposition that negotiations surrounding the Note were extensive, but when she was asked "[h]ow many in person meetings [in New York] were conducted?" she replied "[i]t's hard to say."  See docket entry no. 276-13 at 134:23-135:10.  When Morabito was further pressed on "approximately" how many in-person meetings there were, she replied "I don't know. I don't know. There were numerous, but their offices were in Fort Lauderdale at the time so a lot of things happened by phone as well."  Id. at 135:11-15.  Indeed, Morabito never specifically testified as to how many in person meetings actually took place in New York, much less as to how many of these meetings, if any, Bazzoni attended.  Furthermore, as Bazzoni points out, "[Morabito] never testified [about] what Bazzoni said or did at these meetings, nor when they occurred. . . Morabito also failed to testify about what was purportedly discussed or negotiated by anyone (let alone Bazzoni) at such meetings" and distinguish the discussions that allegedly

took place over the phone or in person.  Docket entry no. 288 at 10.  The testimony is likewise insufficient to establish that Bazzoni's alleged participation in the in-person negotiations surrounding the Note "substantially advanced" the parties' relationship or were "essential to the formation of the contract."

With regard to Centauro's argument that Bazzoni made fraudulent representations, or failed to correct misrepresentations, during the alleged in-person New York meetings, Plaintiff again fails to cite any specific evidence illustrating Bazzoni's allegedly wrongful conduct.  Plaintiff does not attribute any statements, much less false statements, to Bazzoni, and does not point to any evidence demonstrating Bazzoni's silence when any misrepresentations were allegedly made over the course of what Morabito contends were "numerous" meetings held to negotiate the Note.  In the absence of such evidence, Centauro cannot prove a sufficient nexus between the alleged fraud and the underlying transactions from which Bazzoni's fraudulent conduct purportedly arises.  Centauro's unsupported and conclusory assertions regarding Bazzoni's supposed contacts with New York are insufficient to establish a basis for personal jurisdiction over Bazzoni in connection with Centauro's fraud claims against him in his personal capacity.

CONCLUSION

For the foregoing reasons, and those set forth in the Court's September 18, 2019, opinion, the Court lacks personal jurisdiction over Elemento and Bazzoni and all claims against those Defendants are dismissed.  This case will proceed solely against CTEL in respect of the remaining Second and Third causes of action.

This case remains referred to Magistrate Judge Netburn for general pre-trial management.  The parties are directed to meet with Judge Netburn for settlement purposes and to

discuss any outstanding pretrial matters.  The final pretrial conference in this case is adjourned to October 1, 2021, at 2:00 p.m.  The parties shall consult and make submissions in advance of the conference as provided in docket entry number 46.


      SO ORDERED.

Dated: New York, New York
      July 26, 2021

          /s/ Laura Taylor Swain
        LAURA TAYLOR SWAIN
        Chief United States District Judge